**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DONALD C. FREDERICK and ,** | : | **Docket No. 08-288E** |
| **LOUISE M. FREDERICK, h/w,** | : | **(Judge Sean J. McLaughlin)** |
| **MICHAEL A. MAHLE and** | : | |
| **PAULA M. MAHLE, h/w,  DONALD** | : | **Electronically Filed Document** |
| **PORTA, and all other persons** | : | |
| **similarly situated,** | : | |
| | : | **CLASS ACTION** |
| **Plaintiffs** | : | |
| **vs.** | : | |
| | : | |
| **RANGE RESOURCES –** | : | |
| **APPALACHIA,  LLC** | : | |
| | : | |
| **Defendant** | : | |

## SUPPLEMENTAL SUBMISSIONS IN SUPPORT OF
## APPLICATION FOR ATTORNEY FEES

Class Counsel, Joseph E. Altomare, has heretofore made application for attorney fees representing 20.58% of the *imputed* common fund consisting of the following elements:

| Component | Total Value | Attorney Share | Class Share |
|---|---|---|---|
| Initial Payment | $1,750,000 | $437,500 | $1,312,500 |
| Future Class Savings | $16,636,732 | $0 | $16,636,732 |
| Fee Contribution | $4,212,882 | $4,212,882 | $0 |
| Totals | $22,599,614 | $4,650,382 | $17,949,232 |
| Percentage of Common Fund | 100.00% | **20.58%** | 79.42% |

For  cross-check  purposes,  he  calculates  that  that  the  20.58%  constitutes  a  lodestar multiple of  5.95, as follows:

Lodestar Crosscheck

| | |
|---|---|
| Total hours | 3,125 |
| Rate | $250 |
| Lodestar | $781,250 |
| Total Value of Attorney Fee Request | $4,650,382 |
| Multiplier | 5.95 |

Counsel has not heretofore submitted his time records, and has rather simply attested that the total of the hours, *inclusive of anticipated additional time,* is 3,125 (See Declaration, Doc. 68-4).   This was wholly in keeping with the standard practice in this circuit.   *Gunter v. Ridgewood Energy Corp.,* 223 F.3d 190, 200 (3d Cir. N.J. 2000).   In *Gunter,* class counsel simply provided a summary consisting of the total hours and rates contributed by each attorney. The Court said:

> *Rather than submit their actual time records, which were voluminous and maintained by Counsel, Counsel informed the District Court that such records "were available for review by the Court in the event the Court wishes to do so."* [citation omitted] *Waiting to submit such detailed records until they were requested by the Court seems consonant with the practice in this circuit. See, e.g., In re Prudential, 148 F.3d at 332 n.107 (noting that "time summaries" were adjudged sufficient in a case in which "the court was only using lodestar analysis as a cross check on the fee award"); id. at 338, 342 (noting further that the district court could permit discovery **or request further documentation to verify the statements made in a fee application).** [counsel's emphasis]*

Presently, because the Court has now requested just such further documentation, counsel attaches hereto as Exhibit 1 a copy of his computerized time records to date, to which he has added (as the last four entries) the estimated 1,225 hours counsel anticipates he will be obligated to provide to the Class following settlement.   Those hours are composed of the following:

| Description | Hours |
| --- | --- |
| Cash Distributions | 25 |
| 2011 - 40 hours/month - Class inquiries and administration | 480 |
| 2012 - 30 hours/month - Class inquiries and administration | 360 |
| 2013 - 20 hours/month - Class inquiries and administration | 240 |
| 2014 - 10 hours/month - Class inquiries and administration | 120 |
| **Total** | **1225** |

The settlement of this class action entails not only the usual immediate distribution of a cash settlement fund ($1,750,000), but a deferred benefit consisting of a reduction in PPC allocations to the Class which, over a projected four and one-half year period of development is predicted to have a value of in excess of $20,000,000.   While deferred benefits, when by way of cash installment payments or other discrete considerations   which are easy to track and understand may not be unusual in class actions, the nature of the deferred benefits here are *not*

easy for the class to track or understand.   Counsel anticipates a lengthy period of time following settlement during which he would be ethically bound both to respond to class inquiries and to intervene and resolve such problems as may arise in the performance of the Settlement Agreement.   There is good reason to anticipate that he will be so obliged.

First,  between November 1, 2010 and the date of this writing, counsel has personally responded to a total of 455 phone and email inquiries from class members.   As of this date (long after the opt-out deadline) the calls keep coming daily.    Corroborating this representation is the Affidavit of Cynthia J. Hoovler, attached hereto as Exhibit 2

Second, without exception, each of the 455 class members who called requested a personal explanation of the settlement 'in layman's terms.'   Many inquired whether the settlement with Range would eliminate other perceived individual grievances which they had with Range.  For example, many believed that the PPC issue was the cause of a steep decline in royalty payments which they had experienced and that somehow the settlement would return them to the much higher payments they had received in the past.   In each case counsel had to carefully explain that the decline, in the magnitudes they described, could not have been simply attributable to the PPC deductions, but were probably attributable to the currently depressed price of gas and/or the naturally declining rates of productivity of older wells.

Those who were not yet getting royalties, but had signed up with Range and were anticipating the drilling of Marcellus wells on their properties found it difficult to understand how they too would benefit, and those who already enjoyed royalty payments from Marcellus wells inquired for help in understanding the royalty statements they were already receiving from Range. Those statements are indecipherable to the layman, and counsel expects many of the 24,000 class members to make inquiries as their wells come on line.  Precisely because typical royalty accounting, as reflected in the statements issued monthly by Range, is unavoidably arcane,[1] counsel will in his Settlement Letter extend his assistance to each member of the class. A draft of his intended Settlement Letter is attached as Exhibit 3.

---

[1]  See e.g. - Fairness Hearing Ex D, pages 3 et seq.

Accordingly, as Range drills each new Marcellus well on aggregated units consisting of upwards of 800 acres (and typically owned by half as many individual class members) counsel expects a recurring deluge of inquiries which he cannot ignore.  It is expected that those inquires will generally diminish with time (as reflected in corresponding yearly diminution of estimated hours shown above).   Even so, every time Range drills and brings into production a new 800 acre unit during the projected four and one-half year development period, and begins to pay royalties to the affected group of class members for the first time, counsel anticipates a corresponding wave of new inquiries which he could not and should not ignore.

Because counsel is bound to honor these inquiries, he should be reasonably compensated for his time.   For the foregoing reasons, counsel considers his estimate of the time he will be so obligated  to be fair and reasonable for purposes of conducting the lodestar cross check.

## <u>CONCLUSION</u>

For these reasons, and for the reasons set forth in his Application for Attorney Fees, Class Counsel respectfully prays for an Order of Court awarding him attorneys fees as first hereinabove requested.

By     _/s/*Joseph E. Altomare*_
        Joseph E. Altomare
        Class Counsel
