IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DONALD C. FREDERICK and ,** | : | **Docket No. 08-288E** |
| **LOUISE M. FREDERICK, h/w,** | : | |
| **MICHAEL A. MAHLE and** | : | |
| **PAULA M. MAHLE, h/w, DONALD** | : | **Electronically Filed Document** |
| **PORTA, and all other persons** | : | |
| **similarly situated,** | : | |
| | : | **CLASS ACTION** |
| **Plaintiffs** | : | |
| | : | |
| vs. | : | |
| | : | |
| **RANGE RESOURCES –** | : | |
| **APPALACHIA, LLC** | : | |
| | : | |
| **Defendant** | : | |

# MOTION FOR ENFORCEMENT OF CLASS SETTLEMENT AGREEMENT AND FOR SANCTIONS

                   **Counsel for Plaintiff Class:**
                   **Joseph E. Altomare**
                   **PA ID #17156**
                   **700 Rockwood Drive**
                   **Titusville, PA  16354**
                   **(814) 827-9626**
                   **(814) 827-9143 – Fax**
                   **jaltomar@msn.com**

# MOTION FOR ENFORCEMENT OF CLASS
# SETTLEMENT AGREEMENT AND SANCTIONS

Class Counsel, for and on behalf of the class certified in this action (the "Class"), hereby respectfully moves for enforcement of the Order of this Court approving the terms of settlement between the parties. The Class further seeks Sanctions against Range for its willful violations of the terms of settlement. In support whereof, Class Counsel represents as follows:

1. The Second Amended Agreement and Stipulation of Settlement (the "Settlement Agreement") [Doc. 73-1] was approved by this Court by Order of March 17, 2011 [Doc 83].[1]

2. Article III of the Settlement Agreement, in pertinent part, provides as follows:

    Section 3.2(A) **Definitions**. The following words and terms as used herein shall have the following special definitions: . . .

    "**Post Production Costs**" shall mean and include **all items of current expense** [counsel's emphasis], including depreciation, incurred in the sale of natural gas after oil or gas is produced at the wellhead but before the first point of sale to a First Purchaser, including but not limited to the cost of gathering, dehydration, compression, processing, transportation and third party arms-length marketing of such gas.

    "**PMCF**" shall mean the Price Per MCF, calculated by the formula: P/V where: "P" is the total purchase price actually paid by First Purchasers for natural gas produced from a Gas Well(s) during an Accounting Period, whether calculated using volume or thermal content; and "V" is the volume (in MCF's) of the natural gas purchased by such First Purchasers."

    "**Wet Shale Gas**" shall mean natural gas produced from the Marcellus Shale formation which is processed for the recovery of NGL 's prior to delivery into a sales pipeline.

    "**MCF**" shall mean one thousand cubic feet of volume of natural gas.

    "**NGL**" shall mean natural gas liquids, and include the saleable liquid petroleum byproducts recovered from natural gas

---

[1] Paragraph 3 of the Order provides as follows: "The terms of settlement set forth in the Second Amended Agreement and Stipulation of Settlement [Doc.73-1] are approved."

Section 3.2(B) "**Natural Gas Royalty Calculation.**" All royalty for natural gas payable under this instrument for any Accounting Period shall be calculated using the PMCF for the Gas Well(s), reduced by not more than the lesser of the following (the "Cap"):

(1) the pro rata royalty share of current Post Production Costs per **MCF** incurred during such period; and,

(a) in the case of royalty attributable to Wet Shale Gas production, the pro rata royalty share of $0.80 per **MCF**;

(b) in the case of royalty attributable to Dry Shale Gas production, the pro rata royalty share of $0.72 per **MCF**;

(c) . . ."

Section 3.2(C) **NGL Royalty Calculation**. Royalty attributable to natural gas produced by the Gas Well(s) which is consumed in the production of NGL shall be calculated using the actual purchase price paid by the First Purchaser of the NGL so produced, net of the applicable pro rata share of the processing cost charged or retained by the NGL Processor or such First Purchaser.

3. As more fully explained in the Class Brief in Support, filed simultaneously herewith, Range has in the following particulars intentionally violated the Settlement Agreement by underpaying class member royalties using the following artifices:

(a) Range has improperly calculated the Cap by using MMBTU's (each, one million British Thermal Units) instead of MCF's (each, 1,000 cubic feet) as the multiplier required by Section 3.2(B)(1)(a) of the Settlement Agreement.

(b) Range improperly deducts pipeline transportation costs (disguised in its Statements as "FCI–Firm Capacity") to which it is not entitled, and additionally fails to include such cost in its Cap calculations.

(c) Until recently, Range purported to have used wellhead gas from the Class wells to fuel the operation of the on-site equipment it uses to gather, dehydrate, process and compress the gas for transport by pipeline to market. More recently,

2

it says it no longer uses wellhead gas and rather purchases fuel for such purpose and has begun to deduct that expense from the royalty (denominated in Range's Statements as "PFC–Purchased Fuel") without including such cost in its Cap calculations. Furthermore, the Class believes that the charge for Purchased Fuel results in a double deduction for the same fuel.

(d) Under Section 3.2(C) of the Settlement Agreement, *supra*, the Class royalty on the sale of natural gas liquids ("NGLs") which are stripped and sold separately from the gas, is to be calculated by deducting the stripping facility's charges for processing from the gross proceeds of such sales. The Class believes that the gross proceeds reflected in the Statements are actually already net of the stripping facility's charges. Range nevertheless deducts such charges a second time (denominated in Range's Statements as "PHI-Proc Fee").

(e) Range also improperly deducts from the NGL royalty under Section 3.2(C) of the Settlement Agreement a charge (denominated as "TAI–Transport" in its Statements) for transportation of natural gas liquids ("NGL") to the stripping facility notwithstanding that the NGL's are resident in the transported gas.

(f) Range has improperly calculated the royalties due certain class members by failing to honor minimum royalty provisions contained in those members' leases.

(g) Range has not applied the Cap in calculating the royalty due certain members of the class.

(h) Range has further intentionally issues to class members monthly royalty statements ("Statements") in a format which is so complex and confusing as to be indecipherable by Class members without the assistance of an attorney or accountant knowledgeable in oil and gas accounting.

4. By reason of the foregoing subparagraph (h), Class Counsel has, beginning with the first issuance of Statements by Range and continuing to date, been inundated with class member requests for assistance in deciphering their Statements, which he has provided without compensation.

5. Further by reason of the foregoing subparagraph (h), Class Counsel has been obligated to retain the assistance of an expert in oil and gas accounting to assist him in analyzing certain of the more arcane features of the Statements.

Wherefore, the following relief is respectfully requested:

a) that the Court enter a preliminary order: [2]

  (i) permitting Class Counsel to conduct discovery to determine the extent of Range's unpaid monetary liability to the Class arising from the foregoing violations of the Settlement Agreement, including the right to retain an auditor;

  (ii) further ordering Range to provide in-house access to all of Range's relevant paper and electronic records for the purpose of facilitating such discovery.

---

[2] A proposes order is filed herewith.

4

b) that following completion of the discovery, the Court conduct an evidentiary hearing for the purpose of determining the propriety of granting the Class the following requested relief:

(i) that the Court order Range to cease and desist the violation described in this Motion;

(ii) that the Court enter a money judgment in favor of the Class in the amount found to be retroactively owing, plus prejudgment interest at the rate of 6% per annum in accordance with applicable Pennsylvania statutory law;

(iii) that the Court impose punitive monetary sanctions on Range as the Court deems just, the same to be distributable to the members of the Class in in equal shares;

(iv) that the Court require Range to pay reasonable attorney fees to Class Counsel for his service to the Class arising from the prosecution of this Motion as well as his uncompensated services which predate this Motion in assisting individual class members to understand their Statements;

(v) that the Court require Range to pay all reasonable expense incurred by Class Counsel in the prosecution of this Motion, including those of the auditor and other experts, as well as all other expense reasonably incurred;

(vi) that the Court order Range to submit to the Court, for its approval, a revised Statement format which eliminates the elements complained of at paragraph 3(h) of this Motion and makes it reasonably understandable without professional assistance, and

(vii) that the Court grant such further and additional relief as it may deem just and appropriate.

                                                      Respectfully submitted,

                                                      By <u>/s/ Joseph E. Altomare</u>
                                                          Class Counsel