IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONALD C. FREDERICK and LOUISE M. FREDERICK, h/w, MICHAEL A. MAHLE and PAULA M. MAHLE, h/w, DONALD PORTA, and all other persons similarly situated, | Docket No. 1:08-cv-00288-SJM |
| | Electronically Filed |
| Plaintiffs, | Class Action |
| | Judge Cathy Bissoon |
| v. | |
| RANGE RESOURCES-APPALACHIA, LLC, | |
| Defendant. | |

**RANGE RESOURCES-APPALACHIA, LLC'S BRIEF IN SUPPORT OF RESPONSE TO PLAINTIFFS' MOTION FOR ENFORCEMENT OF <u>CLASS SETTLEMENT AGREEMENT AND FOR SANCTIONS</u>**

After seven years of performance under the class action settlement, which included an Order of Court Amending the Leases in the class, Plaintiffs have now moved to enforce a class action settlement agreement [Doc. 73-1] (the "Settlement Agreement") against the defendant Range Resources-Appalachia, LLC ("Range").  Plaintiffs seek the entry of an order permitting them to take discovery on their claims and conduct an audit of Range's records, and further seek an evidentiary hearing to ascertain what relief, if any, to which Plaintiffs are entitled.  For the reasons explained below, some of Plaintiffs' claims should be summarily dismissed.  As to the remaining claims, Range does not oppose limited discovery and an evidentiary hearing, if necessary, which will demonstrate that Plaintiffs cannot sustain their burden.

**Plaintiffs' Claims That Have No Facial Merit Or Are Beyond The Ancillary Jurisdiction Of The Court Must Be Immediately Dismissed.**  Four of the eight claims asserted by Plaintiffs in their Motion [Doc. 93-94], should be summarily dismissed, and Plaintiffs should not be entitled to seek discovery or take evidence on these claims:

*First*, Plaintiffs' most significant complaint is that the cap on post-production costs is improperly calculated by Range based on MMBTU instead of MCF.  This claim must be dismissed because the Court's Order Amending Leases [Doc. 84] – which Plaintiffs do not attach or refer to in their Motion – plainly states that the post-production cap is based on MMBTU.  That Order was entered after the Settlement Agreement was executed.  Range has complied with this Court's Order and there is nothing further for this Court to enforce.  The royalty statements issued to Plaintiffs over the last seven years also show that the post-production cap was always based on MMBTU, the recognized standard in the industry for gas measurement.  If Plaintiffs believed that to be in error, they would not have waited seven years to seek relief.

*Second*, Plaintiffs seek an Order in the nature of a mandatory injunction forcing Range to re-write its royalty statement to include additional information that Plaintiffs believe will better help them assess Range's compliance with the Settlement Agreement.  There is nothing in the Settlement Agreement or the Court's Order Amending Leases requiring Range to change its royalty statement, so there is nothing to "enforce" and the Court has no jurisdiction to grant the relief requested.  In any event, Range's royalty statement format conforms with Pennsylvania law.

*Third*, Plaintiffs claim that "certain" leases have provisions that override the Order Amending Leases as to royalty calculation.  This Court's jurisdiction is limited to *enforcing* the settlement and the Court's Order – it has no jurisdiction to consider claims of individual lessors seeking to avoid parts of the Settlement Agreement or take up new claims not raised in the class action.  This claim also fails because the Court's Order Amending Leases expressly overrides inconsistent lease provisions.

*Fourth*, Plaintiffs claim that "certain" unidentified lessors have leases that should be treated as part of the class.  Plaintiffs offer no facts demonstrating that those unidentified lessors are in the class or are encompassed by the class definition.  As it stands now, Plaintiffs' Motion fails to state any breach of the Settlement Agreement or this Court's Orders.

**Limited Discovery May Be Appropriate On The Remaining Claims, But An Audit Is Not.** The remaining claims involve whether or not Range has properly applied the caps on post-production costs in calculating royalties.  Range denies that it breached the Settlement Agreement or the Order Amending Leases but does not oppose reasonably limited discovery on those issues and an evidentiary hearing if necessary.  Range opposes Plaintiffs' request for an unbounded class-wide "audit" of Range's records or the court-ordered appointment of an expert, as there are no grounds for such relief here.  Plaintiffs' Motion acknowledges the retention of an expert in oil and gas accounting.  [Doc. 93 at 4].

## FACTS

Range is a natural gas production company that explores for and develops natural gas and natural gas liquids.  Range's development activities are focused in Pennsylvania and primarily development of the Marcellus Shale, which began in and around 2004.  Since that time, development of the Marcellus Shale has made Pennsylvania the second-largest natural gas producing state, growing production volumes from 78 Bcf to over 5 Tcf in less than a decade.  Over that same time period, Range grew its production volumes from 457 Mmcfe per day to 1.85 Bcfe per day.

Plaintiffs are lessors who entered into leases with Range or its predecessors in interest for oil and gas rights in Pennsylvania and Ohio.  Plaintiffs, and many of the class members, receive a monthly royalty payment from Range that is paid pursuant to the terms of their lease, as amended by this Court's Order Amending Leases, and as described in more detail below.

In 2008, Plaintiffs filed suit against Range, challenging the royalties paid by Range and specifically the deduction of post-production costs from those royalties paid to Plaintiffs. Plaintiffs' primary claim was that Range's deduction of post-production costs – costs incurred by Range after the gas left the wellhead such as transportation, processing and marketing – violated Pennsylvania's Guaranteed Minimum Royalty Act (the "GMRA"). [Doc. 83 at 2]. Plaintiffs withdrew that claim after the Pennsylvania Supreme Court held in *Kilmer v. Elexco Land Services Inc.*, 990 A.2d 1147 (Pa. 2010) that the deduction of post-production costs does not violate the GMRA. Plaintiffs then filed an amended complaint challenging the amount of post-production costs deducted by Range. *Id.*

The parties reached a class-wide settlement, and on March 17, 2011, this Court issued a Memorandum Opinion and entered an Order granting final approval of the settlement and final certification of the class. [Doc. 83]. On that same day, the Court issued an Order Amending Leases, by which the leases of the class members were amended and modified to include the terms of the Settlement Agreement. [Doc. 84]. The Order included provisions that instituted maximum "caps" on the post-production costs that Range could deduct from royalties paid to class members. [Doc. 84]. All of the leases of the class members were amended to include a cap on post-production costs of $0.72 per MMBTU for "dry" gas, and a cap of $0.80 per MMBTU for "wet" gas. [Doc. 84]. Following issuance of those orders, the action was closed and terminated. *See* Docket. No further docket activity occurred after March 21, 2011, until now.

## LEGAL STANDARD

Plaintiffs' Motion purports to seek the enforcement of a Settlement Agreement whose terms were incorporated into a Court Order [Doc. No. 84-1] in this previously dismissed federal action (terminated March 17, 2011). *See* Docket. Enforcement of a settlement agreement "requires its own basis for jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S.

375, 378 (1994).  A court has jurisdiction to enforce a settlement agreement when the parties'

obligation to comply with the terms of the settlement agreement are made part of the order of

dismissal.  *Id.* at 381.  Where, as here, the terms of the settlement agreement are incorporated

into a court order, the court retains ancillary jurisdiction to enforce the agreement even after

termination or dismissal of the underlying action.  *See id.*; *see also In re Phar-Mor, Inc.*

*Securities Litigation*, 172 F.3d 270 (3d Cir. 1999).  While a federal court has the power to retain

jurisdiction to enforce its own orders, the Supreme Court has cautioned against the exercise of

ancillary jurisdiction "over proceedings that are entirely new and original."  *See Peacock v.*

*Thomas*, 516 U.S. 349, 358 (1996).

 "Because a settlement agreement is a form of contract, allegations of breached settlement

obligations are governed by contract law."  *Plymouth Mut. Life Ins. Co. v. Illinois Mid-Continent*

*Life Ins. Co.*, 378 F.2d 389, 391 (3d Cir. 1967).  In order to grant a motion to enforce, a court

must find that a defendant breached a duty created by a binding agreement and that the breach

caused the plaintiff to suffer damages.  *See Sheet Metal Workers Int'l Ass'n Local Union No. 27,*

*AFL-CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (3d Cir. 2013).  The party seeking

enforcement of the settlement agreement "bears the burden of providing proof sufficient for the

Court to find by a preponderance of the evidence that ... defendants breached a duty" under the

terms of the settlement agreement.  *Jacob's Limousine Transp., Inc. v. City of Newark*, 688 Fed.

Appx. 150, 151-52 (3d Cir. 2017) (holding that plaintiff failed to prove that defendant breached

the settlement agreement).

 "To prevail on a motion to enforce settlement, the moving party must satisfy the court

that there are no disputed issues of material fact, and the court must treat all factual assertions in

the light most favorable to the non-moving party.  Where material facts concerning the existence

or terms of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing." *See Kristel, Inc. v. Cenveo Corp.*, 2017 WL 3842860 (W.D. Pa. Sept. 1, 2017) (internal citations and quotations omitted); *see also Tiernan v. Devoe*, 923 F.2d 1024, 1031-32 (3d Cir. 1991) (noting that where material facts are in dispute, the Court should hold an evidentiary hearing before enforcing the settlement agreement); *Millner v. Norfolk & W.R. Co.*, 643 F.2d 1005 (4th Cir. 1980).

## ARGUMENT

Plaintiffs' Motion seeks discovery and an evidentiary hearing on claims that are contradicted by the Court's Order amending leases and on claims that are beyond the Court's ancillary jurisdiction. These claims should be summarily dismissed. As to the remaining claims, Plaintiffs must actually prove their allegations. After discovery and, if necessary, an evidentiary hearing, the evidence will demonstrate Plaintiffs have failed to prove their claims.

## I.     FOUR OF PLAINTIFFS' CLAIMS SHOULD BE SUMMARILY DISMISSED

Four of Plaintiffs' claims should be dismissed because discovery is not appropriate on claims that have no facial merit or are beyond the ancillary jurisdiction of the Court.

### A.     Plaintiffs' Claim that Royalties Should Be Calculated Per "MCF" Rather Than "MMBTU" Directly Contradicts the Explicit Language of the Court's Order Amending Leases.

Plaintiffs allege that Range violated Section 3.2(B)(1)(a) of the Settlement Agreement by calculating the maximum cap on post-production costs using a "heat content multiplier of One Million British Thermal Units ("MMBTU")." [Doc. 94 at 5]. However, this Court's Order amending the class members' oil and gas leases expressly provides Range's calculation of the cap on post-production costs using the MMBTU measurement is correct. [Doc. 84]. Specifically, the Court's Order expressly provides as follows:

1.      Each of the Class Leases … are amended to include the following additional terms:

****

>   (B)  Natural Gas Royalty Calculation.

>   (1)  All royalty payable under this instrument for natural gas produced from shale formations for any Accounting Period shall be calculated using the PMCF for the Gas Well(s), reduced by not more than the lesser of the following:

>>      (a)  the pro rata share of current Post Production Costs per MCF incurred during such period; and,

>>      (b)(i)  in the case of royalty attributable to Wet Shale Gas production, the pro rata share of **$0.80 per MMBTU**; or

>>      (b)(ii)  in the case of royalty attributable to Dry Shale Gas production, the pro rata share of **$0.72 per MMBTU**.

[Doc. 84] (emphasis added).  The Court's Order amending the class leases was entered on March 17, 2011, the date the underlying action was terminated.  [Doc. 84].  Until Plaintiffs' filing in January 2018, there has been no challenge to Range's calculation of the cap based on MMBTU as provided in this Court's Order.  Range's royalty statements clearly indicate that the cap is calculated based on MMBTU, the recognized standard in the industry for gas measurement, as the Court's Order requires.  [Doc. 94 at Ex. 11, pg. 82].

The allegations in Plaintiffs' Motion establish that Range is complying with the express requirement in the Court's Order that the post-production costs are subject to caps calculated per MMTBU. [Doc. 84].  This Court's jurisdiction in a case seeking to enforce a settlement agreement is limited to enforcement of its own order incorporating the settlement agreement. *See Kokkonen*, 511 U.S. at 381.  As Plaintiffs' Motion alleges that Range is calculating the caps according to MMBTU, and such calculations comply with the Court's Order, there is no further relief this Court can grant in this proceeding, and the claim must be dismissed.

**B.      Plaintiffs' Claim That Range Must Revise Its Royalty Statements Is Outside of the Court's Jurisdiction.**

Under the heading "Intentional Obfuscation," Plaintiffs allege that "Range has adopted a monthly royalty Statement format which is so convoluted and confusing as to make it impossible for class members to decipher …."  [Doc. 94 at 10].  While Plaintiffs complain about Range's presentation of the data contained in a royalty statement, Plaintiffs also appear to understand the reasoning for the discrepancies in the data that they are complaining about.  [Doc. 94 at 10-11] ("Presumably, this difference [in the data] is attributable to the fact that horizontal drilling of a well … [I]t is ostensibly for this reason that 0.125 royalty, to which the particular member is entitled to under the lease, has been reduced…").  Nevertheless, Plaintiffs argue that Range should be compelled to disclose additional information on class members' royalty statements, including class members' acreage and the total acreage in a unit.  [Doc. 94 at 11].

The Court lacks ancillary jurisdiction over this claim because it is unrelated to the enforcement of the Settlement Agreement.  *See Kokkonen*, 511 U.S. at 381; *see also Johnson v. City of Converse*, 2002 U.S. Dist. LEXIS 25924 (W.D. Tex. Nov. 21, 2002), adopted at 2003 U.S. Dist. LEXIS 4270 (W.D. Tex. Jan. 17, 2003) (in a motion to enforce settlement, a court does not have ancillary jurisdiction to consider new and independent claims that are unrelated to the underlying claims that were settled); *Woodcock Bros. Transp. Grp. v. Transp. Res., Inc.*, 2003 U.S. Dist. LEXIS 6086 (N.D. Ill. Apr. 11, 2003) (noting that "Plaintiff's present contentions would constitute a new claim, not enforcement of the settlement agreement. Even if this court retained jurisdiction to enforce the settlement agreement, it does not thereby have jurisdiction over tangentially related disputes that may arise between the parties.").  Plaintiffs are not contending that Range's royalty statements present data in a way that has breached the Settlement Agreement or the Court's Order amending the leases.  In fact, Plaintiffs appear to

assume that Range is correctly calculating the royalties due – Plaintiffs would just prefer that Range disclose more information or different information on its royalty statements.[1]  Plaintiffs are not entitled to assert new claims as part of a motion to enforce settlement, and then seek class-wide relief on the new claims, without having actually proved the merit of the claims or that such claims are even appropriate for class-wide treatment.

Further, this is not a claim at all.  There is no substantive cause of action in Pennsylvania for "intentional obfuscation" on an oil and gas royalty statement.  In Pennsylvania, 58 P.S. § 35.2 sets forth ten discrete categories of information that must be disclosed on a royalty statement. The seventh category is the "Interest owner's interest, expressed as a decimal or fraction, in production from paragraph (1)."  Range's disclosure on its royalty statements of a royalty owner's interest in production in decimal format is exactly what the statute requires.  *See id.* While Plaintiffs' Motion contends that disclosure in this format makes it difficult for some unidentified royalty owners to "confirm" if the calculation is correct, [Doc. 94 at 11], Range is complying with its obligations under the statute.  Finally, Plaintiffs provide no authority to this Court as to the legal grounds on which this Court could direct Range to disclose different or additional information in the royalty statements beyond what is required by 58 P.S. § 35.2. Plaintiffs are, in essence, seeking the extraordinary relief of a mandatory injunction against Range, even though Range is complying with its statutory obligations and Plaintiffs appear to

---

[1] In an apparent effort to link these new allegations back to the Settlement Agreement, Plaintiffs make the inflammatory accusation that Range deliberately designed its royalty statement to make it difficult for class members to recognize and challenge purported violations of the Settlement Agreement.  [Doc. 94 at 10].  This conclusory allegation raises an issue outside of the Settlement Agreement and outside the Court's jurisdiction.  In any event, the allegation is demonstrably false – Range also provides an explanation of the statement on its website for royalty owners, as well as a toll-free number for royalty owners, to get an explanation of the statements.  [Doc. 94 at Ex. 11].  Range's efforts to educate royalty owners as to the meaning of their statements are the opposite of "obfuscation."

concede that Range's calculations are correct.  In addition to the fact that this Court lacks

jurisdiction to hear this claim, there is no legal basis for such relief in this case, and Plaintiffs

have not attempted to meet their "particularly heavy" burden of justifying a mandatory

injunction.  *See Punnett v. Carter*, 621 F.2d 578, 582 (3d Cir. 1980).  The claim must be

dismissed.

      C.      **Plaintiffs' Claim That "Certain" Class Members Have Lease Provisions Which Override The Order Amending Leases Is Outside Of The Court's Jurisdiction Or, In the Alternative, Is Barred by The Terms Of The Order.**

      Plaintiffs claim that Range has failed to comply with minimum royalty provisions in

certain unidentified class members' leases.  [Doc. 94 at 9].  In support, Plaintiffs attach one oil

and gas lease with a clause in an addendum to the lease that provides:

>       4.      Notwithstanding anything to the contrary in paragraph 4(C) of the Lease, the post production costs shall not cause the Lessors royalty to be less than 12.5% of the price paid to Lessee per thousand cubic feet of such gas and their constituents so marketed and used.

[Doc. 94 at Ex. 9].  Plaintiffs claim that Range has taken the position that the Section 3.2(B) of

the Settlement Agreement supersedes the language in this specific addendum.  *Id.* at 9.  Plaintiffs

do not identify any other class members with the same addendum – but nevertheless appear to

seek class-wide relief on behalf of any unknown class members with this addendum.[2]  This claim

is beyond the ancillary jurisdiction of the court on a motion to enforce a settlement agreement.

There are no allegations that Range is breaching the Settlement Agreement or any of this Court's

Orders.  *Id.* at 9.  In fact, Plaintiffs admit Range is applying the terms of the Settlement

Agreement to this lease, but seek an order that as to this lease and an unknown number of other

class members, Range should not follow the Settlement Agreement.  This claim is plainly

unrelated to the enforcement of the Settlement Agreement, which settled different claims by the

---

[2] Plaintiffs allege that the class consisted of 24,587 class members [Doc. 94 at 5], but have not identified how many of these class members, if any, have the same addendum language.

class members.  It is beyond the Court's ancillary jurisdiction in this proceeding.  *See Kokkonen*, 511 U.S. at 381.

This claim also has no merit.  The Court's Order amending the class members' leases explicitly states that it displaces any contrary or inconsistent provisions in the amended leases:

> 1.    Each of the Class Leases, including but not limited to those identified in Schedule "A" attached hereto, are hereby amended to include the following terms:
>
> ANY PROVISION of this instrument (or any instrument to which this instrument is an amendment) to the contrary notwithstanding …
>
> ***
>
> 2.    This Order shall govern over any inconsistent provisions of the Class Leases and shall be effective as of the date of this Order, without regard to the date of recording, and that except as expressly amended by this Order, the Leases shall remain in full force or effect…

[Doc. 84 at 2, 4].  Plaintiffs appear to be arguing that the addendum should be enforced to require Range to deduct less than the maximum capped amount for post-production costs, even though the class members' leases have been amended to permit Range to deduct up to the cap on post-production costs.  *Id*.  Any requirement in the class members' leases (or addendums) that purports to apply a different limitation or cap on the amount of post-production costs Range may deduct, other than what is set forth in the Order amending leases, is an "inconsistent" provision that has been displaced by the Order amending leases.  Accordingly, even if considered, the plain language of the Court's Order negates this claim.  *Id*.

### D.    Plaintiffs' Allegations That Range Has Failed To Apply The Settlement Agreement To "Certain" Unidentified Royalty Owners Fails To Establish That These Royalty Owners Are Part Of The Class.

Plaintiffs allege that Range failed to apply the terms of the Settlement Agreement to certain unidentified leases.  [Doc. 94 at 9-10].  In support, Plaintiffs attach an excerpt of a royalty statement that purports to show that no cap on post-production costs is applied for a particular well for an unidentified owner.  *Id*. at Ex. 10.  Plaintiffs do not allege any facts or provide any

explanation as to why this royalty owner is a member of the class and should be subject to the terms of the Settlement Agreement.  Plaintiffs also do not explain the basis for their belief that there are more royalty owners than the one whose royalty statement is attached.

If Plaintiffs intend to pursue a claim that Range is breaching the Settlement Agreement by not properly administering its terms as to purported class members, they must, at the very least, provide a basis for claiming class membership.  Because Plaintiffs have not even pled that this claim applies to actual members of the class certified by this Court, this claim is outside of the Court's ancillary jurisdiction and must be dismissed.

## II.    PLAINTIFFS' REMAINING CLAIMS SHOULD BE SUBJECT TO REASONABLY LIMITED DISCOVERY AND, IF NECESSARY, AN EVIDENTIARY HEARING

While Range also disputes the merit of remaining claims, it does not oppose reasonably limited discovery and an evidentiary hearing if necessary.  For the reasons explained briefly below and based on evidence that may be further developed through limited discovery, Plaintiffs will not prevail in showing that Range breached the Settlement Agreement.

### A.    Range Does Not Oppose Limited Discovery On Plaintiffs' Claim Relating To The Deduction Designated "TAI-Transport."

Plaintiffs allege that Range is improperly deducting an expense designated as "TAI-Transport" and in support, attach an excerpted royalty statement from one royalty owner for one month reflecting a $0.52 cent net deduction.  [Doc. 94 at 8-9 and Ex. 8].  Plaintiffs characterize this charge as being deducted "from the NGL royalty" and allege that "this deduction … supposedly covers the expense of transporting the NGL bearing gas by pipeline from the wellhead to the processing facility where it is stripped." *Id.* at 9.  Plaintiffs claim that this deduction is improper because NGLs are resident in the gas stream prior to being removed at the

processing facility, and therefore there should be no additional transportation expense to transport them to the processing facility.  *Id*.

It is Range's position that reasonably limited discovery will establish that as to the excerpted royalty statement attached as the support for these allegations, Plaintiffs have misread the statement and therefore mischaracterized this deduction.  The product code (designed "PC" on the royalty statement) for the product that is subject to this deduction is "2."  *Id*.  Although not defined in the one-page excerpted royalty statement at Exhibit 8, a full and complete copy of a royalty statement is attached as Exhibit 11, and the last page of that royalty statement defines a "PC" or "Product Code" of "2" as "Gas."  *Id*. at Ex. 11.  NGLs would be designated under a "PC" or "Product Code" of "3."  *Id*. at Ex. 11, pg. 82.  Plaintiffs have misread the royalty statement and therefore mischaracterized this transportation charge as applying to NGLs, when in fact, it applies to gas.  Plaintiffs' challenge to this deduction rests on a mistaken premise.

The deduction designated as "TAI" in the excerpted royalty statement is an unaffiliated third party charge that Range incurred relating to the transportation of natural gas, not NGLs.  Range does not oppose allowing Plaintiffs to engage in reasonably limited factual discovery as to the deduction designated "TAI" in the excerpted royalty statement so that Plaintiffs can confirm that Range properly deducted this transportation charge.

### B.    Range Does Not Oppose Limited Discovery On Plaintiffs' Claim Relating To The Deduction Designated "PHI-Proc Fee."

Plaintiffs allege that Range is breaching the Settlement Agreement by improperly deducting a processing fee designated "PHI-Proc Fee," and attach a single excerpted royalty statement showing the deduction of a fee with this designation.  [Doc. 94 at 8 and Ex. 7].   As purported support for this claim, Plaintiffs allege that "The Class, however, *believes* that the NGL sale proceeds reflected in the statements are actually the net proceeds received from the

processor who already deducted and retained the processing fee … If this is so, the Class is being charged twice for the processing fee." *Id.* at 8 (emphasis added).

It is Range's position that reasonably limited discovery will demonstrate that the Class's purported "belief" they are being charged twice for the same fee is wrong. The underlying premise for the Class's "belief" – that the price shown on the excerpted royalty statement is net of all costs of processing for NGLs – is factually incorrect. To the contrary, Range is charged and pays a separate processing fee designated as "PHI-Proc Fee." Under the terms of the Settlement Agreement governing the calculation of NGLs, Range is entitled to deduct the class members' proportionate share of the processing fee. While a "belief" of wrongdoing is not sufficient to support a claim that Range is breaching the Settlement Agreement, Range does not oppose allowing Plaintiffs to engage in reasonably limited factual discovery as to the deduction designated "PHI-Proc fee" in the excerpted royalty statement so that Plaintiffs can confirm that Range properly deducted this processing charge.

C. **Range Does Not Oppose Limited Discovery On Plaintiffs' Claim Relating To The Deduction Designated "PFC-Purchased Fuel.**

Under the heading "Improper Deduction of 'PFC-Purchased Fuel' Expense," Plaintiffs appear to be contending that Range has improperly failed to subject a deduction designated "PFC - Purchased Fuel" to the caps on post-production costs set forth in the Settlement Agreement. [Doc. 94 at 6-7 and Ex. 6]. The vast part of Plaintiffs' argument in support of this claim appears to raise concern with Range's accounting for gas that was used as fuel before it started purchasing gas. *Id.* at 7. Since Plaintiffs have not asserted a claim that Range's accounting for gas that was used as fuel breaches the Settlement Agreement, this argument is irrelevant.

It is Range's position that reasonably limited discovery will establish that gas that is purchased as fuel *is* subjected to the caps on post-production costs as set forth in the Settlement

Agreement.  However, for the first month that this deduction was taken, Range inadvertently failed to include this deduction in its calculation of the cap on post-production costs in the Settlement Agreement.  Range promptly recognized the mistake, and refunded all affected class members in the following month.   All future deductions of purchased fuel have continued to be included in Range's calculation of the post-production caps under the Settlement Agreement. While the class members affected have already been made whole, Range does not oppose reasonably limited discovery as to the deduction designated "PFC-Purchased Fuel" so that Plaintiffs can confirm that Range's inadvertent error was corrected and it has abided by the terms of the Settlement Agreement.

> **D.    Range Does Not Oppose Limited Discovery On Plaintiffs' Claim Relating To The Deduction Designated "FCI-Firm Capacity."**

Plaintiffs claim that Range is deducting a pipeline transportation expense designated on royalty statements as "FCI-Firm Capacity," which Range is improperly not including in its calculation of the cap on post-production costs under the Settlement Agreement.  [Doc. 94 at 6]. Plaintiffs state that upon inquiry, Range explained that this deduction represents the additional cost of transportation from the point where Range could sell the gas locally, to the more distant location where Range actually sells the gas.  *Id.*  Plaintiffs acknowledge Range's position that this deduction is not subject to the caps on post-production costs in the Settlement Agreement because Range owes no obligation to transport gas beyond the local market where it could sell the gas, and that by transporting to more distant markets, the class gets a corresponding benefit of a higher sales price.  *Id.*  Plaintiffs contend that regardless of any benefit gained by additional transportation fees to move gas to higher price markets, Range is breaching the Settlement Agreement by not including this transportation fee in the cap.  *Id.*

It is Range's position that reasonably limited discovery will establish that its

representations made to Plaintiffs are in fact accurate and correct.  Further, discovery will

establish that Range's treatment of the pipeline transportation expense designated as "FCI-Firm

Capacity" complies with the terms of the Settlement Agreement and the parties' expectations and

intent with respect to interstate transportation expenses at the time the parties entered into the

Settlement Agreement.  While Range does not believe Plaintiffs can meet their burden of proof

on this claim, Range does not oppose reasonably limited discovery as to the deduction

designated "FCI –Firm Transport," and if necessary, an evidentiary hearing.

## III.    THERE IS NO BASIS AT THIS PROCEDURAL JUNCTURE FOR AN AUDIT

Plaintiffs also seek an Order of Court directing Range to submit to an audit.  [Doc. 94 at

11].  Plaintiffs represent that the disposition of the issues raised in Plaintiffs' Motion may require

factual discovery, but argue that the ordinary discovery process of interrogatories, requests for

production and depositions would be "too limited a tool for this purpose."  *Id.*  Plaintiffs suggest

a procedure where the Court would compel Range to submit to an "audit," the results of which

Range could challenge in a subsequent evidentiary hearing.  *Id.* at 11-12.

Plaintiffs do not cite any contractual, statutory, or legal authority for the kind of

boundless class-wide audit that they are proposing to supersede the ordinary discovery process

established under the Federal Rules of Civil Procedure.  Further, there is nothing in the Court's

Orders or the Settlement Agreement that authorizes an audit or the appointment of an expert, and

therefore this request is beyond the ancillary jurisdiction of this Court.  While Plaintiffs purport

to justify this extraordinary relief based on the violations they contend occurred, as explained

above, the vast majority of Plaintiffs' claims should be subject to summary dismissal or should

be quickly resolved through very direct and targeted fact discovery, because only limited

discovery is necessary to establish that Plaintiffs are wrong.  The request for an "audit" appears to be nothing but an impermissible fishing expedition.  Plaintiffs must substantiate and then prove their claims that Range is breaching the Settlement Agreement.  They are not entitled to a blanket right to audit Range based on mere beliefs or suspicions in order to look for support for otherwise factually unsupported claims.

Although not framed as such, to the extent Plaintiffs' request for the appointment of an auditor is premised on Fed. R. Evid. 706, it should be rejected.  Rule 706 authorizes court appointment of a neutral expert, but "should be reserved for exceptional cases in which the ordinary adversary process does not suffice."  *See Tormasi v. Hayman*, 2009 WL 3335061 (D. N.J. Sept. 9, 2009) (citing *LeBlanc v. PNS Stores, Inc.*, 1996 WL 607017, at *1 (E.D. La. 1996)). The purpose for Rule 706 is assistance to the Court – it is not appropriate to appoint an expert to help a plaintiff prove its claims.  *See Carranza v. Fraas*, 763 Supp. 2d 113, 120 (D.D.C. 2011) ("Courts do not, however, appoint expert witnesses for the purpose of assisting a litigating party."); *Hannah v. United States*, 2006 WL 2583190, at *4 (N.D. Tex. Sept. 1, 2006) (declining to appoint an expert witness because such appointment would merely assist the plaintiff prove his case rather than provide a neutral expert view for the court); *Daker & Kennedy v. Wetherington*, 2006 WL 648765, at *5 (N.D. Ga. Mar. 15, 2006) (noting that "[l]itigant assistance is not the purpose of Rule 706").  Further, Plaintiffs have already acknowledged that they have retained an expert in oil and gas accounting who is providing assistance to Plaintiffs. [Doc. 93 at 4].

## **CONCLUSION**

Four of the Plaintiffs' claims should be summarily dismissed.  As to the remaining

claims, the Court should permit reasonably limited factual discovery only to the extent needed to

evaluate Plaintiffs' remaining claims and Range's defenses to those claims, and if necessary,

hold an evidentiary hearing.

REED SMITH LLP


February 23, 2018                            /s/ Kevin C. Abbott_____
                                             Kevin C. Abbott
                                             PA ID No. 35734
                                             Justin H. Werner
                                             PA ID No. 203111
                                             Jennifer Thompson
                                             PA ID No. 320728
                                             225 Fifth Avenue
                                             Pittsburgh, PA  15222
                                             (412) 288-3804/3838/3622
                                             kabbott@reedsmith.com
                                             jwerner@reedsmith.com
                                             jmthompson@reedsmith.com

                                             Counsel for Defendant
                                             Range Resources-Appalachia, LLC

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing has been

served via the Court's ECF Filing System on the following:

> Joseph E. Altomare
> 700 Rockwood Drive
> Titusville, PA  16354


February 23, 2018                                    /s/ Kevin C. Abbott