IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONALD C. FREDERICK and ) <br> LOUISE M. FREDERICK, h/w, ) <br> MICHAEL A. MAHLE and ) <br> PAULA M. MAHLE, h/w, DONALD ) <br> PORTA, and all other persons similarly ) <br> situated, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> RANGE RESOURCES - ) <br> APPALACHIA, LLC, ) <br> ) <br> Defendant. ) | Civil Action No. 08-288 Erie <br><br> Judge Cathy Bissoon |

**MEMORANDUM AND ORDER**

**I. MEMORANDUM**

Pending before the Court is a motion (**Doc. 93**) by class representatives Donald C. and Louise M. Frederick, Michael A. and Paula M. Mahle, and Donald Porta, ("Plaintiffs") seeking enforcement of a class settlement agreement and sanctions against Range Resources-Appalachia, LLC ("Range Resources" or "Range"). For the reasons that follow, Plaintiffs' motion will be GRANTED in part and DENIED in part without prejudice to be reasserted following a period of discovery.

**BACKGROUND**

Plaintiffs commenced this action in the Court of Common Pleas of Warren County, Pennsylvania on behalf of themselves and other similarly-situated owners of royalty interests in gas and oil that was produced by Range Resources. Doc. 1-2. Range removed the case to this Court on October 17, 2008, based on its assertion of subject-matter jurisdiction pursuant to the

1

Class Action Fairness Act, 28 U.S.C. §1332(d). Doc. 1. The case was originally presided over by then-United States District Judge Sean J. McLaughlin.

In their operative pleading, filed on April 5, 2010, Plaintiffs sought an accounting, damages, and injunctive relief against Range Resources to redress its allegedly improper deduction of certain post-production costs from royalty payments that were made under the class members' oil and gas leases. *See* Doc. 44. After Range Resources filed its responsive pleading, the Court was advised that the parties had reached a tentative settlement agreement. *See* Doc. 83 at 3.

There were two components to the proposed settlement. With respect to royalty payments that had previously been issued from September 15, 2004, through April 1, 2010, Range Resources agreed to make a one-time, lump sum payment of $1.75 million to compensate class members for the alleged underpayments. Doc. 73-1 at §3.1. With respect to future royalty payments that would be made over the remaining life of the class members' leases, the parties agreed to cap the amounts of post-production costs that Range Resources would be able to deduct from its royalty payments. *Id*. at §3.2. To that end, the parties agreed that the class members' leases should be amended to add an agreed-upon formula for computing the future caps on post-production costs. *Id*. The parties also agreed to seek a court order that would effectuate the agreed-upon amendments by formally incorporating them into the class members' leases. *Id.* at §3.3.

On March 17, 2011, following notice and a fairness hearing, Judge McLaughlin issued a memorandum opinion and order certifying the class and granting final approval of the parties' Second Amended Agreement and Stipulation of Settlement (hereafter, the "Settlement Agreement"). *See* Docs. 73-1, 83. Contemporaneously with that ruling, and consistent with the

terms of the parties' Settlement Agreement, Judge McLaughlin entered a separate order amending the class members' leases (hereafter, the "Order Amending Leases"). *See* Doc. 84.

In their pending motion, Plaintiffs contend that Range Resources has intentionally violated the terms of the parties' Settlement Agreement by underpaying the class members' royalties. Doc. 93 ¶3. According to Plaintiffs, the underpayments have been achieved by use of the following "artifices":

    (a) Range has improperly calculated the Cap by using MMBTUs (each, one million British Thermal Units) instead of MCFs (each, 1,000 cubic feet) as the multiplier required by Section 3.2(B)(1)(a) of the Settlement Agreement.

    (b) Range improperly deducts pipeline transportation costs (disguised in its Statements as "FCI-Firm Capacity") to which it is not entitled, and additionally fails to include such cost in its Cap calculations.

    (c) Until recently, Range purported to have used wellhead gas from the Class wells to fuel the operation of the on-site equipment it uses to gather, dehydrate, process and compress the gas for transport by pipeline to market. More recently, it says it no longer uses wellhead gas and rather purchases fuel for such purpose and has begun to deduct that expense from the royalty (denominated in Range's Statements as "PFC-Purchased Fuel") without including such cost in its Cap calculations. Furthermore, the Class believes that the charge for Purchased Fuel results in a double deduction for the same fuel.

    (d) Under Section 3.2(C) of the Settlement Agreement, *supra,* the Class royalty on the sale of natural gas liquids ("NGLs")[,] which are stripped and sold separately from the gas, is to be calculated by deducting the stripping facility's charges for processing from the gross proceeds of such sales. The Class believes that the gross proceeds reflected in the Statements are actually already net of the stripping facility's charges. Range nevertheless deducts such charges a second time (denominated in Range's Statements as "PHI-Proc Fee").

    (e) Range also improperly deducts from the NGL royalty under Section 3.2(C) of the Settlement Agreement a charge (denominated as "TAI-Transport" in its statements) for transportation of natural gas liquids ("NGL") to the stripping facility notwithstanding that the NGL's are resident in the transported gas.

    (f) Range has improperly calculated the royalties due certain class members by failing to honor minimum royalty provisions contained in those members' leases.

  (g) Range has not applied the Cap in calculating the royalty due certain members of the class.

  (h) Range has further intentionally issue[d] to class members monthly royalty statements ("Statements") in a format which is so complex and confusing as to be indecipherable by Class members without the assistance of an attorney or accountant knowledgeable in oil and gas accounting.

*Id.*

  To redress these alleged breaches, Plaintiffs seek relief in two stages. First, they request a preliminary order that allows Class Counsel to retain an auditor and conduct discovery relative to Defendant's unpaid monetary liability, including "in-house access to all of Range's relevant paper and electronic records . . . ." Doc. 93, ¶5(a)(ii). Second, Plaintiffs request that the Court hold an evidentiary hearing following the completion of discovery, so that the Court can determine the propriety of: (a) a cease and desist order, (b) an award of monetary compensation for previously unpaid royalties, (c) punitive monetary sanctions, (d) an award of reasonable attorney fees and expenses, and (e) an order directing Defendant to submit to the Court a revised statement format which "eliminates the elements complained of" and "makes [the statement] reasonably understandable without professional assistance . . . ." Doc. 93, ¶5(b)(vi).

  In its response, Range Resources argues that certain aspects of Plaintiffs' motion should be summarily dismissed because they either lack facial merit or fall outside the ancillary jurisdiction of the Court. As to other aspects of Plaintiffs' motion, Range Resources does not object to a period of limited discovery and/or an evidentiary hearing, if warranted, but it disputes the propriety of an audit.

**JURISDICTION**

  Federal courts are courts of limited jurisdiction and, as such, they do not automatically have jurisdiction to enforce a settlement agreement that was reached in a federal case. *Kokkonen*

4

*v. Guardian Life Ins. Co.*, 511 U.S. 375, 380-81 (1994); *Shell's Disposal and Recycling, Inc. v. City of Lancaster,* 504 F. App'x 194, 198 (3d Cir. 2012).  A federal district court will have ancillary jurisdiction over a disputed settlement agreement if the court "'embod[ied] the settlement contract in its dismissal order' or specifically retained jurisdiction over enforcement of the settlement." *Shell's Disposal and Recycling,* 504 F. App'x at 198 (quoting *Kokkonen,* 511 U.S. at 381–82).

In this case, the Court expressly incorporated the provisions of the Settlement Agreement into its March 17, 2011 Order Amending Leases.  *See* Doc. 84 at 2.  The latter order, in turn, was incorporated by reference into the Court's contemporaneous order certifying the class, giving final approval to the parties Settlement Agreement, and closing the case.  *See* Doc. 83 at 26, ¶4.  Thus, in effect, the Court expressly included the terms of the Settlement Agreement in its dismissal order, giving it ancillary jurisdiction to enforce the agreement.

**STANDARD OF REVIEW**

"Because a settlement agreement is a form of contract, allegations of breached settlement obligations are governed by contract law.*"  Jacob's Limousine Transp., Inc. v. City of Newark*, 688 F. App'x 150, 151(3d Cir. 2017) (citing *Plymouth Mut. Life Ins. Co. v. Illinois Mid-Continent Life Ins. Co.*, 378 F.2d 389, 391 (3d Cir. 1967)).  Issues concerning the scope and enforceability of a settlement agreement are similarly governed by principles of contract law. *See Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (stating that a determination concerning the scope of a settlement agreement is a matter of contract law); *Mazzella v. Koken*, 739 A.2d

531, 536 (Pa. 1999) ("The enforceability of settlement agreements is governed by principles of contract law.").[1]

"When a court finds that an enforceable agreement has been formed, the court next must decide whether its terms are 'sufficiently unambiguous to permit judicial interpretation of the contract ... as a matter of law.'" *Kristel, Inc. v. Cenveo Corp.*, No. 3:16-CV-181, 2017 WL 3842860, at *2 (W.D. Pa. Sept. 1, 2017) (quoting *Behrend v. Comcast Corp.*, No. CIV. A. 03-6604, 2012 WL 4459582, at *6 (E.D. Pa. Sept. 25, 2012)) (ellipsis in the original). "To prevail on a motion to enforce settlement, the moving party must satisfy the court that there are no disputed issues of material fact, and the court must treat all factual assertions in the light most favorable to the non-moving party." *Id.* (citing *Tiernan v. Devoe*, 923 F.2d 1024, 1031-32 (3d Cir. 1991) (citing Fed. R. Civ. P. 56(c))). "'Where material facts concerning the *existence or terms* of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing,'" *Id.* (citing *Tiernan*, 923 F.2d at 1031)) (emphasis in the original).

A court must grant a motion to enforce a settlement agreement if it finds that the nonmovant breached a duty created by a binding agreement and that the breach caused the movant to suffer damages. *Jacob's Limousine Transp., Inc.,* 688 F. App'x at 151-52 (citing *Sheet Metal Workers Int'l Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (3d Cir. 2013)). The movant "'bears the burden of providing proof sufficient for the Court to find by a preponderance of the evidence that . . . [the nonmovant] breached a duty' under the terms of the Settlement Agreement." *Id.* at 152 (citation omitted) (ellipsis in the original).

---

[1] Section 10.6 of the Settlement Agreement expressly states that the agreement "shall be governed by, subject to, and construed in accordance with the laws of the United States and to the extent substantively pertinent, the law of the Commonwealth of Pennsylvania without regard to any conflicts of law or choice of law principle to the contrary." Doc. 73-1, §10.6.

## ANALYSIS

### A. Calculation of the Post-Production Cap Based on MMBTUs

As noted, the central dispute in the underlying class action litigation was whether Range Resources could legally withhold from its royalty payments certain post-production costs (hereafter, "PPCs") that it incurred in the course of bringing the class members' gas to market. The Settlement Agreement sought to resolve this dispute, in part, by establishing a formula for limiting, or capping, the amount of PPCs that Range would deduct from its future royalty payments. In relevant part, Section 3.2(B) of the Settlement Agreement contemplated that the following provisions would be incorporated into every class lease:

> **Natural Gas Royalty Calculation.** All royalty for natural gas payable under this instrument for any Accounting Period shall be calculated using the PMCF[2] for the Gas Well(s), reduced by not more than the lesser of the following:
>
> (1) the pro rata royalty share of current Post Production Costs per MCF[3] incurred during such period; and,
>
> (2)(a) in the case of royalty attributable to Wet Shale Gas production, the pro rata royalty share of $0.80 per MCF;
>
> (2)(b) in the case of royalty attributable to Dry Shale Gas production, the pro rata royalty share of $0.72 per MCF; or
>
> (2)(c) in the case of royalty attributable to all other nature gas production, current Post Production Costs per MCF reduced by $.03 per MCF.

Doc. 73-1 at §3.2(B).

---

[2] The proposed lease amendments defined "PMCF" to mean "the Price Per MCF, calculated by the formula: P/V where: 'P' is the total purchase price actually paid by First Purchasers for natural gas produced from a Gas Well(s) during an Accounting Period . . . and 'V' is the volume (in MCF's) of the natural gas purchased by such First Purchasers." *See* Doc. 73-1 at §3.2(A).

[3] The proposed lease amendments defined "MCF" to mean "one thousand cubic feet of volume of natural gas." *See* Doc. 73-1 at §3.2(A).

7

By order dated December 3, 2010, Judge McLaughlin reaffirmed his initial, provisional approval of the parties' proposed settlement terms and approved a proposed form of notice to the class. Doc. 74. In pertinent part, the class notice included language that explained how future deductions for PPCs would be calculated in the case of royalties attributable to wet shale and dry shale gas production. Doc. 73-2 at §D(2)(b). In conformity with Section 3.2(B) of the Settlement Agreement, the class notice informed class members that, for the duration of the class leases, Range Resources "would never deduct as Post Production Costs more than the lesser of the following: (1) in the case of royalty attributable to wet shale gas production, the pro rata (your royalty) share of $0.80 per MCF; [and] (2) in the case of royalty attributable to dry shale gas production the pro rata (your royalty) share of $0.72 per MCF . . . ." *Id.*

Following the fairness hearing, Judge McLaughlin gave final approval to the settlement. (Doc. 83.) He also entered the Order Amending Leases. (Doc. 84). Notably, the latter order contained language that deviated in material respects from the Settlement Agreement and class notice. In pertinent part, the Order Amending Leases included the following language relative to "Natural Gas Royalty Calculation":

> (1) All royalty payable under this instrument for natural gas produced from shale formations for any Accounting Period shall be calculated using the PMCF for the Gas Well(s), reduced by not more than the lesser of the following:
>
> (a) the pro rata royalty share of current Post Production Costs per MCF incurred during such period; and,
>
> (b)(i) in the case of royalty attributable to Wet Shale Gas production, the pro rata royalty share of $0.80 **per MMBTU**; or
>
> (b)(ii) in the case of royalty attributable to Dry Shale Gas production, the pro rata royalty share of $0.72 **per MMBTU**.

Doc. 84, ¶1 (emphasis added).

The present dispute arises, in large part, from the discrepancy between the Settlement Agreement's reference to "MCFs" and the Court's conflicting reference to "MMBTUs" in its Order Amending Leases. Though the term "MMBTU" is not defined in the Court's Order Amending Leases or in the Settlement Agreement, Plaintiffs explain that it refers to a "heat content multiplier of One Million British Thermal Units." (Doc. 94 at 5.) According to Range Resources, MMBTUs are "the recognized standard in the industry for gas measurement." (Doc. 101 at 7.) Range insists that, because the Court's Order Amending Leases refers to MMBTUs, and because Range has always calculated the PPC cap based on MMBTUs (as reflected in its statements for the past seven years), it has at all times complied with the Court's Order Amending Leases, and thus, there is nothing further for this Court to enforce.

Although Range is correct that it was in technical compliance with the Court's Order Amending Leases, its position on this point is problematic. First, the Court's Order contains an inherent contradiction inasmuch as it purports to incorporate MMBTUs into the class leases as the appropriate unit of measurement while at the same time incorporating by reference the terms of the Settlement Agreement, which utilize MCFs as the appropriate unit of measurement. By virtue of this inconsistency, the Order contains an inherent ambiguity. Second, the Court's Order Amending Leases is not in conformity with the form of notice that was sent to the Class prior to the final settlement hearing because the class notice, consistent with the Settlement Agreement, references "MCFs." Thus, to the extent Range has been operating under the assumption that MMBTUs are the proper measurement standard, it has done so contrary to the settlement terms to which class members consented and which Judge McLaughlin approved.

The source of this discrepancy is not entirely clear, but it appears to have originated with counsel. Exhibits appended to Plaintiffs' reply brief show that, on January 6, 2011, class counsel

inadvertently provided the Court an errant form of the parties' proposed Order Amending Leases, which contained a reference to "MMBTUs." (*See* Doc. 104-1 at 2-7.)   The following day, class counsel provided a corrected form, which contained the intended reference to "MCFs." (*See* Doc. 104-1 at 8-13.)  These documents comport with the following exchange between the Court and class counsel, which occurred at the fairness hearing held on January 10, 2011:

> THE COURT:  Now, let me just ask, to wrap up a couple housekeeping matters in terms of what documents I have.  Over the last week or two weeks I have received some addendums that have been filed.  And off the top of my head I can't remember, correcting some mistakes, what was that all about?
>
> MR. ALTOMARE:  There were two corrections, your Honor.  One correction you got was we mistakenly used a BTU measurement in the order to amend the leases.  It should have been the volume measurement.  In other words, if you look at the red line that I sent you as the change, did you get those?
>
> THE COURT:  Yes, I did.
>
> MR. ALTOMARE:  The only change in that red line was from MMBTU as a unit, to MCF, which is the volume metric measurement which was agreed to in the agreement.  We got confused when we did the order and used the BTU designation.  That's the only change there. . . .

(Tr. 1/10/11 Fairness Hrg., 110:5-20, Doc. 79-2.)  Plaintiffs' exhibits also indicate that Range's attorney may have supplied another proposed order to the Court after the fairness hearing which inadvertently reincorporated the reference to MMBTUs.  (Doc. 104-1 at 14.)  This theory is consistent with portions of the hearing transcript that suggest Range's counsel anticipated providing the Court a new proposed order with an attached list of the class leases.  (Fairness Hrg. Tr. at 116:25-117:10.)

The upshot is that, while no definitive determinations can be made at this time, it appears Judge McLaughlin's reference to MMBTUs in his Order Amending Leases was not intentional but rather the result of an inadvertent oversight.  This, in turn, raises questions about the propriety of relief under Rule 60 of the Federal Rules of Civil Procedure, an issue that neither

side has yet addressed. Complicating matters is the fact that Range has been calculating its royalty payments for a number of years on the basis of MMBTUs rather than MCFs and apparently disclosed as much on its royalty statements. Range contends that, if Plaintiffs believed its MMBTU calculations were erroneous, they should have raised the issue sooner. Plaintiffs maintain that Range's attorney was put on notice of the discrepancy in the Order Amending Leases as early as July 2013.

Given the present state of the record and the issues that persist relative to Range's past royalty payments under the Settlement Agreement, the Court cannot award definitive relief at this time. As an initial matter, the Court will direct counsel to confer with each other regarding a possible resolution of this matter. Failing that, the parties will have an opportunity to develop the record as it may relate to the propriety of relief under Rule 60, the applicability or non-applicability of laches, the extent of class damages, or any other issues that the parties may deem relevant.

### B. Deduction of "FCI-Firm Capacity" Expenses

Plaintiffs also claim that Range has improperly deducted from its royalty payments certain expenses that are designated as "FCI-Firm Capacity" charges on its statements. (*See* Doc. 94-4.) According to Plaintiffs, the "FCI-Firm Capacity" expense represents each class member's pro rata share of the portion of pipeline transportation expenses incurred from the point where gas could have been sold locally to the more remote point where it was actually sold. Plaintiffs assert that these charges should have been incorporated into the PPC cap but, instead, they were separately deducted from class members' royalty payments.

The propriety of these separate charges depends on whether or not they comprise part of Range Resources's PPCs. Concerning this point, the Court once again notes a discrepancy

11

between the relevant language in the Settlement Agreement and the language in the Order Amending Leases.  Under the terms of the Settlement Agreement, "Post Production Costs" are defined as "all items of current expense, including depreciation, incurred in the sale of natural gas after oil or gas is produced at the wellhead but before the first point of sale to a First Purchaser, including but not limited to the cost of gathering, dehydration, compression, processing, transportation and third party arms-length marketing of such gas." (Doc. 73-1, §§1.21 and 3.2(B).)  The term is defined in similar – but not identical – fashion in the Order Amending Leases, *to wit*: "all items of expense, including depreciation, incurred in the sale of natural gas produced at the well head to a First Purchaser, including but not limited to the cost of gathering, dehydration, compression, marketing and transportation of such gas from the well head to its point of delivery to such First Purchaser." (Doc. 84.)

       Having acknowledged the foregoing discrepancy, the Court finds it to be immaterial.  It is evident, based on a plain reading of either definition, that Range's "Post Production Costs" were intended to encompass the cost of transporting natural gas to the point where the gas is sold to a "First Purchaser."  Both the Settlement Agreement and the Order Amending Leases define a "First Purchaser" to mean "the first arms-length purchaser" of the subject oil, natural gas, or natural gas liquids. (Docs. 73-1 and 84.)  Thus, both documents support the conclusion that Range should have included within its PPCs cap the cost of transporting natural gas to more remote areas where the gas ultimately was sold to a "First Purchaser."  Having so concluded, the Court will afford the parties an opportunity to conduct additional discovery relative to Range's alleged breach of this provision and any resulting damages.

### C. <u>Range Resources's Failure to Honor Minimum Royalty Provisions</u>

Plaintiffs also contend that Range Resources failed to honor the terms of certain leases that guaranteed a particular minimum royalty. To illustrate this point, Plaintiffs have submitted, as their Exhibit 9, a sample lease containing an addendum with a "minimum royalty" clause. Doc. 94-9. The provision states:

> Notwithstanding anything to the contrary in paragraph 4(C) of the Lease [pertaining to the deduction of post-production costs from royalty payments], the post production costs shall not cause the Lessors['] royalty to be less than 12.5% of the price paid to Lessee per thousand cubic feet of such gas and their constituents so marketed and used.

(*Id.* at 6, ¶4.) According to Plaintiffs, Range improperly refused to honor these "minimum royalty" provisions and instead assumed that the provisions were superseded by the PPC cap set forth in the Settlement Agreement.

Range maintains that this particular objection is beyond the scope of the Court's ancillary jurisdiction. Alternatively, to the extent the Court has jurisdiction to consider Plaintiffs' objection, Range contends that Plaintiffs' argument lacks merit. Range points to language in the Order Amending Leases which states that the "Order shall govern over any inconsistent provisions of the Class Leases . . . ." (Doc. 84.) According to Range, the so-called "minimum royalty" provision is inconsistent with the PPC cap set forth in Section 3.2(B) of the Settlement Agreement; therefore, Range argues, the plain language of the Order Amending Leases negates Plaintiffs' "minimum royalty" claim.

Upon review of the relevant lease language, the Court agrees that this aspect of Plaintiffs' motion is outside the scope of the Court's ancillary jurisdiction. Plaintiffs' "minimum royalty" claims do not depend upon the enforcement of any term that formed the basis of the Settlement Agreement or any term that was incorporated into the Courts' March 17, 2011 orders. Instead,

these claims are predicated upon an addendum clause that exists entirely independent of the settlement terms.

Moreover, based upon the language in the Order Amending Leases, it is not even clear to this Court that the lessors who have "minimum royalty" clauses are part of the settlement class. Under the terms of the Court's order, the class is expressly defined to *exclude* "[a] Royalty Interest, to the extent arising under an instrument which expressly prohibits the deduction of Post Production Costs." Doc. 84. The sample lease appended as Plaintiffs' Exhibit 9 appears to do just that. Collectively, Paragraphs 4(A), (B) and (C) of the standard lease form provide that the lessor shall receive a royalty in the amount of 1/8 (i.e. 12.5%) of Range's gross sales, minus the lessor's pro rata share of Range's post-production costs (*see* Doc. 94-9 at ¶4(A)-(C)); however, the "minimum royalty" clause in the lease addendum overrides this arrangement by stating that Range's "post-production costs shall not cause the Lessors [sic] royalty to be less than 12.5%" of Range's gross sales. Doc. 94-9 at 6, Addendum ¶4. In effect, the addendum prohibits Range from deducting any post production costs from the 1/8 royalty payment that is promised to the lessor.

For the foregoing reasons, the Court is at a loss to see how it can enforce the Settlement Agreement as it relates to lessors who have "minimum royalty" clauses in their lease addenda. Accordingly, this aspect of Plaintiffs' motion will be denied.

### D. Disputed Issues of Fact

Plaintiffs' remaining objections implicate a host of factual issues that preclude the Court from rendering more definitive relief. Among the unresolved or disputed issues are the following: (i) what fuel source Range Resources purchases for the purpose of operating its equipment during the post-production phase and how (if at all) that fuel is accounted for in

calculating royalty payments; (ii) how Range Resources accounts for its "PHI-Proc Fee" and whether the class is effectively being charged twice for this fee by virtue of Range's separate deduction of these amounts; (iii) whether the deductions for "TAI-Transport" expenses represent a redundant fee that is already paid for by virtue of transportation charges applied to the natural gas in which the NGLs reside; (iv) whether, in certain cases, Range Resources is failing to apply any PPC cap at all, as Plaintiff's Exhibit 10 (Doc. 94-10) allegedly illustrates; and (v) what accounting method Range Resources uses to calculate its royalties relative to the "unit interests" of various class members.  So that the parties may appropriately explore these issues and others highlighted herein, the Court will grant Plaintiffs' request for a 120-day period of discovery, at the conclusion of which Plaintiffs may file a renewed motion to enforce the settlement agreement.

      In their motion, Plaintiffs request that the Court appoint an auditor who will have unfettered access to all of Range's accounts.  This request will be denied as premature.  Plaintiffs represent that they have already retained an expert to assist them in the prosecution of this motion, and they will have the ability to utilize their expert in the course of conducting additional discovery.  Should these measures prove insufficient, Plaintiffs can renew their request for appointment of an auditor with the benefit of a more developed record.

      Plaintiffs also seek injunctive relief in the form of an order directing Range to reformat its royalty statements so that the statements will be easier for class members to understand. Assuming for the sake of argument that this Court has the authority to grant such relief, the Court declines to do so at this juncture in light of the many factual issues that remain unresolved.

## II. ORDER

For the reasons stated above, Plaintiffs' Motion for Enforcement of Class Settlement Agreement and for Sanctions (**Doc. 93**) is **GRANTED** with respect to Plaintiffs' request for a period of discovery, which shall commence upon the filing of this Order and close 120 days thereafter. Plaintiffs' request for enforcement of the "minimum royalty" clause illustrated in their Exhibit 9 (Doc. 94-9) is **DENIED** for lack of jurisdiction. Plaintiffs' requests for appointment of an auditor is **DENIED, without prejudice,** as premature. In all other respects, Plaintiffs' motion is **DENIED** without prejudice to be reasserted, as appropriate, following the period of discovery provided for herein.

IT IS SO ORDERED.

July 26, 2018                                                              s/ Cathy Bissoon
                                                                           Cathy Bissoon
                                                                           United States District Judge

cc (via ECF email notification):
   All Counsel of Record