IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONALD C. FREDERICK and LOUISE M. FREDERICK, h/w, MICHAEL A. MAHLE and PAULA M. MAHLE, h/w, DONALD PORTA, and all other persons similarly situated, | CASE NO: 1:08-cv-00288E |
| Plaintiffs, | |
| v. | |
| RANGE RESOURCES – APPALACHIA, LLC, | |
| Defendant. | |

## OBJECTIONS OF RAYMOND W. SEDDON, JR. TO PROPOSED SUPPLEMENTAL AGREEMENT AND STIPULATION OF SETTLEMENT

Raymond W. Seddon, Jr. by and through counsel, Houston Harbaugh, P.C., Robert J. Burnett, Esquire, Brendan A. O'Donnell, Esquire and Erik M. Bergenthal, Esquire hereby files the within Objections to the a proposed Supplemental Agreement and Stipulation of Settlement (the "Supplemental Settlement") in accord with the May 22, 2019 Order authorizing such Objections. [ECF Doc. 141]. The Supplemental Settlement contemplates the right of appeal for Class members that file objections. For clarity and certainty, this filing constitutes Objections on behalf of Raymond W. Seddon, Jr. that are presented in conformance with the referenced Order and which reserves all rights to lodge an appeal.

**Introduction**

This Honorable Court must reject the Supplemental Settlement as presented because it is unworkable, poorly crafted and outside of the scope of this Honorable Court's jurisdiction. It relies on an amorphous "Class" that is different than the Class certified in 2011 and purports to

settle issues which were never shown to be matters of class-wide concern without a re-certification of a class. The Supplemental Settlement does not deliver any new benefit to the Class - it simply restores the deal that the Class originally bargained - but only to part of the Class. This Honorable Court must look closely at the facts and motivations of the parties involved and reject the Supplemental Settlement as presented.

**Objector as Class Member**

Raymond W. Seddon, Jr. owns oil and gas in Washington County, Pennsylvania and was a member of this Class when it was certified in 2011. The within-referenced "Order Amending Leases" was indexed against him in the Washington County Recorder of Deeds. Mr. Seddon was identified in the mailing roster associated with the Mailing of Supplemental Proposed Class Settlement Notice on December 22, 2010. [ECF Doc. 75].

**Background of the Original Settlement**

The *gist* of this proceeding was a challenge by royalty owners to royalty payment practices by Range Resources-Appalachia, LLC ("Range"). [ECF Doc. 83 at p. 2]. This matter settled in 2011. [ECF Doc. 83]. As part of that settlement (the "Original Settlement"), Range agreed to place certain "caps" on post-production costs under certain oil and gas leases. These "caps" were agreed to be volumetrically measured by using "MCF". [ECF Doc. 73-1 at p. 8]. Range also agreed to pay members of the Class an "initial payment" of $1.75 Million, which reflected approximately 14% of the past charges that were contested in this case. [ECF Doc. 83 at p. 3].

In certifying this case as a class action, Judge McLaughlin defined the "Class" to be

a)      **Class Membership.** The membership of the Class shall consist of Persons who held a Royalty Interest in any Pennsylvania and/or Ohio oil and/or gas estate at any time after September 15,

2004 that was, is or became Owned by Range, its predecessors or affiliates at any time prior to [the date of this Order].

[ECF Doc. 83 at p. 25]. Judge McLaughlin also entered an "Order Amending Leases" that was intended to amend Class members' leases to reflect the agreed-to "caps" on post-production costs. [ECF Doc. 84]. In the March 17, 2011 Order that approved, *inter alia*, the Original Settlement and Class Counsel's attorneys' fees, Judge McLaughlin wrote "This matter is closed." [ECF Doc. 83 at p. 26].

At the same time that Judge McLaughlin certified the Class and approved the Original Settlement, the Court also approved Class Counsel's request for attorneys' fees. Joseph E. Altomare, Esq. ("Class Counsel") received 25% of the $1.75 Million "initial payment" to the Class as well as a royalty of $.005 cents per MCF volume of gas produced from leases subject to the Original Settlement for five (5) years, which was valued at approximately $4.2 Million. [ECF Doc. 83 at pp. 13-14].

**Class Counsel is Informed that the Order Amending Leases Is Inconsistent with the Original Settlement.**

On July 8, 2013, a member of the Class "complained" to Class Counsel that Range was computing royalties using "MMBTU" as the unit of measure, instead of "MCF". [ECF Doc. 107 at p. 9]. The Order Amending Leases express the post-production cost "cap" using "MMBTU" as the unit of measure. [ECF Doc. 84]. Class Counsel brought this discrepancy to Range's attention but was apparently unable to gain traction on it - and in a March 17, 2014 to e-mail to Range's General Counsel, Class Counsel wrote, "[l]astly, we have not yet resolved the MCF/MMBTU discrepancy in the amended class leases – I am inclined not to press this, but we should discuss it." [ECF Doc. 107 at p. 9; Ex. E]. Consistent with his representation to Range, Class Counsel

took no action at that time to approach this Honorable Court to correct the inconsistency between the Order Amending Leases and the Original Settlement.

**In 2018, Class Counsel Moves this Court to Correct the Post-Production Cost "Cap" Error and to "Enforce" the Original Settlement.**

After approximately seven (7) years of docket inactivity following entry of the Order Amending Leases, Class Counsel filed a Motion for Enforcement of Class Settlement Agreement and Sanctions (the "Motion to Enforce") on January 24, 2018. [ECF Doc. 93]. In the Motion to Enforce, Class Counsel raised the issue of the discrepancy between the post-production "cap" calculation in the Order Amending Leases and the Original Settlement. [ECF Doc. 93]. Class Counsel identified seven (7) other purported violations of the Original Settlement:

- improper deduction of transportation costs and failure to include it within a "cap"'
- charging "double" the deductions for Purchased Fuel'
- Double-charging processing fees associated with natural gas liquids (NGLs);
- improperly charging transportation fees for moving NGLs to a processing facility because the NGLs are resident in the gas stream at that time;
- failing to adhere to minimum royalty provisions in some Class members' leases;
- Failing to apply the "cap" in calculating royalty due to certain Class members;
- Issuing complex and confusing royalty statements.

[ECF Doc. 93 at pp. 4-5]. Thereafter, in response to an Order from this Honorable Court, Class Counsel filed a separate "Rule 60(a) Motion for Correction of Order" (the "Motion to Correct") that separately addressed the discrepancy between the calculation of the post-production cost "cap" between the Original Settlement and the Order Amending Leases. [ECF Doc. 106]. Responding to the Motion to Correct, Range argued, *inter alia* that the requested relief ". . . would require Range to change how it calculates the cap on post-production costs under all of its

contracts with the class and their successors in interest under the class leases." [ECF Doc. 113 at p. 7].

**Range and Class Counsel Mediate Dispute and Negotiate the Supplemental Settlement.**

Apparently after limited discovery related to the Motion to Enforce, Range and Class counsel participated in mediation in January 2019, which resulted in the Supplemental Settlement. The Supplemental Settlement encompasses both the Motion to Enforce and the Motion to Correct and contains the following "deliverables" to the Class:

- Range will pay the Class $12 Million (less fees to Class Counsel) as a lump-sum reimbursement for the use of "MMBTU" versus "MCF" in calculating the post-production cost "cap", to be calculated by a formula based on the MCF attributable to each Class Member;

- Range will make a supplemental payment to Class members based on the value from January 2019 through a certain "Mailing Date" that represents royalty payments that each Class member was entitled if royalties were calculated on an MCF basis that have not been received by the Class member;

- Range will prospectively "cap" its post-production costs in a manner consistent with the Original Settlement (using "MCF" as the unit of measure);

- Range will record an "Amended Order Amending Leases" reflecting the "MCF" post-production cost "cap" in the Recorders' offices, with the recording indexed to Range as "grantor" and each Class member as "grantee";

- Range agrees that, consistent with its past practice, it will not charge post-production costs that Range does not incur.

[Supplemental Settlement]. In return, Class Counsel agreed to a broad "Release of Range" whereby the Class would release Range:

> . . . of and from any and all causes of action, claims, damages, equitable and legal and administrative relief, interest, demands or rights, whether based on federal, state or local statute or ordinance, regulations, contract, common law, equitable doctrine, or any other source, known or unknown, which have been, could have been, may be, or could be alleged or asserted by Releasor against Releasees arising out of the facts giving rise to the Motion to Enforce, from the beginning of time through the Effective Date of

this Supplemental Agreement, including but not limited to claims related to the marketing and sale of oil and/or natural gas and natural gas liquids, the price used to calculate royalties, any deductions taken before or after that price is determined, and the quantity of products on which such royalties were paid.

[Supplemental Settlement]. The Release applies to "[e]ach member of the Class, along with and for each of his/her/its respective heirs, predecessors, beneficiaries, affiliates, subsidiaries, successors, assigns, administrators, representatives, officers, directors, agents and attorneys. . ." [Supplemental Settlement].

**This Honorable Court Directs that Notice of the Supplemental Settlement be Provided to Class Members.**

In connection with the Supplemental Settlement, Range and Class Counsel prepared a "Notice of Supplemental Agreement and Stipulation of Settlement" (the "Supplemental Settlement Notice") [ECF Doc. 141-1]. The Supplemental Settlement Notice provided details of the Supplemental Settlement with a hyperlink to a digital copy of the Supplemental Settlement. [ECF Doc. 141-1]. By way of a May 22, 2019 Order, this Honorable Court approved the Supplemental Settlement Notice and directed Range to mail it at least sixty (60) days in advance of the hearing, with confirmation of transmission provided to Class Counsel. [ECF Doc. 141].

**Class Counsel Seeks Additional Attorneys' Fees**

In conjunction with the Supplemental Settlement, Class Counsel made application for Supplemental Attorneys' Fees. [ECF Doc. 143]. Class Counsel identified two (2) components of requested fees. First, Class Counsel seeks payment of $2.4 Million out of the $12 Million lump-sum that would retroactively compensate Class members for the "MMBTU" versus "MCF" royalty calculation issue which Class Counsel elected not to pursue in 2013 and 2014. Class Counsel also proposes that he receive over $2.6 Million over the next ten (10) years, essentially as an overriding royalty on Class members' future production royalties. [ECF Doc. 143].

**This Court Must Act in a Fiduciary Capacity and Reject the Settlement**

"'Under Rule 23(e) the district court acts as a fiduciary who must serve as a guardian of the rights of absent class members.... [T]he court cannot accept a settlement that the proponents have not shown to be fair, reasonable and adequate.'" In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 785 (3d Cir. 1995)(citing Grunin v. International House of Pancakes, 513 F.2d 114, 123 (8th Cir.), cert. denied, 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975); Malchman v. Davis, 706 F.2d 426, 433 (2d Cir.1983); Sala v. National RR Passenger Corp., 721 F.Supp. 80 (E.D.Pa.1989); *see also*, Piambino v. Bailey, 610 F.2d 1306 (5th Cir. 1980)). Further, without certification, there is no class action and no settlement purportedly reached by a class would have a *res judicata* effect on absent class members' claims. In re Gen. Motors, 55 F.3d at 800. It is respectfully submitted that, for the reasons set forth herein, this Honorable Court, *acting as a fiduciary*, cannot approve the Supplemental Settlement as it has been presented.

**Objections**

**1. This Honorable Court does not have jurisdiction over the Supplemental Settlement.**

This Honorable Court must reject the Supplemental Settlement because there is no demonstration this Honorable Court has jurisdiction over its subject matter. The "Class" which is contemplated by the Supplemental Settlement is inconsistent with the "Class" that Judge McLaughlin certified in 2011. In fact, the Supplemental Settlement appears to impermissibly *enlarge* the Class without going through the required class certification process. This Honorable Court cannot approve a settlement over a "class" that has never been certified. In re Gen. Motors, 55 F.3d at 800.

The Class that Judge McLaughlin certified in 2011 was defined by the "Persons who held a Royalty Interest" at the time of certification. [ECF Doc. 83 at p. 25]. The Class was not certified to expansively include anyone who would ever acquire a future royalty interest in oil and gas leases that were once held by a member of the Class. In fact, the Class could not have been certified that way because of the very nature of oil and gas leases.

Oil and gas leases can remain operative for decades, even over a century, so long as the *habendum* is satisfied. *See,* Hite v. Falcon Partners, 13 A.3d 942, 946 (Pa. Super. Ct. 2011). Royalty interests in oil and gas leases can be - and are - assigned and sold. If membership in the Class was defined to be premised upon the actual lease itself, then there would be a constant "churn" of individuals entering and leaving the Class, as royalty interests in leases were transferred over the decades. This creates two issues.

First, this conception of the Class would require that this matter remain open indefinitely, for as long as some lease remained operative that had once been held by a Class member. Such a scenario is not possible because courts cannot retain indefinite jurisdiction over a proceeding. *See,* Holland v. New Jersey Dep't of Corr., 246 F.3d 267 (3d Cir. 2001); Brass Smith, LLC v. RPI Industries, Inc., 827 F.Supp.2d 377 (D.N.J. 2011); McCall-Bey v. Franzen, 777 F.2d 1178, 1187 (7th Cir. 1985). Second, this would create "tiers" of Class members with different rights as new entrants to the Class years after settlement would not receive any part of the "initial payment".

That did not happen here. After this Honorable Court certified the Class and approved the Original Settlement, this matter was "Closed". [ECF Doc. 83 at p. 26]. Membership in the Class was necessarily bookended by closure of the case. Thus, if an individual or entity purchased a Class member's royalty interest in a lease after March 17, 2011 (the date the case was closed),

that individual or entity did not become a member of the Class. They could not become a member of the Class because the Class, like the case, was already closed.[1] Rather, such individual or entity acquired a royalty interest that was *subject to* a lease that was modified by the Order Amending Leases. [ECF Doc. 83]. Being "subject to" a contract that was amended by this class action is different than being a member of a certified Class. This is distinction is not appreciated by the Supplemental Settlement, which appears to create a new Class based on "who" had interests in oil and gas leases in January 2019.

One of the "deliverables" to the Class from the Supplemental Settlement is a modification of leases through an "Amended Order Amending Leases". [Supplemental Settlement]. This mechanism, a foundational part of the settlement, is premised on a different notion of the Class than what Judge McLaughlin certified. The Supplemental Settlement calls for the "Amended Order Amending Leases" to ". . . be recorded in the office of to [sic] the Recorder of Deeds of each county in which there is situated a Class Lease in which Range, as of January 30, 2019, had a current interest covered by the [Original Settlement]." [Supplemental Settlement]. The Supplemental Settlement provides that "Range shall instruct the recording official in each such county to: (i) index same in the name of Range, as grantor, and each Class Member of Grantee; . . .". [Supplemental Settlement].

The foregoing reference to "Class Member" must be reasonably construed as those "Persons" who comprised the Class at the time of its certification. This provision in the Supplemental Settlement does not contemplate an exception to recording and indexing the "Amended Order Amending Leases" if the royalty interest in a lease is now held by someone who is not a Class member. The "Amended Order Amending Leases" modifies a contract - the

---

[1] No legal authority is presented by Class Counsel or Range for the proposition that this Class could maintain open to new entrants indefinitely after the dispute was settled and the case was closed.

oil and gas lease. Respectfully, neither this Honorable Court, nor Class Counsel nor Range has authority to modify a contract for a royalty owner who was not a member of the Class; but the indexing instructions for the "Amended Order Amending Leases" in the Supplemental Settlement would do just that.

In addition to this, part of Class Counsel's requested fees involve a portion of royalties payable to Class members for the next decade. [ECF Doc. 143 at p.20]. That payment would come out of royalties otherwise payable to Class members. [ECF Doc. 145 at p. 12]. Class Counsel has proposed an Order to this Honorable Court that would authorize his collection of future attorneys' fees from Class members' royalties under leases. [ECF Doc. 144-4]. In his Proposed Order, Class Counsel writes "[e]ach member of the Class now and hereafter becoming entitled to the future benefits hereunder are declared hereby to be subject to the division of interest and payment to Class Counsel as provided in the Blanket Division Order." [ECF Doc. 144-4]. Class Counsel's proposed "Blanket Division Order" would apply to "[t]hose leasehold properties lease to Range Resources-Appalachia, LLC by each of the persons specifically identified in the attached Exhibit A." [ECF Doc. 144-4 at p. 3]. That referenced "Exhibit A" appears to be a re-filed roster of the individuals and entities who received notice of the Original Settlement. [Compare ECF Doc. 75 and ECF Doc. 144-4 at pp. 5-272].[2]

Class Counsel's proposed fee arrangement is a fundamental part of the Supplemental Settlement and, from this filing by Class Counsel, it reasonably appears that he considers the Class to be defined by the leases, and not the "Persons" who constituted the certified Class in 2011. Class Counsel's future fee arrangement appears to broadly pertain to leases and does not appear to address the identity of the royalty owner of those leases to ensure that they were a

---

[2] For reasons unknown, the "Exhibit A" that Class Counsel appends to his "Blanket Division Order" only covers individuals and entities whose last name or entity name begins with the letter "A" through "SPR".

member of the Class in 2011. Given that Class Counsel negotiated the Supplemental Settlement, this position taken by Class Counsel indicates that the view of the "Class" in the Supplemental Settlement is inaccurate.

Further proving the different and expansive Class contemplated by the Supplemental Settlement is the fundamental part of the settlement itself - the $12 Million payment to correct the "MMBTU" versus "MCF" royalty calculation discrepancy. Class Counsel writes that this value was determined in part by Range's analysis which is contained in an Affidavit of Ruth Whitten. [ECF Doc. 144]. In her Affidavit, Ms. Whitten avers that "[a]t the direction of counsel, myself and others employed by Range were asked to assess the different methodologies for estimating the monetary difference between using an MMBTU multiplier or an MCF multiplier for the post-production cap calculations for the class members subject to the Order Amending Leases." [ECF Doc. 144-1]. Although Ms. Whitten does not define the criteria for what constitutes a "class member" it can be inferred that the analysis was focused on the leases themselves versus the individuals or entities being paid, because the Order Amending Leases modified the lease contracts and "capped" the deductions regardless of who held the royalty owner's interest. [ECF Doc. 83]. Ms. Whitten estimated that the differential between using an MMBTU multiplier versus an MCF multiplier ranged from $11,124,939 to $14,319,794.93 between 2011 and 2017, depending on the calculation method used. [ECF Doc. 144-1]. Although Ms. Whitten does not describe "how" this calculation was performed, it seems reasonable to conclude that Range performed its calculations based on the volumes and values attributable to leases, without investigating whether each payee under each lease was a member of the Class.

Again, individuals or entities that acquired a royalty interest from a Class member would be *subject to* the terms of a lease that was modified in 2011 by the Order Amending Leases - but

that does not make them members of the Class or vest this Honorable Court with jurisdiction over them. The Supplemental Settlement cannot and should not impact those who had no connection to the Class. That is not fair to anyone.

That Range and Class Counsel view the Class as being different from that certified by Judge McLaughlin - and therefore outside the bounds of this Honorable Court's jurisdiction is confirmed by "who" the Notice of Supplemental Settlement was mailed to. As discussed *infra*, neither Range nor Class Counsel have filed a roster of the individuals or entities that were mailed the Notice of Supplemental Settlement. But, the Objectors have substantial reason to believe that the Notice of Supplemental Settlement was transmitted to individuals or entities that acquired their royalty interests *after* this case was closed in 2011 and therefore were not part of the Class. The transmittal of the Notice of Supplemental Settlement to individuals and/or entities that were not part of the Class is strong evidence that Range and Class Counsel consider the Class to be different than what Judge McLaughlin certified.

Another jurisdictional concern arises with the scope of the Supplemental Settlement, which nominally includes the Motion to Enforce and the Motion to Correct. Aside from the MCF versus MMBTU royalty differential calculation, the Motion to Enforce contained seven (7) other alleged breaches of the Original Settlement. But, there was no showing by Class Counsel that those alleged breaches of the Original Settlement were issues of class-wide concern such that they may be released in the context of the proposed Supplemental Settlement on behalf of the Class. Moreover, Class Counsel has not provided evidence or authority to show why the issues raised in the Motion to Enforce must be prosecuted by and through Class Counsel and on behalf of the Class, versus claims by individual Class members for discrete breaches of their leases, as modified by the Order Amending Leases. There is insufficient information for this Honorable

Court to assure itself that it possesses jurisdiction over the claims which are purportedly settled through the Supplemental Settlement.

## 2. The Supplemental Settlement does not treat all Class members uniformly.

Putting aside, momentarily, the question about the makeup of the "Class" envisioned by Class Counsel and Range in the Supplemental Settlement, that agreement must be rejected because it essentially picks "winners" and "losers" within the Class and does not deliver a uniform benefit for all. That creates an impermissible intra-class conflict. In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d at 800-01.

Under the Supplemental Settlement Agreement, the proposed Amended Order Amending Leases would only apply to those leases in which Range held the lessee's interest as of January 2019. If a Class member is a party to a lease wherein Range transferred the lessee's interest to another operator, the Amended Order Amending Leases (and the future benefits therefrom) would not apply to such lease. [Supplemental Settlement]. Putting aside the fact that the Original Settlement already contemplated the "benefit" in the Amended Order Amending Leases, the Supplemental Settlement would create two species of subclasses, one whose members would benefit from an amended post-production cost "cap" and the other subclass that would not benefit. Nowhere in the certification of this Class in 2011 was there any authority granted to subdivide it into smaller groupings. This Honorable Court cannot approve a settlement which effectively strands Class members and creates tiers of Class members where no distinction existed in the certification.[3]

---

[3] Presumptively, there are Class members whose leases have been assigned by Range to other operators, or the requirement in the Supplemental Settlement that the Amended Order Amending Leases would only apply to those leases in which Range held the lessee's interest would be superfluous and serve no purpose.

3.  **The Supplemental Settlement fails because of a lack of consideration.**

Nominally, the Supplemental Settlement purports to resolve disputes raised by the Motion to Enforce and Motion to Correct. As a benefit to Range, the Supplemental Settlement contains an expansive Release, whereby members of the Class *and their successors* release and waive any claims ". . . which have been, could have been, may be, or could be alleged or asserted . . .arising out of the facts giving rise to the Motion to Enforce, from the beginning of time through the Effective Date of [the Supplemental Settlement]." [Supplemental Settlement]. As noted *supra,* aside from Class Counsel's contention in the Motion to Enforce involving the MCF versus MMBTU discrepancy (which became the subject of the Motion to Correct), the Motion to Enforce raised seven (7) other alleged breaches of the Original Settlement. [ECF Doc. 93]. But, the Supplemental Settlement does not deliver any tangible benefit to the Class on those other issues which, now, are being released and waived.

In its opposition to Class Counsel's request for future fees, Range aptly described the effect of the Supplemental Settlement. Range wrote:

> Under class counsel's theory of the Motion to Enforce, he sought to enforce the terms of the original settlement agreement with respect to the use of an MCF multiplier, instead of the MMBTU multiplier that was incorporated into the Court's Order Amending Leases. [Doc. No. 84]. As a result of this settlement, Range will, on a going forward basis, use the MCF multiplier. The future "benefit" to the class is simply restoring the benefit that class counsel achieved in the original settlement agreement. According, the "Future Benefits" fee request is diverting future royalties paid to class members in accordance with the original terms of the settlement agreement, for which class counsel was already compensated. In essence, class counsel is seeking additional payment for finally achieving a benefit for which he has already been paid.

[ECF Doc. 145 at pp. 12-13]. Indeed, other than correction of the MCF versus MMBTU discrepancy (which was the subject of the Motion to Correct), the only other "benefit" delivered to the Class through the Supplemental Settlement is a recital that "[c]onsistent with its past practice, Range will not deduct nor include in its calculation of the cap those Post Production Cost charges which are not incurred by Range." [Supplemental Settlement]. But, if Range was not making those deductions in the first place, then nothing tangible is gained by the Class through this commitment. Indeed, Class Counsel himself admits that "[t]he purpose of the Supplemental Settlement is to correct [the error in the Order Amending Leases]". [ECF Doc. 143].

The question thus arises: what happened to all of the other alleged violations of the Original Settlement that Class Counsel asserted in the Motion to Enforce? Not only does the "Release of Range" in the Supplemental Settlement release and surrender the ability of Class members to pursue the claims asserted therein, it also prohibits Class members from pursuing any other claim that *could have been* raised in the Motion to Enforce. This is an incredibly broad release and a great benefit to Range and is detrimental to the Objector. The Objector's oil and gas lease contains an addendum that stipulates that ". . . the post production costs shall not cause the Lessors royalty to be less than 12.5% of the price paid to Lessee per thousand cubic feet of such gas as and their constituents so marketed and used." Though Class Counsel contended, in the Motion to Enforce, that Range had failed to adhere to lease provisions that require a minimum royalty to be paid, the Supplemental Settlement provides no description of what happened to such claim and it certainly does not appear to be part of any "deliverable" to the Class, much less the Objector. This Honorable Court must carefully review "what" claims that Class Counsel is purportedly releasing and surrendering – unbeknownst to Class members. There

is no basis or authority for Class Counsel to settle and compromise a specific claim of breach of the Objector's lease in the context of a class action settlement.

There is insufficient consideration to the Class in exchange for this broad release. If the practical effect of the Supplemental Settlement is to deliver Class members the settlement that they originally agreed-to, then there is no purpose for the "Release". Class members should not be forced to release or surrender any and all claims that they may have had in order to attain a benefit to which they were already entitled. More than this, since the Class is purportedly releasing and surrendering all of the claims that could have been raised in the Motion to Enforce, this Honorable Court must be satisfied that there were not any other potential claims that *could have been raised* by Class Counsel. Class Counsel's moving papers and supporting briefs do little to demonstrate that every possible claim that could have been raised was asserted. Adequacy of the representation by counsel is an issue to consider in approval of a class action settlement. In re Gen. Motors 55 F.3d at 800-01. There is simply insufficient information for this Honorable Court to conclude that the broad Release of Range from all conceivable claims is fair trade-off for a deal that Class was already entitled to.

## 4. There is no Demonstration that Class Members Received Notice of the Supplemental Settlement.

The payments to Class members contemplated by the Supplemental Settlement will only be made after objections to the settlement, and appeals therefrom, are resolved. There is no demonstration that members of the Class received notice of the proposed Supplemental Settlement, which renders the Supplemental Settlement open to challenge at any point in time, thereby diminishing its utility and indefinitely postponing proposed payments.

"In the class action context, the district court obtains personal jurisdiction over the absentee class members by providing proper notice of the impending class action and providing

the absentees with the opportunity to be heard or the opportunity to exclude themselves from the class. The combination of reasonable notice, the opportunity to be heard, and the opportunity to withdraw from the class satisfy due process requirements of the Fifth Amendment." In re Prudential Sales Practice Litig. Agent Actions, 148 F.3d 283, 306 (3rd Cir. 1998) (citing Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 811 (1985)). "The notice must not only convey the required information, but, synthesizing from the Supreme Court's own language, it must also 'afford a reasonable time for those interested to choose whether to appear or default, acquiesce or contest.'" Greenfield v. Villager Indus., Inc., 483 F.2d 824, 834 (3d Cir. 1973) (citing Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). Fed. R. Civ. P.  23(c)(2)(B) requires that "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Notice that does not meet this standard is "fatally defective." Greenfield, 483 F.2d at 834; Hecht v. United Collection Bureau, Inc., 691 F.3d 218, 224-225 (2d Cir. 2012) (finding that notice in the form of a one-time notice in a single publication was a 'mere gesture' that did not satisfy due process). And where there is a delay between the request for designation as a class action and its determination, the need to provide adequate notice is accentuated. Greenfield, 483 F.2d at 832.

 Here, there is still no evidence of "who" received the Notice of Supplemental Settlement. This Honorable Court's May 22, 2019 Order that approved the Supplemental Settlement Notice directed Range to mail it to Class Members. [ECF Doc. 141]. The Supplemental Settlement appears to center on Range's royalty payments database as the method to determine the retroactive royalties that Class members are entitled to correct the MMBTU versus MCF

discrepancy. It is reasonably believed that Range's database was utilized to attempt to provide notice to the Class.

The difficulty with this approach is that it fails to address Class members who may have sold their royalty interests years ago and who no longer receive royalties from Range. If Range is no longer paying royalties to an individual or entity, there is no reason for Range to have up-to-date contact information. For example, it is entirely possible that a Class member "Jane Doe" received production royalties from 2012-2015 and sold her royalty interest to a company "ABC Corp") that buys such interests. Range would pay the royalty to ABC Corp and have its address but, if Jane Doe moved to Oregon after she sold her royalty interest to ABC Corp, it is exceedingly unlikely that she would have provided that address to Range. But, Jane Doe was a Class member and would be entitled to retroactive payments under the Supplemental Agreement because Jane Doe was paid royalties by Range under the MMBTU regime of the Order Amending Leases.

Neither Range nor Class Counsel have identified "how" they have taken steps to ensure that all Class members receive notice of the Supplemental Settlement. Neither Range nor Class Counsel have indicated an awareness of exactly "who" remains in the Class at-present, as it is very likely that Class members have passed away or transferred their royalty interest since 2011. In fact, it appears that the Notice of Supplemental Settlement was mailed to people who were not even in the Class. Given that the Class consisted of over 20,000 "Persons" when it was certified eight (8) years ago, it is reasonably likely that *someone* who received royalties sold their interest and moved, without Range or Class Counsel having record of a new address. Not only is this demonstrative of the poorly considered nature of the Supplemental Settlement and the error in viewing membership in the Class only through the lens of who presently has an interest in a

lease, it ignores a fundamental precept of the jurisdiction of this court and the concepts of due process - notice. Therefore, the Supplemental Settlement will always be open to challenge by those who did not receive notice. That provides no certainty or benefits to Class members, as payments under the Supplemental Settlement are contingent upon the expiry of an appeal period - which would never close.

5. **The Supplemental Settlement is unfair to the Class because the requested attorneys' fees dilute their interest and are not commensurate with the result achieved.**

A fundamental component of the Supplemental Settlement is an award of fees to Class Counsel - which is estimated to be roughly $5 Million worth of the "benefit" of the Supplemental Settlement. The value of the Supplemental Settlement to the Class is greatly diminished by re-directing Class monies to Class Counsel. Through the Supplemental Settlement, Class Counsel has delivered the Class the same deal that he did through the Original Settlement. Class Counsel was paid for his work achieving the Original Settlement. Class Counsel should not be paid again for delivering a result already achieved. Since payment of Class Counsel is an integral part of the Supplemental Settlement , it must be dismissed on that basis as well.

6. **There are alternative remedies available that should be entertained.**

Although this Honorable Court should not, as a fiduciary, approve the Supplemental Settlement, there are three (3) readily apparent alternatives for Range and Class Counsel to explore. First, Range and Class Counsel should simply remove the "Release of Range" and develop a method to insure that the "future benefit" can be enjoyed by all Class members, regardless of the entity that holds the working interest in their lease. As the Supplemental Settlement nominally restores the Class to the bargain it achieved eight (8) years ago, no release is necessary and no Class members should be excluded.

Second, to the extent that Range and Class Counsel believe the "Class" is consistent with that declared by Judge McLaughlin in 2011, then an "opt-out" should be provided to Class members. There is no reason why Class members are not afforded the opportunity to "opt-out" of this settlement. During the opt-out period nearly a decade ago, none of the issues addressed here, other than the MCF versus MMBTU calculus, were presented. It is unfair and unreasonable to bind Class members to an opt-out from long ago.

The third approach is to re-certify the Class based on the construction offered by Class Counsel and Range. That would eliminate any uncertainty and potential challenge to the Supplemental Settlement by those who contend that the Class was impermissibly structured at-present. Such an approach would necessarily allow for an opt-out for those who do not want to participate in the Supplemental Settlement.

**Conclusion**

For the foregoing reasons, it is respectfully submitted that this Honorable Court must reject the proposed Supplemental Settlement.

Houston Harbaugh, P.C.

Dated:  August 2, 2019                    By:    /s/ Brendan A. O'Donnell
                                                 Robert J. Burnett, Esquire
                                                 Pa. I.D. No. 76734
                                                 Brendan A. O'Donnell, Esquire
                                                 Pa. I.D. No. 309007
                                                 Erik M. Bergenthal, Esquire
                                                 Pa. I.D. No. 317978
                                                 Three Gateway Center
                                                 401 Liberty Avenue, 22nd Floor
                                                 Pittsburgh, PA 15222
                                                 (412) 281-5060

E-mail: *rburnett@hh-law.com*
       *odonnellba@hh-law.com*
       *bergenthalem@hh-law.com*
(*Counsel for Objector*)

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing **OBJECTIONS OF RAYMOND W. SEDDON, JR. TO PROPOSED SUPPLEMENTAL AGREEMENT AND STIPULATION OF SETTLEMENT** was served upon counsel of record as stated below via the Court's CM/ECF system this 2nd day of August, 2019:

Joseph E. Altomare, Esquire
The Law Office of Joseph Altomare
228 East Central Avenue, PO Box 373
Titusville, PA 16354
*(Counsel for Class Plaintiffs)*


Kevin C. Abbott, Esquire
Justin H. Werner, Esquire
Reed Smith LLP
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222

Anne E. Ralph, Esquire
David W. Hardymon, Esquire
Vorys, Sater, Seymour & Pease LLP
52 East Gay Street
Columbus, OH 43216

Daniel J. Sponseller, Esquire
Law Office of Daniel J. Sponseller
409 Broad Street, Suite 200
Sewickley, PA 15143
*(Counsel for Defendant Range Resources-Appalachia, LLC)*


    */s/ Brendan A. O'Donnell*
Brendan A. O'Donnell, Esquire
*Counsel for Raymond W. Seddon, Jr.*