IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD C. FREDERICK and | : | Docket No. 1:08-cv-00288-SJM |
| LOUISE M. FREDERICK, h/w, | : | |
| MICHAEL A. MAHLE and | : | |
| PAULA M. MAHLE, h/w, DONALD | : | Electronically Filed Document |
| PORTA, and all other persons | : | |
| similarly situated, | : | |
| | : | CLASS ACTION |
| Plaintiffs, | : | |
| | : | |
| vs. | : | |
| | : | |
| RANGE RESOURCES – | : | |
| APPALACHIA, LLC | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT RANGE RESOURCES-APPALACHIA, LLC'S
SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF
JOINT MOTION FOR APPROVAL OF SUPPLEMENTAL SETTLEMENT
AGREEMENT AND STIPULATION OF SETTLEMENT**

In the Third Circuit, a proposed class action settlement is entitled to a "presumption of fairness" where: "(1) the settlement was negotiated at arm's-length; (2) there was adequate discovery for counsel to be aware of the strengths and weaknesses of the case; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Warfarin Sodium Antitrust Litigation*, 391 F.3d 516, 535 (3d Cir. 2004). Each of those factors is present here. There is no evidence of collusion between class counsel and Range, the record before the Court shows that there was sufficient discovery, the parties are represented by counsel experienced in similar litigation, and a very small fraction of the class has objected.

None of the objections to the Supplemental Settlement Agreement overcome the presumption of fairness afforded class action settlements reached between informed and experienced parties negotiating at arms' length. The Burnett and Pettorini Objectors suggest that

the settlement should be rejected because the Court could just grant the Motion to Correct and require Range to pay damages for the entire seven year period during which the Order Amending Leases was in effect. This argument plainly ignores that a basic concept of settlement is that it must be viewed in the context of the risk of losing. There is no guarantee that the class was going to prevail on the Motion to Correct and, if it did, it was unlikely to get any retroactive relief. When properly viewed in the context of a negotiated compromise of uncertain claims, the Supplemental Settlement is a fair settlement. It gives the class a substantial cash payment and the same prospective relief it would have received if the Motion to Correct had been granted.

The Burnett and Pettorini Objectors complain that the release of claims against Range is too broad. In their view, the release should be limited to just the MCF/MMBTU issue raised in the Motion to Correct and Motion to Enforce, leaving class members free to sue Range on the other claims that were or could have been raised in the Motion to Enforce. This objection is premised on a false assumption that the $12 million payment agreed to by Range for settlement of this action was solely attributable to the MCF/MMBTU discrepancy. In fact, the $12 million payment was a negotiated lump sum payment that was not allocated to any particular claims. No defendant in Range's position here would pay out $12 million and agree to prospective relief without a full release of all claims that had been or could have been made.

The Burnett Objectors and Pettorini Objectors attacked class counsel for delay, but that is an irrelevant consideration to the fairness of the settlement at the present time. The issue is whether, under the reality of facts as they exist today, class counsel negotiated a fair settlement in light of Range's defenses to the claims raised. The Burnett Objectors attacked the Court's jurisdiction on the grounds that it was impossible to determine who was in the class today. That assertion was disproved by the Declaration of Ruth Whitten detailing the members who received

notice.  It was also undercut by the testimony of Ryan Rupert, who testified that he determined the identity of class members by searching public records.  Furthermore, the objection was speculative, as the Burnett Objectors did not identify a class member who had difficulty determining whether they were in the class now.

The Objectors[1] have offered no solution to the problems raised in their objections.  The Burnett Objectors could not fashion any other solution that made any sense to the class.  The Pettorini Objectors' plan would appear to replace class counsel with their lawyer, and then hope for a better result.  That would subject the objectors, as well as the 99% of the class that did not object, to the risk of recovering less than what they will get under the Supplemental Settlement, or nothing at all.  There was no evidence presented by any objector to overcome the presumptive fairness of the settlement of the issues as framed in the Motion to Enforce and therefore it should be approved.

## FACTS

A.    **Background**

In 2008, the plaintiffs filed this action claiming that Range had violated Pennsylvania's Minimum Royalty Act, 58 P.S. § 33, by deducting post-production costs such that the net royalties paid were less than the 1/8th royalty mandated by law.  In 2010, the Pennsylvania Supreme Court held that the deduction of post-production costs did not violate the Minimum Royalty Act.  *See Kilmer v. Elexco Land Servs, Inc*., 990 A.2d 1147, 1157 (Pa. 2010).  The plaintiffs in this action then focused their claim on the amount of post-production costs deducted. Range and the plaintiffs negotiated a settlement which imposed caps on the post-production costs

---

[1] The *pro se* objections of Edward Zdarko did not pertain to the class action settlement but rather to a meter reading issue, which Range has resolved with him.

that could be deducted in calculating royalties for each class member.  [Doc. No. 73-1].  The Court certified that class and approved the settlement.  [Doc. No. 59, 83].  In order to implement the settlement going forward, the parties agreed to, and the Court entered, an Order Amending Leases in 2011.  [Doc. No. 84].  That Order, however, provided for the caps to be calculated on an MMBTU basis, not per MCF.  As this Court has previously noted, the Order with the MMBTU language was submitted by class counsel and he brought it to the Court's attention during the fairness hearing on the original class action settlement.  [Doc. No. 105].  A new proposed Order was submitted to the Court but for reasons unknown, the Court entered the Order with the MMBTU multiplier.

The Order Amending Leases incorporating the MMBTU multiplier was recorded in 25 counties to provide record notice to assignees of the leases that the leases had been amended. From 2011 until 2018, Range complied with the Order Amending Leases and applied the caps to royalty calculations for the class.  The caps provided a benefit to the class that greatly exceeded the anticipated benefit.  Today, the benefit to the class has exceeded $60 million.   In 2018, class counsel filed a Motion to Enforce the Settlement, raising multiple claims.  The principal claim addressed the MCF/MMBTU discrepancy.  A second claim challenged Range's decision to not include firm transportation costs (FCI) in the post-production cost caps.  After the Motion to Enforce was filed, Range resolved this issue by voluntarily changing its practice and including the FCI charges in the caps, pending a final judgment on the issue.  The remaining issues in the Motion to Enforce raised other issues that class counsel explored in discover, but ultimately decided not to pursue further, and settled as part of the Supplemental Settlement.  [Doc. No. 171].

Class counsel also filed a Motion to Correct asking the Court to amend the Order Amending Leases so as to require the MCF calculation.  Range opposed the Motion to Correct

on various grounds, including the defense that the Motion to Correct, brought seven years after the parties knew of the discrepancy, was too late.  Alternatively, Range argued that Rule 60(a) could only operate prospectively to amend the Order and that Range could not be liable retroactively for damages when it had complied with the Court's Order Amending Leases.

As suggested by the Court, the parties mediated their disputes and agreed to the Supplemental Settlement Agreement now before the Court.  That Supplemental Settlement Agreement provides a lump sum payment of $12 million to be distributed to all past and current members of the class, as well as a prospective change to the calculation of the caps to use the MCF unit of measurement.  [Doc. No. 135].

### B. <u>Notice to the Class</u>

As required by the Court Order on May 22, 2019, Range gave notice to all past and current members of the class.  [Doc. No. 141].  As established by the undisputed Declaration of Ruth Whitten [Doc. No. 167 at Ex. A], Range reviewed its business records and identified 11,882 class members consisting of royalty owners who received royalties from shale wells covered by the original settlement agreement, royalty owners who have no leases with shale production but have received royalties on conventional oil and gas production, and royalty owners of leases not yet developed.  Range successfully provided notice to 97.5% of the 11,882 class members.  [Doc. No. 167 at Ex. A].

The Whitten Declaration also established that two of the Pettorini Objectors are not class members, that the Burnett and Pettorini Objectors who are in the class have collectively realized a benefit of $1.7 million from the original settlement, and that they will be paid over $170,000 from the lump sum payment agreed to in the Supplemental Settlement.  [Doc. No. 167 at Ex. A].

Those objectors will also recognize future benefits as a result of the change in the calculation of the caps.

    **C.**    <u>**Hearing**</u>

The Court received objections from several class members represented by Robert Burnett (the "Burnett Objectors"), a group of class members represented by Timothy Pettorini (the "Pettorini Objectors"), and a *pro se* objection by Edward Zdarko.

The hearing on August 14, 2019 provided the objectors an opportunity to present evidence in support of their objections, but very little evidence was presented.

The Burnett Objectors presented no testimony or declarations in support of their objections. Although they argued that it was not possible to determine who was in the class or whether all class members received notice of the settlement, they presented no testimony on those concerns and conceded that the concerns were hypothetical and theoretical. **Transcript at 6-7.** No objector claimed to not have received notice. They also did not contest the Declaration of Ruth Whitten [Doc. No. 167 at Ex. A], in which she detailed Range's process in identifying past and current members of the class, the fact that 11,992 notices were mailed, and more than 97% were delivered. The overwhelming majority of the class, presumably anticipates payment in accordance with the notice and settlement.

The Pettorini Objectors called two witnesses. First, they called Linda Shaw, a class member, who identified copies of royalty statements and testified that she relied on Ryan Rupert, an accountant, to review the statements on her behalf. **Transcript at 69-70.** Shaw did not express any opinion on the fairness of the Supplemental Settlement Agreement or whether she supported it or objected to it.

Second, the Pettorini Objectors called Ryan Rupert.  He testified that he started reviewing Range's royalty statements in 2009 on behalf of his father and, over time, approximately 75 clients with Range Resources leases.  **Transcript at 75-75.**  Rupert was able to identify persons, including assignees, covered by the Settlement Agreement by researching public records available at the Recorder of Deeds.  **Transcript at 77-78.**  On approximately 6 to 8 occasions, Rupert identified leases that he believed should be covered by the settlement but the royalty statements did not show that the caps had been applied.  **Transcript at 78-79.**  On those occasions, he would notify class counsel and class counsel would work with Range to resolve the issue. Rupert testified that typically "there would be a favorable outcome" for his clients.  **Transcript at 79.**  In his review of royalty statements, Rupert would also spot other issues where he questioned Range's statements.  He would email Ruth Whitten, and "[t]ypically, I would get a rather quick response" and Whitten or someone working with her would correct the issue. **Transcript at 80-81.**

Rupert also testified that he raised an issue in August 2017 as to Range failing to apply the caps.  Whitten referred him to others at Range who explained that Range did not believe the caps applied to cost incurred further downstream from the well.  **Transcript at 81.**  Rupert could not remember if Range had stopped applying the cap to all costs, other than just the FCI (firm transportation) costs.  **Transcript at 130.**  However, Rupert did not present any evidence that Range had stopped applying the caps altogether – nor could he.  Rupert admitted that the Motion to Enforce had alleged that Range had stopped including the FCI (firm transportation) charges in the caps, but never alleged that Range had completely stopped applying the caps.  **Transcript at 130.**  Rupert was aware that Range changed its practice to start including FCI charges in the caps after the Motion to Enforce was filed.  **Transcript at 131.**

Rupert testified that he had noticed the discrepancy between the Order Amending Leases and the original settlement on the MCF/MMBTU issue in 2014 and brought it to the attention of class counsel.  **Transcript at 131.**  That issue was the subject of both the Motion to Enforce and Motion to Correct.  **Transcript at 131.**  Rupert testified that he spotted other issues relating to deductions on the sale of NGLs (Natural Gas Liquids).  **Transcript at 94, 98-99, 131-132.**  He brought those issues to the attention of class counsel.  Those issues were raised in the Motion to Enforce.  **Transcript at 131-132.**  The Court asked if the issues he spotted were corrected and Rupert responded "[t]hat is a difficult question to answer."  **Transcript at 99-100.**  The balance of Rupert's testimony related to his complaint that class counsel had reneged on his promise to pay Rupert's invoice and his claim that class counsel had copied Rupert's time entries and claimed them as his own.  None of this relates to the fairness of the settlement resolving the issues associated with Range's calculation and payment of royalties to the class.

The sum total of Rupert's testimony was that: (1) he spotted a number of issues where he questioned Range's royalty calculations (the MCF/MMBTU issue, the FCI deductions outside of the caps, the complexity of the royalty statements and a nonspecific issue related to NGL deductions), (2) that class counsel raised all of those issues in his Motion to Enforce, and (3) the parties assessed the risk and reached a settlement agreement that addresses all the claims.  **Transcript at 132.**  Rupert admitted that he did not receive all of the discovery or information in the case, and therefore was unable to perform any assessment as to the class's potential damages.  **Transcript at 133-34.**

Class counsel Joe Altomare presented evidence solely on his request for fees.  He examined Ruth Whitten on his contention that it would be a simple matter for Range to calculate and pay to him a share of future royalties from class members for a ten-year period.  Whitten

disagreed and reiterated what she said in her Declaration – the calculation would be difficult and time consuming. **Transcript at 148.** On cross-examination by counsel for the Burnett Objectors, Whitten agreed that class counsel had made a mistake in his demonstration of how easy it would be to take away royalties from class members and divert those royalties to him. **Transcript at 152.**

Range presented no evidence except for the previously filed Declaration of Ruth Whitten on notice and in opposition to the request for future fees. **Transcript at 151.**

Edward Zdarko explained his objections and Range committed to resolve the issue, which it has now settled.

## ARGUMENT

### A.    The Settlement is Presumed to be Fair

As Range argued in its opening brief in support of approval of the Supplemental Settlement, there are no cases on point that govern the standard for approval of the Supplemental Settlement in this class action proceeding.   Range believes that the Court should apply the standard used to determine the fairness and adequacy of a class action settlement.  In the Third Circuit, a proposed class action settlement is entitled to a "presumption of fairness" where: "(1) the settlement was negotiated at arm's-length; (2) there was adequate discovery for counsel to be aware of the strengths and weaknesses of the case; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected."  *In re Warfarin Sodium Antitrust Litigation*, 391 F.3d 516, 535 (3d Cir. 2004).

Each of those factors is present here.  There is no evidence of collusion between class counsel and Range – all the Court heard was unsubstantiated argument from counsel. The record before the Court shows that there was sufficient discovery, the parties are represented by counsel

experienced in similar litigation, and a very small fraction of the class has objected. In assessing fairness in light of the lack of any actual evidence to overcome the presumption of fairness, three points should be emphasized. First, this is not a class action settlement where there is no real benefit to the class – the Supplemental Settlement requires Range to make a substantial cash payment and also provides prospective relief. Indeed, none of the Objectors presented evidence that a better deal could have been achieved on behalf of the class. Second, the settlement was the product of a mediation by a well-respected former judge and experienced mediator. Third, a very small percentage of the class – less than 1% of the class – objected to the settlement.[2]

**B.      None of the Objectors Overcome Presumption of Fairness**

None of the Objectors presented evidence sufficient to overcome the presumption of fairness. Each of the primary objections raised by the Objectors is addressed in turn below:

**1.   The Objectors Assume They Could Achieve 100% Relief on the Motion to Correct Without Any Risk of Loss.**

The Burnett and Pettorini Objectors suggest that the settlement should be rejected because the Court could just grant the Motion to Correct, and give it full retroactive effective back to the effective date of the original settlement, and require Range to pay damages for that entire seven year period during which the Order Amending Leases was in effect. In other words, they believe there is no reason to settle for anything less than 100% of the relief sought.

That argument completely ignores the risk that, if litigated to the end, the class may likely lose. Range aggressively opposed the Motion to Correct [Doc. No. 113] and still believes that

---

[2] *See, e.g.*, *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118–19 (3d Cir.1990) (finding receipt of "only" 29 objections from a 281–member class (10 percent) "strongly favors settlement." ); *Ripley v. Sunoco, Inc.*, 287 F.R.D. 300, 305–06 (E.D.Pa.2012) (reaction of the class favored approval of settlement where "less than 1 percent of the eligible class members opted out of the settlement"); *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 803 (3d Cir.) (affirming settlement, although "more than twenty percent of the class plaintiffs objected").

the Motion is without merit.  As Range argued in its opposition to the Motion to Correct, the motion was simply too late.  At various times the discrepancy between the original settlement and the Order Amending Leases has been described as a "mistake."  If it was a "mistake," Rule 60(b)(1) required the motion to correct the mistake to be filed within one year after the mistaken Order was entered.  Here, the class missed that deadline by six years.  Even the catch-all provision of Rule 60(b)(6) that allows modification of a court order for "any reason that justifies relief" has been held to require that such motions must be filed without one year "unless extraordinary circumstances excuse the party's failure to proceed sooner."  *Gordon v. Monoson*, 239 F. App's 710, 713 (3d Cir. 2007).  No extraordinary circumstances exist here – class counsel knew of the discrepancy from the very beginning, advising the Court as early as 2011 that he submitted the wrong order due to confusion.  The Settlement and the Order Amending Lease are public documents.  Every monthly royalty statement sent to the class showed how the caps were calculated.  Without a doubt, class counsel knew of the discrepancy in 2014 but told Range he was not inclined to press the issue.  [Doc. No. 113].[3]  The purpose of the one-year limitations period in Rule 60(b) to correct Court Orders is to encourage finality and reliance on Court Orders. Inasmuch as parties must comply with Court Orders, it makes sense to limit the time in which they may be changed.

Time-barred by the applicable provisions of Rule 60(b), class counsel brought the Motion to Correct under Rule 60(a).  That rule, however, is intended to only correct clerical errors that do not affect the substantive rights of the parties.  [Doc. No. 113].  Because the rule is intended to address only non-substantive errors, the rule does not have an express limitations period on the

---

[3] The Pettorini Objectors attributed the discrepancy to "nefarious" conduct by Range but that claim has no actual evidentiary support and also makes no sense – the discrepancy has been open and visible at all times since 2011.

theory that "clerical errors within the rule's meaning are not the kind of error that invites reliance . . . ."  *Lowe v. McGraw-Hill Companies, Inc.* 361 F.3d 335, 341-42 (7th Cir. 2004).   The discrepancy here directly affects the substantive rights of the parties and Range has relied on the finality of the Order Amending Leases.   There is no authority that permits a party to acquiesce in a Court Order for seven years and then use Rule 60(a) as an end-run around the one-year limitations period of Rule 60(b)(1) and (6).   [Doc. No. 113].

Also, Rule 60(a) can only be used for corrections where no additional proof of the error is required.   This Court has already held that it could not make a "definitive determination" as to how the discrepancy occurred [Doc. No. 105], and no such definitive determination could be made now without more proof.   Due to the passage of time, the fact that Range's former counsel retired, and the fact the judge who entered the Order has left the bench and could not be called to testify anyway, means the Court may never be able to make such a definitive determination.   The difficulties of reconstructing history illustrate why motions to correct substantive errors must be made within one year.

Even if Rule 60(a) somehow would permit an amendment to the order, there is no authority that permits the Court to penalize Range for *compliance* with this Court's Order.   As class counsel conceded at the hearing, there is no authority under Rule 60(a) or otherwise to correct the Order retroactively and claw back the discrepancy for a seven-year period.   First, even if retroactive relief were permitted, it would be limited to a four-year period.   Second, there is simply no authority to permit *any* recovery.   Range had to comply with the Order Amending Leases.

Whether viewed as untimely under Rule 60 or barred by equitable doctrines such as waivers, laches, estoppel or acquiescence, the class faced a real risk that the Motion to Correct

would be denied.  The Objectors' argument that the settlement is unfair because they could have recovered the entirety of the difference between the use of the MMBTU and MCF multiplier since 2011 without any risk of losing is wrong.  There is risk, and a basic concept of settlement is that it must be viewed in the context of the risk of losing.  There is no guarantee that the class was going to prevail on the Motion to Correct but, if it did, it was unlikely to get any retroactive relief.  When properly viewed in the context of a negotiated compromise of uncertain claims, the Supplemental Settlement is a fair settlement.  It gives the class a substantial cash payment and the same prospective relief it would have received if the Motion to Correct had been granted.

### 2.  The Objectors Believe that the Release is Too Broad.

In addition to their objections that the Supplemental Settlement does not provide 100% relief, the Burnett and Pettorini Objectors complain that the release of claims against Range is too broad.  In their view, the release should be limited to just the MCF/MMBTU issue raised in the Motion to Correct and Motion to Enforce, leaving class members free to sue Range on the other claims that were or could have been raised in the Motion to Enforce.

That objection must be rejected.  First, it is premised on a false assumption that the $12 million payment was solely attributable to the MCF/MMBTU discrepancy.  In fact, the $12 million payment was a negotiated lump sum payment that was not allocated to any particular claims.  Second, and most importantly, no defendant in Range's position here would pay out $12 million and agree to prospective relief without a full release of all claims that had been or could have been made.  Range does not believe that the other claims have merit (and class counsel who took discovery and assessed these claims in the course of this case also agrees [Doc. No. 171]) but it is costly to defend meritless claims.  Range is no different than other persons reaching a

negotiated resolution – it seeks peace and finality with its royalty owners (as it did with Mr. Zdarko).

In considering whether to approve the proposed Supplemental Settlement, the Court is limited to either approving the settlement or not. *See Evans v. Jeff D.*, 475 U.S. 717, 726 (1986); *see also Ehrheart v. Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010) ("A district court is not a party to the settlement, nor may it modify the terms of a voluntary agreement between the parties). It cannot modify the settlement or force Range to accept a partial release. Without a full release, there is no settlement.

### 3. The Objectors Believe Class Counsel is Inadequate and Acting in His Own Self-Interest.

In addition to attacking the fee request of class counsel, the Burnett and Pettorini Objectors argue that class counsel did not adequately represent the class and, as a result, the Supplemental Settlement should be rejected. That objection should be rejected.

The Objectors point to the fact that class counsel waited seven years to try to correct the discrepancy and the fact that the Supplemental Settlement is not providing complete relief as evidence of class counsel's inadequacy. They are asking the wrong question – the relevant question is whether the Supplemental Settlement is fair on the facts and legal arguments as they exist today. The facts are that the class accepted Range's calculations of the caps for seven years without complaint and that there is a real legal risk that the Motion to Correct came far too late. In that context, class counsel did well to get such a substantial settlement.

As with their other objections, the Burnett and Pettorini Objections offer no solution to the issues before the Court. The Burnett Objectors could not fashion any other solution that made any sense to the class, and indeed any alternative they might offer would raise the risk of zero recovery for the objectors, as well as the 99% of the class that did not object. The Pettorini

Objectors' plan would appear to replace class counsel with their lawyer, and then hope for a better result.  The 99% of the class who did not object to the Supplemental Settlement should not suffer the risk of losing the tangible benefits of the settlement for the vague hope that a new lawyer might do better.  Their complaint that class counsel is acting in his own self-interest is a common complaint in all class actions.[4]  It is most acute in settlements where the class receives no tangible benefits, which is not the case here.  To the extent that the Court is concerned with class counsel's fee request in light of the facts of delay, that can be dealt with in the fee award.

**4.  The Burnett Objectors Contend that the Court does not have Jurisdiction.**

The Burnett Objectors claimed that the Court did not have jurisdiction to approve the Supplemental Settlement.  The essence of their objection was that the membership of the class was frozen at the time of the original settlement and it would be impossible to provide notice of the proposed settlement to persons who acquired their rights after the settlement.  The Burnett Objectors did not introduce any evidence to support their concerns.  Their counsel admitted that the concerns about notice were theoretical and hypothetical.  **Transcript at 12**.  The evidence also proves that their concerns are unfounded.  Range had no trouble giving notice to the members of the class.  [Doc. No. 167 at Ex. A].  Ryan Rupert testified that he could identify members of the class through public title records.  **Transcript at 77-78.**  The Burnett Objectors could not identify any class member who fell into the category that theoretically concerned them.  Indeed, only one of the objectors they represented had acquired an interest after the settlement in 2010, and he had been an original class member and had notice of the original settlement (and never

---

[4] It is a bit disingenuous for the Pettorini Objectors to complain about current class counsel's motivation inasmuch as the only real solution offered by the Pettorini Objectors' is for their lawyer to become new class counsel.

objected to it).  As voluntary conveyances of mineral rights are commonplace, a mere conveyance of mineral rights cannot allow a class member to later avoid a class action settlement.

Under the Burnett Objectors' theory, no class action could ever be settled on the basis of amending the parties' ongoing contractual relationship.  The time to raise that objection would have been in 2011.  The original settlement here was plainly intended to amend the parties' leases and the Order Amending Leases was recorded for the express purpose of giving record notice to successors in interest.  The Burnett Objectors failed to introduce any evidence to sway the Court's prior holding that it has ancillary jurisdiction.

**5.  <u>Objections to Class Counsel's request for future fees.</u>**

Class counsel has applied for an award of fees equal to 20% of the $12 million lump sum settlement payment, plus a future fee in the form of diverting future royalties from class members to himself for a ten year period.  Range takes no position as to the request for 20% of the $12 million payment.  Range opposes the future fee request on three grounds.

First, as briefed by Range in its Response to the class counsel's Fee Application [Doc. No. 145], the Supplemental Settlement is a fully integrated contract which plainly requires that "all" fees must come out of the $12 million payment.  [Doc. No. 135 at Ex. A].  "All" means all.  That clear contract language must be given effect and the request for future fees must be denied as inconsistent with the settlement agreed to by the parties and submitted to this Court.  [Doc. No. 145].

Second, even if the plain language of the contract did not completely bar the future fees request, the class was never given notice that their lawyer intended to divert to himself a portion of their royalties for the next decade.  The Notice sent to the class advised them that class counsel

may seek a future fee and that Range may object but they were never told that they would be losing a portion of their royalty interest.  [Doc. No. 141].

Third, class counsel acknowledged that he could not impose an administrative burden on Range, but argued that Range could simply push a button to achieve the conveyance of royalty interests on thousands of leases to him.  Class counsel's argument does not overcome the unrebutted evidence from Range that his request imposes a significant administrative burden on Range.  [Doc. No. 145 at Ex. A]; **Transcript at 148**.  Class counsel did not offer evidence refuting Ruth Whitten's declaration and testimony.  Class counsel's demonstration in Court – prepared in advance – certainly did not overcome Range's evidence of administrative hardship due to the need for manual recalculations.  His demonstration showed that his automatic "spreadsheet" calculation would result in negative royalties for class members.  **Transcript at 152.**  The request for future fees should be denied.

## CONCLUSION

The argument and the little testimonial evidence presented by the Objectors at the hearing does not provide any basis to reject the settlement.  It is better to approve a settlement that provides tangible benefits to all class members than to risk the chance that, after years of continued litigation, the class gets less relief or no relief.

REED SMITH LLP

September 13, 2019

*/s/ Kevin C. Abbott*
Kevin C. Abbott
PA ID No. 35734
Justin H. Werner
PA ID No. 203111
225 Fifth Avenue
Pittsburgh, PA  15222
(412) 288-3804/3838
kabbott@reedsmith.com
jwerner@reedsmith.com

*Counsel for Defendant*
*Range Resources-Appalachia, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing has been

served by ECF on all counsel of record and one copy has been served by first-class mail, postage

prepaid on the following:

Edward P. Zdarko
712 Torrey Farm Road
Titusville, PA  16354


Dated:  September 13, 2019                          */s/ Kevin C. Abbott*