IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DONALD C. FREDERICK and LOUISE M. FREDERICK, h/w, MICHAEL A. MAHLE and PAULA M. MAHLE, h/w, DONALD PORTA, and all other persons similarly situated,

Plaintiffs,

v.

RANGE RESOURCES – APPALACHIA, LLC,

Defendant.

CASE NO: 1:08-cv-00288E

**OMNIBUS POST-HEARING BRIEF IN SUPPORT OF OBJECTIONS TO PROPOSED SUPPLEMENTAL AGREEMENT AND STIPULATION OF SETTLEMENT FILED BY GEORGE M. ATEN, RAYMOND W. SEDDON, JAMES H. POST AND LEON CHOW**

George M. Aten, Raymond W. Seddon, James H. Post[1] and Leon Chow, by and through counsel, Houston Harbaugh, P.C., Robert J. Burnett, Esquire, Brendan A. O'Donnell, Esquire and Erik M. Bergenthal, Esquire, hereby file the within Omnibus Post-Hearing Brief in Support of Objections to the proposed Supplemental Agreement and Stipulation of Settlement (the "Supplemental Settlement") in accord with the August 15, 2019 Order authorizing such filing.

1. ***The Supplemental Settlement is unfair to the Class because of a lack of consideration and should be rejected.***

This Honorable Court cannot accept a settlement that the proponents have not shown to be fair, reasonable and adequate. In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 785 (3d Cir. 1995) (citing Grunin v. International House of Pancakes, 513 F.2d 114, 123 (8th Cir.), cert. denied, 423 U.S. 864 (1975); Malchman v. Davis, 706 F.2d 426,

[1] James H. Post, individually and as Trustee for the Seirsdale Family Trust.

433 (2d Cir.1983); Sala v. National RR Passenger Corp., 721 F.Supp. 80 (E.D.Pa.1989); *see also*, Piambino v. Bailey, 610 F.2d 1306 (5th Cir. 1980)). The Third Circuit requires district courts to ensure that a settlement provides "sufficient direct benefit" so that class members remain the "foremost beneficiaries" of the class action. In re Baby Products Antitrust Litig, 708 F.3d 163, 170, 176, 179, 181 (3d Cir. 2013).

In addition to this, a court reviewing a proposed class action settlement must evaluate the conduct of counsel representing the class, to ensure that the interests of the class are adequately represented. "Where a court fears counsel is conflicted, it should subject the settlement to increased scrutiny." Id.; *see also*, In re: Google Inc. Cookie Placement Consumer Privacy Litig., No. 17-1480, 2019 WL 3559113 (3d Cir. Aug. 6, 2019). Courts have further held that actions that will not confer a meaningful benefit upon absent class members cannot satisfy the Rule 23(a)(4) or Rule 23(g)(4) requirement of adequacy of representation. *E.g.,* In re Walgreen Co. Stockholder Litig, 832 F.3d 718, 724 (7th Cir. 2016); In re Dry Max Pampers Litig, 724 F.3d 713 (6th Cir. 2013); *cf.* Gallego v. Northland Group, 814 F.3d 123, 129-30 (2d Cir. 2016).

It is respectfully submitted that this Honorable Court must reject the proposed Supplemental Settlement because there has not been a demonstration that it is fair to the Class. To the contrary, the record indicates that the Supplemental Settlement lacks real consideration from Range in exchange for the rights the Class would be surrendering to obtain a bargain that it was already entitled to receive.

***a. The need for a Supplemental Settlement evidences why the proposed deal is unfair to the Class.***

There is no dispute in the record that the Class and Range agreed to settle this lawsuit in exchange for, *inter alia,* a "cap" on post-production costs charged by Range (the "Original Settlement"). [ECF Doc. 73-1]. Range and the Class agreed that the post-production cost "cap"

to be applied would be measured in MCF, a unit of volumetric measure. [ECF Doc. 73-1]. The Class was provided notice of the Original Settlement and had the opportunity to object to or opt-out of the settlement on these terms – namely, an MCF "cap". [ECF Doc. 74].

The Honorable Judge McLaughlin's Order of March 17, 2011 which approved the Original Settlement and defined the Class provided that "[i]n furtherance of the Settlement Agreement, a separate Order Amending Leases shall be issued contemporaneous with this Order, the terms of which are incorporated herein by reference." [ECF Doc. 83 at p. 26, No. 4]. While the Court issued an Order Amending Leases, that Order was inconsistent with the Original Settlement because it identified the "cap" on post-production costs as being measured differently, using the heat-content measurement of MMBTU instead of MCF. [ECF Doc. 84]. It was also inconsistent with the Order that certified the Class and incorporated the Original Settlement. [ECF Docs. 83 & 84]. The significance and materiality of this discrepancy is demonstrated by the fact that to-date, it has been represented to this Honorable Court that application of an MMBTU "cap" on post-production costs has led to the Class being paid between $10,127,766 and $14,000,000 less than it would have been paid if the post-production cost "cap" were calculated using MCF as the unit of measure, as the Original Settlement stipulated. [ECF Doc. 144 at p. 6; ECF Doc. 171 at p. 6].

The effect of the Order Amending Leases was to impose a *different* settlement than had been agreed to by the Class and Range – and a *different* settlement than the Class had been afforded the opportunity to object to or opt-out of. Respectfully, this Honorable Court did not have authority to modify the Original Settlement because courts cannot impose a different settlement on parties than the one that they chose. *See,* Phillips v. Allegheny County, PA, 869 F. 2d 234 (3d Cir. 1989) *citing* Evans v. Jeff D., 475 U.S. 717 (1986). Rather, the Court must

approve or disapprove of the proposed settlement as a whole. Id. *see*, Holmes v. Continental Can Co., 706 F.2d 1144, 1160 (11th Cir. 1983); Cotton v. Hinton, 559 F.2d 1326, 1331-32 (5th Cir. 1977). Importantly, the instant Objectors do not contend that the Honorable Judge McLaughlin intended to modify the parties' settlement through the Order Amending Leases, given the fact that the Order certifying the Class and approving the Original Settlement specifically stated that the Order Amending Leases would effectuate the Original Settlement. The MMBTU "cap" in the Order Amending Leases was an unintended, clerical error. [2]

Both Range and Class Counsel were aware of the terms of the Original Settlement and also received notice of the Order certifying the Class and the Order Amending Leases, as they were filed on the ECF docket. [ECF Docs. 73-1, 83, 84]. Range and Class Counsel either knew, or *at a minimum*, should have known and recognized the fact that the Order Amending Leases was different than the Original Settlement the parties agreed-to *and* was different from the Order certifying the Class which incorporated the Original Settlement. [ECF Docs. 731-, 83, 84]. Yet, for years, both Range and Class Counsel sat on their hands and took no action to correct this clerical error. Even worse, Range and Class Counsel specifically discussed this discrepancy in 2013 and 2014 but neither Range nor Class Counsel did anything at that time or for the years that followed to bring this issue to this Honorable Court to make sure that the Original Settlement was effectuated. [ECF Doc. 107 at p. 9]. It was not until January 2018 that Class Counsel finally raised this discrepancy before this Honorable Court. [ECF Doc. 93].

Now, Class Counsel and Range have proposed a Supplemental Settlement to this Honorable Court for approval which does nothing for the Class beyond restoring the benefit the Class was entitled to receive under the Original Settlement. In return, Range benefits by

---

[2] The fact that this clerical error has resulted in a multi-million dollar windfall to Range versus what it agreed-to does not make correcting this error a substantive change to the parties' bargain.

obtaining an exceedingly broad "release" of claims from the Class and Class Counsel proposes to make millions of dollars. It is respectfully submitted that the proposed Supplemental Settlement offers a tangible new benefit to all involved *but the Class*. That is inconsistent with the Third Circuit's requirement that the class members be the "foremost beneficiaries" of the class action. In re Baby Products Antitrust Litig, 708 F.3d at 170, 176, 179, 181.

***b. The facts and circumstances raise a concerning question about whether Class Counsel's advocacy on behalf of the Class in negotiation of the Supplemental Settlement could have been conflicted.***

As discussed above, there is no doubt that the Order Amending Leases was inconsistent with the Original Settlement. Class Counsel admits in filings before this Honorable Court that the MMBTU versus MCF discrepancy was brought to his attention in July 2013. [ECF Doc. 107 at p. 9]. Class Counsel also admits in his filings that in March 2014, after discussing the issue with Range, Class Counsel informed Range that "[that while] we have not yet resolved the MCF/MMBTU discrepancy in the amended class leases – I am inclined not to press this, but we should discuss it." [ECF Doc. 107 at p. 9]. Indeed, Class Counsel did not "press this" issue for nearly four (4) years, until January 2018 when the Motion to Enforce was filed. [ECF Doc. 93].

The extent of the "benefit" to the Class in the Supplemental Settlement is the restoration of the MCF post-production cost "cap" from the Original Settlement. Although Class Counsel had asserted additional breaches of the Original Settlement, as discussed below, it does not appear that the Class obtained any benefit on those points and, through the Supplemental Settlement, releases and surrenders those claims. Thus, the Supplemental Settlement can be seen to merely fix the mistake of Class Counsel in his failure to address the MMBTU versus MCF discrepancy at a prior point, which was compounded by Class Counsel's admission that he was not inclined to pursue this issue in 2014.

A fair question arises as to whether Class Counsel's advocacy that led to the Supplemental Settlement was compromised by recognition of potential exposure to a claim by members of the Class related to his nonfeasance on MCF versus MMBTU issue and whether Class Counsel accepted the Supplemental Settlement because he viewed it to eliminate his exposure to liability. This Honorable Court must be skeptical of the motivations of Class Counsel for the Supplemental Settlement and the extent to which it serves the needs of Class Counsel versus the Class. "Where a court fears counsel is conflicted, it should subject the settlement to increased scrutiny." Id.; *see also*, In re: Google Inc. Cookie Placement Consumer Privacy Litig., No. 17-1480, 2019 WL 3559113 (3d Cir. Aug. 6, 2019). It is submitted that there has not been evidence presented to this Honorable Court to allay these concerns.

***c. Class Counsel fails to clearly articulate the rationale for decisions underlying the surrender of claims in the Supplemental Settlement.***

Regardless of whether Class Counsel's negotiation of the Supplemental Settlement was undertaken with the goal of attempting to minimize or eliminate Class Counsel's potential liability to the Class for the failure to correct the MCF versus MMBTU discrepancy in the past, the record does not support the Supplemental Settlement as being a fair bargain for the Class. In the Supplemental Settlement, the Class would settle and compromise all claims " . . . known or unknown, which have been, could have been, may be, or could be alleged [against Range] arising out of the facts giving rise to the Motion to Enforce" through the effective date of the Supplemental Settlement. Given that the Supplemental Settlement merely obliges Range to perform as it agreed to in the Original Settlement, Class Counsel has failed to substantiate why this exceptionally broad release of claims by the Class was fair consideration and exchange for whatever benefit the Class was obtaining.

On August 12, 2019, Class Counsel filed a "Response to Objections to Supplemental Attorney Fees" (the "Class Response to Objections") wherein Class Counsel sought to address the objectors' challenges to the substance of the Supplemental Settlement. [ECF Doc. 171]. In the Motion to Enforce, Class Counsel asserted a number of instances of Range's breach of the parties' Original Settlement, including *but not limited to* the MCF versus MMBTU discrepancy. Class Counsel suggests that the "Release of Range" in the Supplemental Settlement was not a "self-serving capitulation" by writing that ". . . Class Counsel concluded as a matter of law that none of the other claims raised in the Motion for Enforcement were actionable. Here is why". [ECF Doc. 171 at p. 8]. It is submitted that these explanations raise more questions than they answer and do not rise to a level of sufficiency necessary for this Honorable Court to conclude that the Supplemental Settlement is fair to the Class.

One of the claims that Class Counsel raised in the Motion to Enforce was that Range failed to include an "FCI – Firm Capacity" charge as a component of the post-production costs to which the "cap" was applied. [ECF Doc. 93 at p. 2, ¶ 3(b)]. In a July 26, 2018 Memorandum, the Honorable Judge Bissoon evaluated this contention and concluded that ". . . Range's 'Post Production Costs' were intended to encompass the cost of transporting natural gas to the point where the gas is sold to a "First Purchaser.'" [ECF Doc. 105 at p. 12]. The Court allowed Class Counsel to ". . . conduct additional discovery relative to Range's alleged breach of this provision and any resulting damages." [ECF Doc. 105 at p. 12]. It does not appear that Class Counsel ever resolved this issue before agreeing that the Class would release this claim.

As part of Class Counsel's explanation about why certain claims in the Motion to Enforce were not actionable and were compromised as part of the Supplemental Settlement, Class Counsel wrote that, as to the FCI- Firm Capacity matter, "[t]he Court had already ruled on this

issue in favor of the class [Opinion, Doc. 105, p. 12]." [ECF Doc. 171 at p. 9]. But, while Class Counsel is correct that Judge Bissoon found that FCI-Firm Capacity charges were subject to the post-production cost "cap", that finding did not resolve the issue. Rather, the Class was permitted to undertake discovery to ascertain damages related to this claim. [ECF Doc. 105 at p. 12]. Class Counsel does not advance any further description of "what happened" to this issue, such as whether discovery occurred, whether there was an assessment of damages and how that information played a role in the negotiations of the Supplemental Settlement and the ultimate deal reached by the parties. Instead, it appears from the record that Class Counsel advanced a viable claim and then summarily agreed to surrender and release it.

Another issue raised in the Motion to Enforce was the charge that Range was "double-charging" a Processing Fee. [ECF Doc. 93 at p. 3, ¶ 3(d)]. In the Response to Class Objections, Class Counsel explained that "[w]hether [Range] did so in the past or not was not in Class Counsel's opinion worth litigating given the prospective remedy obtained, coupled with the overall benefits of the settlement." [ECF Doc. 171 at p. 9]. Class Counsel's failure to articulate a more substantive rationale does not demonstrate fairness to the Class. The "prospective remedy obtained" and the "overall benefits of the settlement" that Class Counsel relies on are nothing more than the deal that Range agreed to in the Original Settlement. Nothing "new" is delivered.[3]

[3] It must also be noted that Objector Raymond W. Seddon's lease stipulates a minimum royalty that must be paid. In Class Counsel's description of the disposition of issues raised by the Motion to Enforce, Class Counsel posits that "[t]his was already disposed of in Range's favor by the Court", citing to the Honorable Judge Bissoon's Memorandum Opinion. [ECF Doc. 171 at p. 9]. While it is true that the Honorable Judge Bissoon found that this issue was outside of the Court's ancillary jurisdiction, the Court also stated that ". . . it is not even clear to this Court that the lessors who have 'minimum royalty' clauses are part of the settlement class." [ECF Doc. 105 at p. 14]. So, while the broad "Release of Range" in the Supplemental Settlement purports to surrender all claims which were raised in the Motion to Enforce, the Honorable Judge Bissoon found that such claim was beyond the Court's ancillary jurisdiction. For clarity and certainty, Raymond W. Seddon does not surrender, release or compromise any claim associated with Range's obligation to pay a minimum royalty. All such claims are reserved and none are waived.

***d. This Honorable Court cannot rely on Class Counsel's judgment and assurances that the Supplemental Settlement is fair to the Class.***

In Class Counsel's explanation of why he did not press the issue of Range "double-charging" Processing fees is the statement that Class Counsel was of the opinion that it was not worth litigating further. [ECF Doc. 171 at p. 9]. More broadly, Class Counsel frames his decisions about whether to pursue or not to pursue certain claims in the context that he ". . . decided as a matter of law that none of the other claims raised in the Motion [to Enforce] were actionable." [ECF Doc. 171 at p. 8]. Respectfully, the record in this matter suggests that Honorable Court cannot simply accept and rely on Class Counsel's exercise of judgment and assurances.

As detailed above, Class Counsel was aware of the MCF versus MMBTU "cap" discrepancy years ago and decided not to pursue that issue on behalf of the Class. Based on Class Counsel's filing, that claim has a present day value between $10,127,766 and $14,000,000 and an ongoing value in excess of $10,000,000 in just the next ten (10) years. [ECF Doc. 144 at p. 6; ECF Doc. 171 at p. 6].[4] To be blunt, Class Counsel's decision in 2013 and 2014 not to advance an issue potentially worth tens of millions of dollars to the Class *to correct a clerical error* strongly suggests that Class Counsel's judgment cannot be accepted here as it relates to what claims, issues and sums were compromised to reach the Supplemental Settlement.

More than this, at the Hearing before this Honorable Court, Class Counsel did not evidence a command of the issues that were subject to the Supplemental Settlement. During Class Counsel's cross-examination of Ryan Rupert, CPA, Class Counsel appeared unfamiliar

---

[4] Given Class Counsel's apparent issues with calculations, described further *infra,* and the lack of background associated with "how" Class Counsel created the future values in "Charts 1, 2 and 3", the instant Objectors are unsure of the accuracy of these values. This, in and of itself, is an issue for Class Counsel because, if Class Counsel is unable to perform basic value calculations, then Class Counsel could not adequately apprise himself of the worth of claims for settlement.

with the mechanics of Range's royalty statements and did not seem to understand the fundamental issue that was addressed in the Supplemental Settlement, the "capping" of post-production costs using MCF as a unit of measure instead of MMBTU.

> Q. And I thought I heard you testify that that was arrived at by multiplying the MCF price times the number of MCF's.
>
> A. Correct.
>
> Q. Well, isn't this whole business about their using MMBTU and the MMBTU price, which is to the left of that 30,000 number, which is $2.78 -- I'm sorry. It's further to the left. The $2.90 per MMBTU --
>
> A. That's MCF.
>
> Q. Well, then what's the other number? 2.788.
>
> A. Range reports the prices that they receive on gas --
>
> Q. I'm not asking you that, sir.
>
> A. I'm --
>
> Q. I'm asking you what this means --
>
> MR. PETTORINI: Objection.
>
> THE COURT: Well, the objection, I assume, is let him answer?
>
> MR. PETTORINI: Yes, Your Honor.
>
> THE COURT: Let me answer, Mr. Altomare.

A. Range reports the prices that they receive on natural gas in both MCF and BTU pricing. So there is also a volume -- a corresponding volume for MCF. So you would take the MCF volume, multiply it by the MCF price to arrive at the gross value.

But, alternatively, you could take the MMBTU volume and multiply that by the MMBTU price, and you would still arrive at the same gross value. There's always fewer -- there are always fewer BTU's than MCF's.

Q. Then what is this whole case about, if that's true?

THE COURT: I'd ask the same question.

A. Can you ask that again? I'm sorry.

Q. What is this case about, if that's true?

A. Well, it's about how the application of the cap is being applied, which is on a BTU basis here.

Q. So they are computing the dollars earned by either MCF or MMBTU, but they were computing the cap based on MMBTU. Is that correct?

A. They were applying the cap on an MMBTU. But they're also -- they're also reporting what you could derive to be the cap per MCF. It's actually shown there under the DC rate, MCF/BBL column.

(Witness asked for clarification by the reporter.)

A. On the DC -- like District of Columbia -- rate. MCF/BBL column.

So, in other words, the cap is being applied on an MMBTU basis, but it can also be applied on an MCF basis, because that data is also shown here.

[August 14, 2019 Notes of Testimony at p. 120:23 – p. 122:19]. At one juncture in that exchange, it appeared that Class Counsel was advocating *against* the interests of the Class. Since

even Range concedes that calculating the "cap" in MCF versus MMBTU leads to divergent values, one would have reasonably expected Class Counsel to be more knowledgeable and conversant about the subject matter. This exchange is a microcosm of larger issues with Class Counsel's representation of the Class and fairly raises a question about Class Counsel's ability to understand the subject matter and to effectively advocate the position of the Class in the negotiation of the Supplemental Settlement.

This Honorable Court should critically review Class Counsel's judgment and assurances because of the serious issues associated with Class Counsel's submissions of the time entries associated with this matter. Mr. Rupert testified that some time entries on the time sheets that Class Counsel submitted to this Honorable Court were actually copied from Mr. Rupert's own time entries, such as a June 16, 2016 entry for "William H. Knestrick: estate of Cora M. Miller". [ECF Doc. 143-2 at p. 10]. Other time entries submitted by Class Counsel contain the file numbers that Mr. Rupert testified were assigned by his office to clients. [August 14, 2019 Notes of Testimony at p. 102:3-104:7; ECF Doc. 143-2 at p. 5]. Entries on Class Counsel's time sheets included clients of Mr. Rupert that were not involved in the Class. [August 14, 2019 Notes of Testimony at p. 104:9 - p. 105:10].

Class Counsel attempted to address these issues in the Class Response to Objections. Class Counsel posited that time entries ". . . reflect time spent by *Class Counsel* in consultation with Mr. Rupert as an expert concerning the issues pertaining to the issues brought to him by those persons." [ECF Doc. 171 at p. 9]. Mr. Rupert credibly testified that he had no contact with Class Counsel prior to April 2014. [August 14, 2019 Notes of Testimony at p. 105:17-106:1]. Yet, Class Counsel's time entries involving Mr. Rupert's clients reached back to 2012. [ECF Doc. 143-2 at pp. 1-3]. In a puzzling effort by Class Counsel to show that he did not merely copy

Mr. Rupert's time entries, Class Counsel suggested that the propriety of his entries was proven by the fact that the time he allocated to certain occurrences was different than the time recorded by Mr. Rupert. [ECF Doc. 171 at p. 10]. But, Class Counsel admits that he did not record the dates when he performed work or the time increments associated with the work. [ECF Doc. 171 at p. 10]. That undermines Class Counsel's attempted differentiation.

Class Counsel tried to further explain the issue with his time sheets by suggesting that "[c]ounsel did not have the presence of mind to record the date and time of each of the consults which spawned that work." [ECF Doc. 171 at p. 10]. It remains unclear how or why a longtime practitioner like Class Counsel could neglect to record time entries, particularly in a case where such entries would be submitted to the court in support of a request for attorneys' fees. In addition to raising question about Class Counsel's judgment and decision-making, Class Counsel's time entries and descriptions cannot be relied upon to support any contention by Class Counsel that he thoroughly researched factual and legal issues. Instead, all of these entries are suspect. These facts strongly suggests that Class Counsel's judgment cannot be trusted or relied on by this Honorable Court as part of a conclusion that the Supplemental Settlement is fair to the Class.

***2. Class Counsel's Attorneys' fees have no relationship to the work performed or benefit to the Class.***

The Supplemental Settlement contemplates that payment to the Class will be reduced by the amount payable to Class Counsel. [ECF Doc. 135-1 at § 2]. While not admitting or conceding that the Supplemental Settlement should be approved, if this Honorable Court does approve that settlement, it should not award any fees to Class Counsel. In 2011, as part of the Original Settlement, Class Counsel was compensated for his services and for costs of further administering the parties' settlement. [ECF Doc. 83 at p. 21]. Class Counsel became aware of the

MMBTU versus MCF "cap" discrepancy but did nothing about it in 2013 and 2014 – despite being compensated for class administration during that period out of the Original Settlement.[5]

To this point, the Supplemental Settlement only obligates Range to perform under the Original Settlement from 2011. The Supplemental Settlement imposes *no new obligations* on Range and does not provide any value to the Class beyond a fraction of the value that the Class was *already supposed to receive*. Despite this, Class Counsel proposes that he be paid twenty percent (20%) of the value of the initial lump sum payment to the Class under the Supplemental Settlement as well as twenty percent (20%) of the value of "Future Benefits" to the Class for a ten (10) year period. [ECF Doc. 143 at p. 3]. All that the Supplemental Settlement does is to fix the discrepancy between the Order Amending Leases and the Original Settlement – and Class Counsel's decision not to address the issue in 2013 or 2014. But, Class Counsel proposes to be paid $5,062,270 for his efforts to fix his own error. Even more egregious, in the Original Settlement, Class Counsel's forward looking fees were limited to a five (5) year period but Class Counsel now proposes that he be compensated for an additional ten (10) years simply for delivering a partial resolution that was bargained for years ago. [ECF Doc. 83 at p. 13; ECF Doc. 143 at p. 20].

The instant Objectors respectfully submit that this Honorable Court cannot authorize an award of attorneys' fees to Class Counsel because Class Counsel has provided no support for such award. At best, Class Counsel's time entries are *post hoc* estimates and unreliable. At worst, some of Class Counsel's time entries are copied from work performed by another professional and therefore unreliable. Either way, they are unreliable and the "cross-check" that Class Counsel proposes to justify the fee award has no basis in reality because there is no

[5] Class Counsel's contention that his conduct somehow demonstrates "diligence" cannot be taken seriously. [ECF Doc. 143 at p. 8].

demonstration that Class Counsel's "hours" were real. [ECF Doc. 143 at p. 20]. Time entries must "be specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed." Washington v. Phila. Cty. Ct. of Com. Pl., 89 F.3d 1031, 1037 (3d Cir. 1996). Outrageous fee requests can be denied in their entirety. Clemens v. New York Cent. Mut. Fire Ins. Co., 903 F.3d 396, 402 (3d Cir. 2018) (citations omitted). Class Counsel has done nothing that entitles him to compensation.

***3. This Honorable Court lacks jurisdiction over the Supplemental Settlement.***

The Objectors argued the jurisdictional issue to this Honorable Court at the August 14, 2019 Hearing, have briefed the issue and will not assert it anew. The Objectors reserve all rights to address jurisdictional issues that may be raised in other briefs.

***4. Pragmatic solutions exist that protect the Class.***

While the instant Objectors recognize the difficulties of the present posture of this case, it is submitted that the proposed Supplemental Settlement is not an appropriate resolution of this matter. There are, however, options for this Honorable Court to resolve this dispute in a way that is fair to the Class.

***a. Proceed under Rule 60(a) and decide it in favor of the Class.***

One option open to this Honorable Court is to act under Federal Rule of Civil Procedure 60(a) and to correct the error in the Order Amending Leases. [ECF Doc. 106].[6] Federal Rule of Civil Procedure 60(a) deals with errors, oversights, omissions and unintended acts or failures which result in a record that does not properly reflect the intention of parties or the court. The Third Circuit has held that, "[a]s long as the intentions of the parties are clearly defined and all the court need do is employ the judicial eraser to obliterate a mechanical or mathematical mistake, the modification will be allowed Pfizer Inc. v. Uprichard, 422 F.3d 124, 130 (3d

[6] This Honorable Court has the power to correct its orders "on its own, with or without notice." Fed.R.Civ.P. 60(a).

Cir.2005) (quoting In re W. Tex. Mktg., 12 F.3d 497, 504–05 (5th Cir.1994)). Here, all that is required is applying the "judicial eraser" to the Order Amending Leases to change MMBTU to MCF as the unit of measurement for the post-production cost "cap". Through such action, this Honorable Court would place Range and the Class in the exact position which they intended to be on March 17, 2011 – parties to a settlement with an "MCF" post-production cost "cap". By fixing this error, Range would be forced to re-calculate all payments using the MCF "cap". No generous "Release" of Range would be required and no other claims by the Class would be compromised in order for the Class to enjoy the bargain it had agreed-to.

Range cannot assert a credible argument against this position. Range knew, or should have known, that the Honorable Judge McLaughlin did not have the authority to alter the parties' settlement through the Order Amending Leases. Phillips, 869 F. 2d 234. Range knew, or should have known, that the Order Amending Leases was different than the Original Settlement. [ECF Docs. 73-1 and 84]. Range also knew or should have known that the Order Amending Leases was in conflict with the contemporaneous Order which certified the Class, approved the Original Settlement and incorporated the Original Settlement and demonstrably proves that Judge McLaughlin did not intend to modify the parties' settlement. [ECF Docs. 83 and 84]. Range also knew or should have known that the Class was not presented with the opportunity to object to or opt-out of a settlement whereby post-production costs were capped using MMBTU. [ECF Doc. 74]. Despite all this, Range did nothing to correct this obvious clerical error. Its suggestions that it calculated post-production caps to the Class based on MMBTU as the unit of measure because of the Order Amending Leases and that it is unsure why the Order Amending Leases is different from the Original Settlement ring hollow. Simply put, the clerical error in the Order Amending Leases resulted in a windfall to Range that it was uninterested in changing.

Range's explanation for its conduct also fails to pass muster in the context of the principles of judicial estoppel. Courts have not hesitated to apply the doctrine of judicial estoppel when a litigant seeks to take inconsistent positions. Murray v. Silberstein, 882 F.2d 61, 66 (3d Cir.1989) (bail commissioner was judicially estopped from contending that he was entitled to monetary relief in action challenging his discharge after he had obtained preliminary injunction by arguing that money damages were unavailable); Scarano v. Central R. Co. of New Jersey, 203 F.2d 510, 513 (3d Cir.1953) (railroad employee held judicially estopped from contending that he was physically rehabilitated and entitled to be restored to duty by fact that he had asserted in FELA claim that he would be unable to work because of his injuries). Judicial estoppel is designed to keep a litigant from "playing fast and loose with the courts." Scarano, 203 F.2d at 513.

Here, the criteria for judicial estoppel is met by Range's actions. The Class and Range agreed to the Original Settlement with post-production costs capped using MCF as the unit of measure. [ECF Doc. 73-1]. Range calculated the post-production cost "cap" based on MMBTU as the unit of measure. Conduct contrary to a settlement agreement may serve as a basis for judicial estoppel. Baughman v. Walt Disney World Co., 685 F.3d 1131, 1133-1134 (9th Cir. 2012) (holding that a party's use of the coercive power of a court subsequent to settlement may be grounds for judicial estoppel); Commonwealth Ins. Co. v. Titan Tire Corp., 398 F.3d 879, 887-88 (7th Cir. 2005) (even settlement agreements not adopted by the court may justify judicial estoppel); *See*, Comm'cn Workers of Am. v. N.J. Dep't of Personnel, 282 F.3d 213, 219 (3d Cir. 2002) (requests to enforce a settlement agreement may serve as a basis for judicial estoppel). Range cannot now refute the agreed-to Original Settlement with its MCF post-production cost

"cap" and rely on a clerical error in the Order Amending Leases to contend that an MMBTU "cap" was somehow appropriate.

There is no time limitation for a court to correct a prior order under Rule 60(a). For example, the Fourth Circuit has allowed a district court to correct an order under Rule 60(a) even after a final ruling on appeal. Kosnoski v. Howley, 33 F.3d 376 (4th Cir. 1994) (district court could clarify appropriate amount of interest previously awarded because Rule 60(a) can be raised "at any time"). Likewise, where a district court omitted the sum in an order confirming an arbitral award, the Second Circuit held that Rule 60(a) was appropriate even after the "case [was] closed and removed from [the] active docket" because "there was no dispute over the dollar amount awarded." Robert Lewis Rosen Assocs., Ltd. v. Webb, 473 F.3d 498, 502, 505 (2d Cir. 2007). Importantly, the court allowed the correction even though eighteen (18) months had passed and no party had appealed the original order. Id. at 498. This case is particularly insightful, given that there is no disagreement between Range and the Class that the Original Settlement obligated Range to "cap" post-production costs using MCF as the unit of measure.

Together with these considerations, there is no prejudice to anyone if the Order Amending Leases is corrected to reflect the Original Settlement. First, the Original Settlement was already incorporated into the Honorable Judge McLaughlin's Order that certified the Class, so there is evidence in the record that this Honorable Court recognized the MCF post-production cost "cap" as the parties' agreement. Second, as evidenced by the submissions associated with the Supplemental Settlement, it is possible for Range to calculate the monies owed to the Class as a result of the MCF versus MMBTU discrepancy and to make appropriate payments to the correct individuals and entities who are owed money. Third, Range can easily apply an MCF "cap" to post-production cost deductions going forward. Fourth, and most importantly,

correction of the Order Amending Leases would restore the Class and Range to the deal that they had agreed-to. It is unclear how Range can contend that being obligated to "cap" post-production costs using MCF is prejudicial in light of its agreement to do just that in the Original Settlement.

It is submitted that this course of action is the most practical manner of resolving this issue. Federal Rule of Civil Procedure 60(a) allows this Honorable Court to take action *sua sponte*. Fed.R.Civ.P. 60(a). Both Class Counsel and Range knew or should have known of this readily apparent clerical error and neither took action to fix it. That was detrimental to the Class. Both Range and Class Counsel stand to benefit through this Supplemental Settlement, with nothing "new" being delivered to the Class. Instead of proceeding with the Supplemental Settlement, this Honorable Court should exercise its power and authority to change the clerical error in the Order Amending Leases to "cap" post-production costs using MCF as the unit of measure, so that it is consistent with the Original Settlement and the March 17, 2011 Order which certified the Class and approved and incorporated the Original Settlement. [ECF Docs. 73-1 and 83]. That correction should be effective as of March 17, 2011, the date of the Order Amending Leases, because that is what the parties had intended at that time. [ECF Doc. 84].

***b. Certify a New Class.***

"Under Federal Rule of Civil Procedure 23(c)(1), District Courts are required to reassess their class rulings as the case develops." Barnes v. The American Tobacco Co., 161 F.3d 127, 140 (3d Cir.1998) (citation omitted); Boucher v. Syracuse Univ., 164 F.3d 113, 118 (2d Cir.1999) ("courts are 'required to reassess their class rulings as the case develops'"); Richardson v. Byrd, 709 F.2d 1016, 1019 (5th Cir.1983) ("The district judge must define, redefine, subclass and decertify as appropriate in response to the progression of the case from assertion to facts."). Federal Rule of Civil Procedure 23(c)(1)(C) stipulates that "an order that

grants or denies class certification may be altered or amended before final judgment." Fed.R.Civ.P. 23(c)(1)(C). Thus, "[e]ven after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation." Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 160 (1982); *see also* Cohen v. Chicago Title Ins. Co., No. 06–873, 2013 WL 842706 (E.D.Pa. Mar. 7, 2013).

A court's power to revisit certification is "a vital ingredient in the flexibility of courts to realize the full potential benefits from the judicious use of the class action device." Kelley v. Microsoft Corp., 2009 WL 413509, *2 (W.D. Wash. 2009). If subsequent events "disprove[] Plaintiffs' contentions that common issues predominate, the district court can at that stage modify or decertify the class." Id; Staton v. Boeing Co., 327 F.3d 938, 953 (9th Cir. 2003); In re Grand Theft Auto Video Game Consumer Litig., 251 F.R.D. 139, 155-57 (S.D. N.Y. 2008) (decertifying nationwide settlement class after determining that individual issues predominate). Indeed, the advisory committee notes to Rule 23 recognize that "[d]ecertification may be warranted after further proceedings." Fed. R. Civ. P. 23(c)(1)(C) Advisory Committee Note (2003).

The" Class" certified in 2011 was defined by the "Persons who held a Royalty Interest" at the time of certification. [ECF Doc. 83 at p. 25].[7] The "Class" that presently exists is different than the "Class" of individuals that existed when this matter was closed in 2011. As has been briefed and argued before this Honorable Court, the instant Objectors believe that there are jurisdictional issues that dictate that the present iteration of the "Class" presented by Range and Class Counsel is no "class" at all and that any resolution of this issue would not bind those

[7]To the extent that Class Counsel or Range argues that the "Class" encompassed property, courts disfavor classes defined by reference to objective criteria rather than individuals. To that end, courts have refused to certify classes defined by geographic boundaries, time limitations, and the purchase of particular products. *See, e.g.*, Reilly v. Gould, Inc., 965 F. Supp. 588, 596 (M.D. Pa. 1997); Earnest v. General Motors Corp., 923 F. Supp. 1469, 1473-74 (N.D. Ala 1996); Daigle v. Shell Oil Co., 133 F.R.D. 600, 602 (D. Colo. 1990).

individuals who were not part of the Class when it was originally declared. It is respectfully submitted that this issue can be resolved by this Honorable Court's certification of a new "class" to consist of the individuals and entities that Range and Class Counsel believe to constitute such body. This course of action would allow a new counsel[8] to represent the Class and to advocate on its behalf and for an "opt-out" and for objections to any proposed settlement.

Houston Harbaugh, P.C.

Dated: September 13, 2019

By: */s/ Robert J. Burnett*

Robert J. Burnett, Esquire
Pa. I.D. No. 76734
Brendan A. O'Donnell, Esquire
Pa. I.D. No. 309007
Erik M. Bergenthal, Esquire
Pa. I.D. No. 317978
Three Gateway Center
401 Liberty Avenue, 22nd Floor
Pittsburgh, PA 15222
(412) 281-5060
E-mail: *rburnett@hh-law.com*
*odonnellba@hh-law.com*
*bergenthalem@hh-law.com*
(*Counsel for Objectors George M. Aten, Raymond W. Seddon, James H. Post and Leon Chow*)

[8] The undersigned has no desire to serve as counsel for the Class. Class Counsel's suggestion that the undersigned filed objections ". . . in the hope that such an intervention will lead to fees for themselves" is not well-taken. [ECF Doc. 171 at p. 7].

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing **OMNIBUS POST-HEARING BRIEF IN SUPPORT OF OBJECTIONS OF GEORGE M. ATEN TO PROPOSED SUPPLEMENTAL AGREEMENT AND STIPULATION OF SETTLEMENT** was served upon counsel of record as stated below via the Court's CM/ECF system this 13th day of September, 2019:

Joseph E. Altomare, Esquire
The Law Office of Joseph Altomare
228 East Central Avenue, PO Box 373
Titusville, PA 16354
*(Counsel for Class Plaintiffs)*

Kevin C. Abbott, Esquire
Justin H. Werner, Esquire
Reed Smith LLP
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222

Anne E. Ralph, Esquire
David W. Hardymon, Esquire
Vorys, Sater, Seymour & Pease LLP
52 East Gay Street
Columbus, OH 43216

Daniel J. Sponseller, Esquire
Law Office of Daniel J. Sponseller
409 Broad Street, Suite 200
Sewickley, PA 15143
(*Counsel for Defendant Range Resources-Appalachia, LLC*)

*/s/ Robert J. Burnett*
Robert J. Burnett
*Counsel for George M. Aten, Raymond W. Seddon, James H. Post and Leon Chow*