**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

DONALD C. FREDERICK and LOUISE
M. FREDERICK, h/w, MICHAEL A.
MAHLE and PAULA M. MAHLE, h/w,
DONALD PORTA, and all other persons
similarly situated,

        Plaintiffs,

        v.

RANGE RESOURCES-APPALACHIA,
LLC,

        Defendant.

Docket No. 1:08-cv-00288

Electronically Filed

Class Action

Judge Susan Paradise Baxter

**DEFENDANT RANGE RESOURCES-APPALACHIA, LLC'S
MEMORANDUM IN SUPPORT OF MOTION TO STRIKE
<u>AFFIDAVIT OF RYAN J. RUPERT [DOC. NO. 180-1]</u>**

Defendant Range Resources-Appalachia, LLC ("Range") moves to strike the Affidavit of

Ryan Rupert (the "Rupert Affidavit") [Doc. No. 180-1], which was appended to the Bigley

Objectors' Post-Hearing Brief in Support of their Objections to the Supplemental Class Action

Settlement.  The Rupert Affidavit is improper and should be stricken on multiple grounds.  *First*,

the content of the Rupert Affidavit, which purports to calculate various "class damages," conflicts

with the sworn testimony provided by Rupert during the fairness hearing, when Rupert testified

on cross-examination that he had not performed any analysis of actual damages.  *Second*, the

Rupert Affidavit is untimely because Range has been denied the opportunity to cross examine

Rupert as to this new opinion evidence – again, because Rupert did not proffer such opinions

during the fairness hearing.  *Third*, the Rupert Affidavit purports to provide opinion testimony,

whereas at the fairness hearing, Rupert was offered as a fact witness as to just one of the Bigley

Objectors.  Rupert was never qualified as an expert and was not proffered as an expert during the

fairness hearing.  *Fourth*, Range is highly prejudiced by this belated and conflicting opinion

testimony, because it is not admissible under any standard governing opinion testimony.  Based on his review of royalty statements for just one of the more than 11,000 class members, Rupert makes a series of unsupported and wrong assumptions to extrapolate purported class damages, none of which have any foundation in any record evidence.  The Rupert Affidavit should be stricken from the record.

## BACKGROUND

Pursuant to this Court's May 22, 2019 Order [ECF No. 141], on May 31, 2019, Range mailed a Notice of Supplemental Agreement and Stipulation of Settlement to the addresses Range had in its records for all 11,882 Class Members, informing the Class Members of their opportunity to object to the proposed settlement and present evidence at a hearing on August 14, 2019.  On August 14, 2019, this Court held a hearing regarding the Joint Motion for Approval of Supplemental Agreement and Stipulation of Settlement submitted by class counsel and Range (the "Fairness Hearing.").  During that Fairness Hearing, counsel for the Bigley Objectors called Ryan J. Rupert, a mineral manager for one of the Bigley Objectors, the Shaw Family LP ("Shaw"), to testify.  *See* August 14, 2019 Hearing Transcript ("Transcript") at p. 71. Counsel for Range objected to Mr. Rupert testifying, to the extent he would offer expert testimony or testify as to class members other than the Shaw Family LP.  *See id.* at p. 72.  The Court inquired as to the Bigley Objectors' intended line of questioning, to which Counsel for the Bigley Objectors responded that Rupert was called only to testify as to fact issues related to his work for the Shaw:

> MR. PETTORINI: He's been identified as the mineral manager for the -- two things, Your Honor.  One is he's the mineral manager for the Shaws, who were here.  He's going to testify as to the Shaws' royalty statements and the issues that he presented to the Shaws…
>
> THE COURT: So it's a fact-based questioning.  Your objection is?

- 2 -

> MR. ABBOTT: My objection is to him testifying as an expert, because he was not disclosed as one.  And testifying on behalf of other members of the class...

*See id.* at p. 72: 2-24.  Counsel for the Bigley Objectors again explained that Mr. Rupert's testimony would be limited to explaining royalty statements and his work for the Shaws and would not veer into expert opinion testimony:

> MR. PETTORINI: Your Honor, we've introduced royalty statements. What we want to show to the Court is regarding the fairness of this blanket release with the issues that are presented in these royalty statements, using the Shaws as the example.  We think that -- and, again, this doesn't require expert testimony. This is factual testimony. We're going to show the royalty statements, we're going to point out the -- the legend, what was deducted, and how it taken.  It doesn't require an expert.  If the Shaws were more sophisticated, they could have done it themselves.  I didn't want to –
>
> THE COURT: That objection is overruled.  We'll allow it.  Go ahead. If it gets off the rails, you can jump up again.

*See id.* at pp. 73:17-74:6.

Rupert testified at the Fairness Hearing that: (1) he spotted a number of issues where he questioned Range's royalty calculations (the MCF/MMBTU issue, the FCI deductions outside of the caps, the complexity of the royalty statements and a nonspecific issue related to NGL deductions), (2) that class counsel raised all of those issues in his Motion to Enforce, and (3) the parties assessed the risk and reached a settlement agreement that addresses all the claims.  *See* Transcript at p. 132.  Rupert testified that class counsel had estimated total potential damages of $24 million, *see* Transcript, p. 116:6-14, but Rupert admitted that he did not participate in the discovery or information in the case, and therefore was unable to perform his own assessment as to the class's potential damages.  *See* Transcript at pp. 133-134.

At the close of the Fairness Hearing, the Court ordered supplemental briefing, to allow "all parties and Objectors to file briefing regarding responses to *anything that occurred today*.

And then everybody may respond to each other's three weeks past that," s*ee id.* at p. 156:15-19 (emphasis added), but made clear to the objectors that the fairness hearing was their opportunity to present evidence in support of their objections. *See id.* at 158:9-10 ("Everybody files one date, and then everybody files a response.  But it seems to me your burden was today.  I mean, today was your time to object.").

In their Post-Hearing Brief, the Bigley Objectors argue for the first time that the supplemental settlement proposed by the parties is inadequate in part because "underpayments of the Original Settlement are believed to greatly exceed the $24 million figure referenced by class counsel in his email to accountant Rupert."  In support of this proposition, they attach the Rupert Affidavit, in which Rupert states his opinion that a reasonable estimation of Range's underpayment of royalties to the Class is a total underpayment of royalties due to the Class in the amount of $63,481.245.  *See* Rupert Affidavit

## ARGUMENT

### A.    The Rupert Affidavit Should Be Stricken As It Conflicts With The Prior Sworn Testimony of Rupert During the Fairness Hearing.

During the Fairness Hearing Rupert testified generally regarding his observations of the Shaws' royalty statements in the course of his work as their mineral manager.  With respect to calculating the alleged underpayment of royalties by Range, he only testified as to several months of royalty payments paid to Shaw by Range.  Rupert did not testify to his new "opinion" in the Rupert Affidavit that the class's claims for underpayment of royalties amount to $63,481,245. Instead, Rupert admitted that he did not review discovery or information in the case, and therefore was unable to perform any assessment as to the class's potential damages.   Transcript at pp. 133-134.  The only estimated value of class claims referred to by Rupert during his hearing

testimony was $24,000,000, a number he admitted was based on an email from class counsel, not his own analysis.  *See* Transcript, p. 116:6-14.

Courts in this Circuit have broad discretion to strike affidavits and have often done so in the context of affidavits contradicting prior sworn testimony.  *McElroy v. Sands Casino*, 593 F. App'x 113, 116 (3d Cir. 2014); *In re: Citx Corp.,* 448 F.3d 672, 679 (3d Cir.2006). The rationale for striking such affidavits is that "testimony taken in a deposition, rather than sworn to in an affidavit, is considered more favorable for summary judgment purposes since testimony sworn to in an affidavit is not subject to cross-examination."  *See id.* at 680.  The same principles apply here.  The Bigley Objectors called Rupert to testify at the Fairness Hearing.  They had every opportunity to elicit the opinion testimony in the Rupert Affidavit on direct examination during the hearing.  They chose not to do so.  Instead, Rupert admitted that he was unable to perform any assessment as to the class's potential damages, and his only testimony regarding an estimate of class damages was the $24,000,000 figure elicited by Class Counsel on cross examination.  The Bigley Objectors' attempt to present new opinion testimony from Rupert in an affidavit after the Fairness Hearing, when Range and Class Counsel have no opportunity for cross examination, is inappropriate and should be stricken.

**B.     The Rupert Affidavit Should Be Stricken As Untimely.**

The Rupert Affidavit should be stricken as untimely because Rupert did not proffer the opinions in the Rupert Affidavit during the Fairness Hearing.  Pursuant to the Court's May 22, 2019 Order [ECF No. 141], on May 31, 2019, Range mailed the Notice of Supplemental Agreement and Stipulation of Settlement via U.S. First Class Mail, to the addresses Range had in its records for all 11,882 Class Members.  Therefore, potential objectors, including the Bigley Objectors, had over two and a half months to prepare for the August 14, 2019 Fairness Hearing.

This Court made clear that the Fairness Hearing was the opportunity for the Objectors to present evidence regarding their objections to the supplemental settlement. *See* ECF No. 141 ("Any such objections must be filed no later than ten (10) days before the hearing.  Only Class members who timely file objections may participate in the hearing."); Transcript, p. 158:9-10 (…"[your] burden was today. I mean, today was your time to object.").  Despite this notice, the Bigley Objectors made no mention of Rupert's opinion testimony regarding purported total class damages, either in an Affidavit of Ryan J. Rupert [ECF No. 160-1] filed on ten days before the Fairness Hearing, or during the direct examination of Mr. Rupert at the Fairness Hearing.  The Bigley Objectors likewise made no attempt during the Fairness Hearing to cross examine Range witness Ruth Whitten regarding the opinions espoused by Rupert in the Rupert Affidavit.

It is clear that the purpose of the supplemental briefing allowed by this Court following the Fairness Hearing was to "supplement" their legal briefs to address evidence admitted at the hearing – not to present new objections, evidence or opinions for the first time.  The Court characterized the supplemental briefing as follows:

> THE COURT: …I think it should somewhat track what we did today as well. Because I'm just not prepared to stay here and take more arguments on the information that came out today.  Why don't we do it this way:  Let's talk about this idea:  How about we have a date certain in early September for all persons to file briefing -- all parties and Objectors to file briefing regarding responses to anything that occurred today.  And then everybody may respond to each other's three weeks past that.

*See* Transcript at p. 156:9-18.  The Rupert Affidavit does not "respond to" the testimony at the hearing – it presents new opinion testimony from Rupert that he either withheld or formed after the hearing occurred.  The Bigley Objectors should not be allowed to augment the record with new opinions from Rupert after the hearing, when Range and Class Counsel no longer have the opportunity to cross examine Rupert as to his new facts. *See, e.g., Babcock & Wilcox Ebensburg,*

*Power, Inc. v. Zurich Am. Ins. Co.*, 2005 WL 6763297, at *1 (W.D. Pa. Sept. 8, 2005) ("the affidavit of Dr. V.P. Swaminathan will not be permitted to be utilized in this proceeding based upon the Court's decision that it would be prejudicial to the Plaintiffs not to be able to cross-examine the expert, in that Defendant has advised the Court that Dr. Swaminathan will not be present for the hearing."). Rupert's estimate of class damages, presented for the first time in an affidavit attached to supplemental post-hearing briefing, is untimely and must be stricken.

**C.     The Rupert Affidavit Should Be Stricken As Impermissible Expert Opinion.**

The Rupert Affidavit should be stricken because there is no foundation for Rupert to present such opinions. At the fairness hearing, Rupert was offered as a fact witness as to just one of the Bigley Objectors, Shaw. He was never disclosed as an expert and never proffered nor qualified as an expert during the fairness hearing. On the contrary, counsel for Range objected to Rupert testifying as an expert or testifying on behalf of other members of the class. *See* Transcript, p. 72:2-24. Counsel for the Bigley Objectors explained that Mr. Rupert's testimony would be limited to explaining royalty statements and his work for the Shaws and would not veer into expert opinion testimony. *See id.* at p. 73:17-25 ("We think that -- and, again, this doesn't require expert testimony. This is factual testimony. We're going to show the royalty statements, we're going to point out the -- the legend, what was deducted, and how it taken. It doesn't require an expert. If the Shaws were more sophisticated, they could have done it themselves."). On the basis of counsel's representations, the court overruled Range's objections, with the caveat that "if it gets off the rails, you can jump up again…"). *See id.* at p. 74:1-4.

Rupert testified that he started reviewing Range's royalty statements in 2009 on behalf of his father and, over time, approximately 75 clients with Range Resources leases. Transcript at p. 75. In his review of royalty statements, Rupert would also spot other issues where he questioned

Range's statements.  He would email Ruth Whitten, and "[t]ypically, I would get a rather quick response" and Whitten or someone working with her would correct the issue.  Transcript at pp. 80-81.  Rupert also testified that he raised an issue in August 2017 as to Range failing to apply the caps.  Rupert could not remember if Range had stopped applying the cap to all costs, other than just the FCI (firm transportation) costs.  Transcript at p. 130.  However, Rupert did not present any evidence that Range had stopped applying the caps altogether – nor could he.  Rupert was aware that Range changed its practice to start including FCI charges in the caps after the Motion to Enforce was filed.  Transcript at p. 131.  Rupert also testified that he had noticed the discrepancy between the Order Amending Leases and the original settlement on the MCF/MMBTU issue in 2014 and brought it to the attention of class counsel.  Transcript at p. 131.  That issue was the subject of both the Motion to Enforce and Motion to Correct.  Transcript at p. 131.

The balance of Rupert's testimony related to his complaint that class counsel had reneged on his promise to pay Rupert's invoice and his claim that class counsel had copied Rupert's time entries and claimed them as his own.  The sum of Rupert's remaining testimony was that: (1) he spotted a number of issues where he questioned Range's royalty calculations (the MCF/MMBTU issue, the FCI deductions outside of the caps, the complexity of the royalty statements and a nonspecific issue related to NGL deductions), (2) that class counsel raised all of those issues in his Motion to Enforce, and (3) the parties assessed the risk and reached a settlement agreement that addresses all the claims.  Transcript at p. 132.  Rupert did not offer the opinions that are now in the Rupert Affidavit Rupert at the Fairness Hearing, and in fact, admitted that he did not review all of the discovery or information in the case, and therefore was unable to perform any assessment as to the class's potential damages.  Transcript at pp. 133-134.

In filing the Rupert Affidavit with their supplemental briefing, the Bigley Objectors do in fact go "off the rails" by attempting to introduce expert opinion evidence through Mr. Rupert for the first time in an affidavit attached to supplemental briefing, in contrast to their prior representations regarding the subject and quality of Rupert's testimony. Had the Bigley Objectors made clear their intent to offer such evidence at the hearing, Range would have made a *Daubert* challenge to Rupert's qualifications to present such testimony, and the methodology he used in reaching his estimates. Range is now deprived of the opportunity to offer any meaningful challenge or cross examination of Rupert's qualifications or methodology and, as a result, Rupert's affidavit must be stricken.

**D.     Range is Prejudiced by the Rupert Affidavit Because It Is Inadmissible Opinion Evidence Based On Unsupported Assumptions Relating To A Single Class Member.**

The belated submission of the Rupert Affidavit is highly prejudicial to Range because it is not admissible opinion testimony under the Federal Rules of Evidence. The purported "methodology" employed by Rupert to estimate the class damages is based on a speculative extrapolation from a single sample that is unscientific, unsupported by the record and disproven by the facts.

The purported "methodology" endorsed in the Rupert Affidavit is based on Rupert's assumption that the royalty statements from the Shaw Family LP for a one-year period are an "example" of an "average royalty owner." Doc. No. 180-1 at ¶ 6. Rupert justifies this characterization because the Shaw's property have been in production for eight years and they have a 12.5% royalty. *Id.* Rupert then purports to calculate various categories of damages based on this one year sample of the Shaw's royalty statements. Rupert makes two foundational assumptions as part of this exercise: first, that this 12 month time period is representative of the entire 99 months for which he claims underpayment occurred; and second, that the purported

monthly underpayment based on the Shaw's royalty statement figures is the same across all 5,296 class members who have received royalties.  In other words, Rupert's calculation of purported class damages rests on an assumption that the class consists of 5,296 individuals with exactly the same interest as the Shaws.  Rupert only looked at data relating to the Shaws – he did not even purport to look at the data for the other Bigley objectors.  At its core, the Rupert Affidavit has purported to calculate a class damages figure by multiplying the Shaws numbers times 5,296.

This is not any kind of acceptable accounting methodology.  There is no authority or treatise anywhere that would support a methodology of extrapolation of damages for thousands of people over an eight year period based on a sample size of one.  On its face, this is not a methodology that meets the criteria for admissibility under Fed. R. Evid. 702, because it is not a methodology at all.  It is complete speculation by a person who did not even bother to aggregate the data of the very objectors on whose behalf this affidavit was filed.

The underlying assumptions are also false.  The Shaw Family LP has a 135 acre lease, and receives royalties based on the volume of gas attributable to that many producing acres.  *See* R. Whitten Declaration, attached to Motion as **Exhibit A**, at ¶ 8.  However, the large majority of the class members (over 70%) have leases of 25 acres or less.  *See id.*  Rupert's Affidavit also ignores other potential variables across the class, including, but not limited to, relevant owner percentages, the length of the period of ownership, the length of the period of production, and the number of wells in which a class member participates.  *See id.* at ¶ 7.  The Rupert Affidavit is based on a false premise that every single class member receives royalties based on a 135 acre lease, and since the vast majority of the class has leases less than 1/5 of that size, Rupert's purported "methodology" has grossly over-estimated the purported class damages in just that manner alone.

Rupert also falsely contends that Range failed to apply *any* cap on post-production costs for a "13-month" period from July 2017 through July 2018.  For that period, Range applied the cap to certain costs, but not FCI (firm transportation).  *See id.* at ¶ 10.  This is the claim that was asserted in the motion to enforce and cured by Range.  Rupert purports to be calculating damages on a claim that was never made in the motion to enforce, and is also not supported by the record.

Finally, Rupert makes an unsupported assumption that Range erroneously overcharged royalty owners for certain other deductions in the month of March, 2018, in the amount of almost $5.5 million dollars.  However, this figure is entirely based on what he believed was an overcharge of approximately $1,300 for the Shaws in that month.  Again, by starting with a sample size of 1 and multiplying by very large numbers and various percentages he pulled out of thin air, Rupert has created a multi-million dollar damages figure from a single royalty statement for a single class member for a single month.  That is not a generally accepted scientific methodology, it is a wild guess.

Rupert's Affidavit does nothing more than confirm his testimony at the fairness hearing.  He does not know what the class damages are.  His speculative extrapolations from certain months that the Shaws' received royalties is not a proxy for calculating class damages.  He has no actual personal knowledge about any class members' purported damages, and there is no basis for his speculative opinions about them based on these erroneous extrapolations.  The Rupert Affidavit must be stricken.

## CONCLUSION

For the foregoing reasons, this Court should grant Range's motion and strike the Affidavit of Ryan Rupert [Doc. No. 180-1], appended to the Bigley Objectors' Post-Hearing Brief in Support of their Objections to the Supplemental Class Action Settlement.

REED SMITH LLP

September 26, 2019

/s/ Kevin C. Abbott
Kevin C. Abbott
PA ID No. 35734
Justin H. Werner
PA ID No. 203111
225 Fifth Avenue
Pittsburgh, PA  15222
(412) 288-3804/3838
kabbott@reedsmith.com
jwerner@reedsmith.com

*Counsel for Defendant*
*Range Resources-Appalachia, LLC*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing has been

served by ECF on all counsel of record.

Dated:  September 26, 2019                                    */s/ Kevin C. Abbott*_____