IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD C. FREDERICK and | : | Docket No. 1:08-cv-00288-SJM |
| LOUISE M. FREDERICK, h/w, | : | |
| MICHAEL A. MAHLE and | : | |
| PAULA M. MAHLE, h/w, DONALD | : | Electronically Filed Document |
| PORTA, and all other persons | : | |
| similarly situated, | : | |
| | : | CLASS ACTION |
| Plaintiffs, | : | |
| | : | |
| vs. | : | |
| | : | |
| RANGE RESOURCES – | : | |
| APPALACHIA, LLC | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT RANGE RESOURCES-APPALACHIA, LLC'S
RESPONSE IN OPPOSITION TO SUPPLEMENTAL
POST HEARING BRIEFING OF OBJECTORS**

Defendant Range Resources-Appalachia, LLC ("Range") files this response to: (1) the Bigley Objectors Post-Hearing Brief In Support Of Their Objections To The Supplemental Class Action Settlement [Doc. No. 180] (the "Bigley Objectors" but previously referred to as the "Pettorini Objectors"); and (2) the Omnibus Post-Hearing Brief in Support of Objections to Proposed Supplemental Agreement and Stipulation of Settlement [Doc. No. 178] filed by George M. Aten, Raymond W. Seddon, James H. Post and Leon Chow (the "Burnett Objectors").

The objectors do not dispute that under Third Circuit precedent, the class action settlement is presumed to be fair if negotiated between informed and experience parties and counsel at arms' length. *In re Warfarin Sodium Antitrust Litigation*, 391 F.3d 516, 535 (3d Cir. 2004). None of the objectors presented evidence at the fairness hearing that the settlement was not negotiated between informed and experienced counsel and parties, or that the negotiations were not conducted at arms' length. Nor did any of the objectors present evidence at the hearing that would

overcome the presumption of fairness that applies to this class settlement, to which over 99% of the class did not object.  The hearing was the opportunity for this small minority of the class to present evidence of unfairness, but they did not present any evidence of unfairness.  In fact, the evidence at the hearing was minimal, and consisted mostly of complaints limited to just one objector, or complaints aimed at the conduct of class counsel, which, based on the assertions they made, are fundamentally irrelevant to the issue of fairness of the settlement for the class as a whole.

Post-hearing, the objectors continue to rehash legal arguments and offer speculation that continuing the litigation against Range may have ultimately resulted in a better result for the class. However, the settlement eliminated the risk that the litigation may have resulted in a worse situation for the class – which is the entire purpose of settling cases.  The fact that the class *might* have done better does not overcome a presumption that the settlement is fair because of the risk that the class *might* have done worse.  The objectors also complain that the release against Range is too broad, but the broad release was a material term of the settlement of the motion to enforce, which raised numerous claims against Range, all of which were settled.  Certain objectors raise legal arguments regarding jurisdiction or re-certification of the class, all of which have previously been addressed, and which have no merit.  Finally, the balance of the objectors' arguments center on conduct by class counsel, all of which are all collateral issues to the fairness of the settlement of the claims asserted in the motion to enforce.

The two groups of objectors had their opportunity to present evidence and argument demonstrating that the class action settlement was unfair.  They did not meet their burden of overcoming the presumption of fairness that the Third Circuit applies to class settlements.  In

order to give effect to the will of over 99% of the class, and because it is fair and practical, the class action settlement should be approved.

## **ARGUMENT**

### I. **Burnett Objectors Presented No Evidence Or Arguments Overcoming The Presumption of Fairness**

The Burnett Objectors did not offer any evidence at the fairness hearing. The supplemental briefing they submitted rehashes their prior arguments regarding consideration for the settlement, claims that the Court does not have jurisdiction, and the Court should grant Plaintiffs' Rule 60(a) motion rather than approve the supplemental settlement. Range will address each of these objections below.

The remainder of the Burnett Objectors' supplemental briefing relates to conduct by class counsel. On that issue, Range simply notes that none of the Burnett Objectors' arguments undermine the fairness of the settlement. As to what relief these arguments may support with respect to the collateral issues of class counsel's fee application or the motion to disqualify class counsel, Range takes no position.

#### A. **The Burnett Objectors' Lack Of Consideration Argument Is Not Supported.**

The Burnett Objectors again argue that there is no consideration to the class because the Supplemental Settlement Agreement simply puts them in the same position as if Range had complied with the original settlement. However, there is valuable consideration. Range is forgoing its meritorious statute of limitations, acquiescence, and other defenses to the Motion to Enforce and Rule 60(a) Motion, based on the undisputed fact that it complied with the Court Order that explicitly amended the leases, and that the class and class counsel has been on notice of Range's calculations of royalty under the settlement since 2011. [Doc. No. 113]. The Burnett Objectors also incorrectly assume that the entire $12 million payment was attributable to the

single issue of how the post-production caps were calculated.  However, as made clear in the settlement documents, that payment is in exchange for a full release of all claims asserted in the motion to enforce.  [Doc. No. 135].  The record reflects valuable consideration to the class: the $12 million payment and the prospective change in calculation going forward.  [Doc. No. 135]. Obviously, if the case proceeds to final judgment, the class may receive less of a benefit (after years of litigation), or none.

> ### B.     Burnett Objectors' Lack of Jurisdiction Argument Has No Merit

The Burnett Objectors include two sentences in their supplemental briefing re-arguing that this Court does not have jurisdiction to approve the Supplemental Settlement Agreement.  As this Court has already correctly held, it retained ancillary jurisdiction over claims to enforce the original settlement agreement.   [Doc. No. 105, pp. 4-5]. That conclusion is supported by applicable case law.  *See Shell's Disposal and Recycling*, 504 F. App'x 194, 198 (3d Cir. 2012). Range will not belabor the point.

> ### C.     The Burnett Objectors' Alternative "Practical Solutions" Are Not Practical

Sensitive to the fact that they seek a result that may not benefit themselves or to the class as a whole, the Burnett Objectors now argue that there are at least two alternative "practical" solutions for the Court in lieu of approving the Supplemental Settlement Agreement.  First, the Burnett Objectors suggest that the Court should grant the Rule 60(a) Motion and award seven years of past "damages" to the Class. [1]  This argument assumes a 100% guarantee of success on this disputed motion.  There is no basis for this assumption that the result of the Rule 60(a) Motion

---

[1] Both the Burnett Objectors and the Bigley Objectors make arguments based on "damages" due to the class, but there has not been any judgment that Range has liability in any amount.  As with all of their arguments, the objectors assume liability.  That assumption has no basis.  Like all settlements, the settlement here resolves issues of disputed liability.

will be that the class will get a prospective change and all seven years' worth of alleged "damages."   Range aggressively opposed the Rule 60(a) Motion [Doc. No. 113] and still maintains it is without merit.

Specifically, as Range argued in its opposition to the Rule 60(a) Motion, the motion was filed too late. [Doc. No. 113].  At various times the discrepancy between the original settlement and the Order Amending Leases has been described as a "mistake."  If it was a "mistake," Rule 60(b)(1) required a motion to correct the mistake to be filed within one year after the mistaken order was entered.  Here, the class missed that deadline by six years.  Even the catch-all provision of Rule 60(b)(6) that allows modification of a court order for "any reason that justifies relief" has been held to require that such motions must be filed without one year "unless extraordinary circumstances excuse the party's failure to proceed sooner." *Gordon v. Monoson*, 239 F. App's 710, 713 (3d Cir. 2007).  No extraordinary circumstances exist here – class counsel knew of the discrepancy from the very beginning, advising the Court as early as 2011 that he submitted the wrong order due to confusion.   The Settlement and the Order Amending Lease are public documents.   Every monthly royalty statement sent to the class showed how the caps were calculated.  Without a doubt, class counsel knew of the discrepancy in 2014 but told Range he was not inclined to press the issue. [Doc. No. 113].   That same knowledge is chargeable against every member of the class – every royalty statement they received showed how the calculation of the caps was done. [Doc. No. 113].  The purpose of the one-year limitations period in Rule 60(b) to correct Court Orders is to encourage finality and reliance on Court Orders. *See, e.g. Killmeyer v. Oglebay Norton Co.*, 817 F. Supp. 681, 692 (W.D. Pa. 2011).  The fact that the discrepancy was obvious and known to all counsel and parties since 2011 is powerful evidence that all the parties were satisfied with the status quo under the Order Amending Leases.

Further, Rule 60(a) can only be used for corrections where no additional proof of the error is required.  *See McNickel v. Bankers Life & Cas. Co.*, 888 F.2d 678, 682 (10th Cir. 1989).  This Court has already held that it could not make a "definitive determination" as to how the discrepancy occurred [Doc. No. 105], and no such definitive determination could be made now without more proof.  Due to the passage of time, the fact that Range's former counsel retired, and the fact the judge who entered the Order has left the bench and could not be called to testify anyway, means the Court may never be able to make such a definitive determination.  The difficulties of reconstructing history illustrate why motions to correct substantive errors must be made within one year.  Even if Rule 60(a) somehow would permit an amendment to the order, there is no authority that permits the Court to penalize Range for *compliance* with this Court's Order.  As class counsel conceded at the hearing, there is no authority under Rule 60(a) or otherwise to correct the Order retroactively and claw back the discrepancy for a seven-year period.  Whether viewed as untimely under Rule 60 or barred by equitable doctrines such as waiver, laches, estoppel or acquiescence, the class faced a real risk that the Motion to Correct would be denied.

The Burnett Objectors assume the Rule 60(a) Motion would be granted, but the settlement recognized the risk that it may not be, or that it may be, but with less of a benefit to the class than the terms of the settlement.  There was risk on both sides, and the settlement resolved that risk now and without years of protracted litigation.  *See, e.g. Bryan v. Pittsburgh Plate Gas Co.*, 494 F.2d 799 (3d Cir. 1974) (in evaluating a class settlement, district court had balance factors including "costs, both in time and money, of continued litigation").  The fairness of settlements cannot be judged by speculation that one side could entirely prevail on their argument if litigation was pursued to its finality.  Rather, it is a balancing of risk, and the Burnett Objectors have not

asserted any argument showing that the balance of risk overcomes the presumption of fairness, particularly given the tangible benefits to the class upon approval of the settlement.

The Burnett Objectors alternatively argue that the Court should certify a new class.  In support, they cite cases for the proposition that "district courts are required to reassess their class rulings as the case develops."  This principle is inapplicable here, where a class settlement was reached by the parties and received final approval by the Court over 9 years ago.  None of the cases cited by the Burnett Objectors involve a situation in which a class settlement has already received final approval from the court.  The only case cited by the Burnett Objectors that even involves a settlement class is *In re Grand Theft Auto Video Game Consumer Litig.,* 251 F.R.D. 139 (S.D. N.Y. 2008).  The settlement class in that case had received preliminary approval but the Court ultimately determined it could not approve the final settlement in light of new developments in applicable Second Circuit law.  *See id.* at 146.  This case does not support the claim that re-certification is required years after final approval.

## II.     Bigley Objectors Presented No Evidence Or Arguments Overcoming Presumption Of Fairness

The Bigley Objectors' post-hearing brief primarily focuses its arguments on the conduct of class counsel.  The Bigley Objectors argue that the presumption of fairness should be displaced due to the conduct of class counsel since the original settlement, but that is irrelevant misdirection. The past conduct of class counsel does not inform the issue of whether the settlement under the current facts is fair to the class.  No one can change the facts that have occurred over the last seven years – the question is whether the settlement is fair to the class given the facts as they currently exist.  On this point, the Bigley Objectors offered no actual evidence at the hearing of unfairness.  Their post-hoc attempt to convert their fact witness into an expert to opine on purported class damages fails for the reasons already briefed.  [Doc. No. 184-185].  The Bigley

Objectors have not established that the settlement is unfair and cannot establish that continued litigation would have guaranteed a better result for the class.  They have not met their burden of establishing unfairness of a settlement where more than 99% of the class have not objected.

As to the Bigley Objectors' issues with the fee request or to disqualify counsel, Range takes no position, other than to acknowledge its previously stated argument that these collateral issues should await a determination of fairness.

A.     **The Presumption Of Fairness Is Not Displaced**

The Bigley Objectors argue no presumption of fairness should be applied.  They suggest that negotiations were not at arms' length because class counsel did not adequately represent them.  They have no evidence that there was not arms' length negotiations, and their attempt to convert their arguments about class counsel's diligence in pursuing claims into a suggestion that class counsel did not act at arms' length has no support in the record or the case law.  The Bigley Objectors argue that inadequate discovery occurred because there were no depositions to "test" the scope of Range's document production.  However, class counsel received all of the data necessary to prosecute his motion, including multiple rounds of responses to interrogatories and document requests.  [Doc. No. 171].  The fact that a records deposition did not occur does not displace the presumption of fairness.  The Bigley Objectors also complain that class counsel accepted less than what they believe is the true amount of underpayment, but as addressed below, their calculations of underpayment come from Mr. Rupert's inadmissible extrapolations of class damages, which is the subject of a motion to strike, and which is also wrong.  [Doc. No. 184-185].  In short, the Bigley Objectors' arguments against the presumption of fairness do not have record support or case law support, or otherwise relate to issues concerning class counsel's

conduct, which are not relevant to whether this settlement is fair based on the facts as alleged in the Motion to Enforce.

### B.      The Fact That Class Counsel Delayed Is Not Informative Of Fairness

The Bigley Objectors complain that class counsel did not adequately represent them because he delayed in bringing the Motion to Enforce for seven years.  That issue is not informative of whether the settlement is fair to the class, because these facts cannot be changed. There is no evidence establishing that the result achieved by class counsel – a multi-million dollar payment to the class and prospective change in calculations – is unfair based on the facts as they exist and the potential risk of a worse result to the class if litigation had continued.[2]

### C.      The Bigley Objectors' Speculation of Higher Damages Is Not Evidence

The Bigley Objectors appear to speculate that there may be other instances of underpayment by Range.  Their evidence of these purported "underpayments" purportedly comes from Mr. Rupert's review of a limited subset of royalty statements on the behalf of one lessor, the

---

[2] None of the case law cited by the Bigley Objectors relating to the issue of inadequacy of class counsel is on point.  One case they cite involves the settlement of a class action where little or no discovery was conducted by class counsel. *See In re Ford Motor Co. Bronco II Prod. Liab. Litig.,* 1995 WL 222177 (E.D. La. April 12, 1995).  But the Bigley Objectors present no evidence of such a situation here, and class counsel has submitted unrebutted evidence of the extensive discovery he undertook. [Doc. No. 171].  In fact, class counsel opposed Range's motion seeking to mediate the issues on the basis that he needed more discovery. [Doc. No. 118].  Another case cited by the Bigley Objectors involved a situation where the trial court had failed to consider the negotiations of the class action settlement, because there was evidence that the negotiations were not in the best interest of the class because they were hastily reached and the class was narrowed. *See In Re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1124 (7th Cir. 1977). Again, the Bigley Objectors present no evidence of hastily done negotiations, and the record demonstrates that class counsel resisted efforts to resolve the case until ordered by the Court to entertain Range's request for a mediation.  [Doc. No. 117, 118, 123].  Importantly, only a very small number of class members are objecting to class counsel's representation, which weighs in favor of a finding of fairness.  *See, e.g.*, *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118–19 (3d Cir. 1990); *Ripley v. Sunoco, Inc.*, 287 F.R.D. 300, 305–06 (E.D. Pa. 2012); *Bryan*, 494 F.2d at 803 (3d Cir. 1974).

Shaw Family Partnership, LP.  In other words, the Bigley Objectors are seeking to reject an entire class settlement over what Mr. Rupert believes are limited instances of purported underpayment to one royalty owner, out of thousands of class members.  However, Mr. Rupert's testimony at the hearing on this issue was confused and conflicting, and he could not articulate any kind of actual calculation, because he lacked the information.  **Transcript at 133-34.**  Moreover, he also admitted he raised these issues with class counsel and that class counsel pursued these issues in the Motion to Enforce.  **Transcript 131-132.**  He also did not know if the issues had been corrected.  **Transcript at 99-100.**  In contrast to his testimony at the hearing, Mr. Rupert now purports to have made some new analysis and offered new figures of purported damages, and also has provided post-hearing opinion that the entire class suffered the same damages in the same magnitude of the one royalty owner he purports to have examined.  Mr. Rupert's post-hearing opinions are not evidence and should be stricken, for the reasons set forth in the Range's motion to strike.  [Doc. No. 183-184].  As that motion explains, Mr. Rupert is not only impermissibly testifying far beyond the scope of his limited capacity as a fact witness for a single lessor, his speculation that class damages can be calculated based on the royalty statements of one lessor over a 12 month period is completely unreliable.  *Id.*  No accounting expert would ever be permitted to offer expert opinions on that basis.  Range objected at the hearing to Mr. Rupert giving expert testimony, and as a result, his testimony was explicitly limited to his factual testimony regarding one lessor out of the thousands of class members.  The Bigley Objectors' unsupported assertion that there could be other potential claims for underpayment against Range, and then the speculative conjecture as to what those damages may be, is not sufficient to overcome the presumption of fairness.

**D.** **The Bigley Objectors Incorrectly Assess Fairness By Assuming Guaranteed Success**

  Although couched in a different framework, the Bigley Objectors – much like the Burnett Objectors – challenge the fairness of the settlement agreement with the baseline assumption that the Rule 60(a) Motion would be entirely resolved in the class's favor and the class would be able to immediately recover seven years' worth of retroactive "damages."  As part of this argument, the Bigley Objectors inaccurately characterize Range's sole defense to the Rule 60(a) Motion as sounding in laches.  Range's defenses, to the contrary, start with the language of Rule 60, and beyond the case law governing this Rule, there were other significant barriers to the class's motion, including acquiescence and waiver.  It is an indisputable fact that the class has been on notice of Range's calculations since 2011, and not a single class member filed any objections, including the Bigley Objectors, until the Motion to Enforce was filed.  [Doc. No. 113].  Indeed, the Bigley Objectors' brief notably does not cite a single case supporting their argument that the Rule 60(a) Motion would be automatically decided in their favor, and would result in the instant payment of seven years of past damages.  As stated above, there was significant risk that the result for the class would be far less than a complete victory.  [Doc. No. 113].  It is incorrect to evaluate a settlement or gauge fairness by assuming a complete victory if the litigation had continued.

## **CONCLUSION**

The evidence presented at the fairness hearing does not overcome the presumption of fairness that applies to this class settlement.  The legal arguments raised by the various objectors also have no merit.  The class settlement provides tangible benefits to all class members – both the 99% who did not object and the few that did – and the objectors did not establish any evidence that would support rejecting a deal that was overwhelmingly received by the class with no objection.


REED SMITH LLP

October 4, 2019                                            */s/ Kevin C. Abbott*
                                                           Kevin C. Abbott
                                                           PA ID No. 35734
                                                           Justin H. Werner
                                                           PA ID No. 203111
                                                           225 Fifth Avenue
                                                           Pittsburgh, PA  15222
                                                           (412) 288-3804/3838
                                                           kabbott@reedsmith.com
                                                           jwerner@reedsmith.com

                                                           *Counsel for Defendant*
                                                           *Range Resources-Appalachia, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing has been

served by ECF on all counsel of record and one copy has been served by first-class mail, postage

prepaid on the following:

Edward P. Zdarko
712 Torrey Farm Road
Titusville, PA  16354


Dated:  October 4, 2019                                   */s/ Kevin C. Abbott*