IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONALD C. FREDERICK and, LOUISE M. FREDERICK, h/w, MICHAEL A. MAHLE and PAULA M. MAHLE, h/w, DONALD PORTA, and all other persons similarly situated,<br><br>         **Plaintiffs,**<br><br>vs.<br><br>RANGE RESOURCES – APPALACHIA, LLC,<br><br>         **Defendant.** | CASE NO. 1:08-CV-00288<br><br>JUDGE SUSAN PARADISE BAXTER<br><br>**<u>BIGLEY OBJECTORS' COMBINED RESPONSE TO CLASS COUNSEL AND RANGE RESOURCES-APPALACHIA, LLC'S POST FAIRNESS HEARING BRIEFS</u>** |

As directed by the Court's Order following the Settlement Fairness Hearing, the Bigley Objectors[1] present this response to the Post-Hearing briefs submitted by the parties regarding the objections to the Supplemental Settlement, by and through the undersigned counsel, Timothy B. Pettorini and Christopher C. Tackett of Roetzel & Andress, LPA, and William H. Knestrick of Neighborhood Attorneys, LLC, and further urge that the Court: (a) reject the Supplemental Settlement; (b) remove Class Counsel based on his objective and proven material negligence and false time entries; and (c) grant the Rule 60(A) motion or immediately re-open discovery on the Motion to Enforce to allow for 30(b)(6) deposition of a Range Resources – Appalachia LLC ("Range") representative regarding calculation of Range's underpayments of the Original Settlement.

---

[1] The Bigley Objectors refers to all identified objectors represented by Roetzel & Andress LPA as set forth in their Notice of Class Member Objection to Supplemental Settlement, Objection to Class Counsel's Application for Fees, and Motion to Continue August 14th Hearing on Approval of the Supplemental Settlement (Document 160 filed 08/04/19).

I.      **Introduction**.

Range and Class Counsel's Post-Hearing briefs (Docs. and 177 and 181, respectively) do not and cannot establish that the Supplemental Settlement carries a presumption of fairness.[2] In most respects, Range and Class Counsel provide mere conclusions to suggest that there is presumption of fairness, while ignoring the objective evidence presented at the Hearing demonstrating the Supplemental Settlement fails the applicable 4-factor test to determine whether a class action settlement is entitled to a presumption of fairness.[3] First, there is objective, incontrovertible evidence that the Class did not have adequate and unbiased counsel with respect to the negotiation of the Supplemental Settlement. Second, there is record evidence establishing that discovery on the Motion to Enforce was not sufficient for even a run-of-the-mill issue -- and certainly not sufficient for a Multi-Million-Dollar complex issue. Thus, there is no presumption of fairness regarding the Supplemental Settlement.

As detailed in their Notice of Objection (Doc. 160), the Bigley Objectors have established that the Supplemental Settlement Agreement and the Application for Supplemental Attorney Fees (Doc. 143) (the "**Application**") reflect that Class Counsel's interests have significantly deviated from the interests of the Class. Evidence submitted at the Settlement Fairness Hearing on August 14, 2019 (the "**Hearing**") has only further confirmed this, and cemented that: (a) the Supplemental Settlement is not in the best interest of the Class; (b) Class Counsel has a conflict of interest

---

[2] All capitalized terms are intended have the same meanings as set forth in the prior briefing on objections to the Supplemental Settlement that was at issue in the August 14th Hearing.

[3] *See In re Natl. Football League Players Concussion Injury Litigation*, 821 F.3d 410, 436 (3d Cir.2016), as amended (May 2, 2016).

regarding the content of the Supplemental Settlement, which only corrects his material error; (c) Class Counsel committed fraud upon this Court when submitting his fee request; and (d) Class Counsel did not provide adequate counsel during negotiations of the Supplemental Settlement and his judgment cannot be trusted.

In response to objective evidence that Class Counsel submitted years' worth of false time entries — Class Counsel has made purely conclusory remarks, employed misdirection, and attempted to argue technicalities about the *mens rea* component of fraud. For its part, Range altogether ignores the devastating impact that the false time entries has on Class Counsel's credibility. Similarly, Range entirely side-steps the indisputable evidence that Class Counsel was negligent in representing the Class, costing the Class at minimum $10-14 Million Dollars. In this light, Class Counsel simply cannot be trusted with regard to his discretionary determination to ignore the several other categories of Range underpaying the Class and violating the Original Settlement in agreeing to the Supplemental Settlement. In fact, the Bigley Objectors presented evidence at the Hearing showing that Range's violation of the Original Settlement and underpayment to the Class under the Original Settlement involves several categories of underpayments *in addition* to the MMBTU vs. MCF issue. The Bigley Objectors will need access to discovery from Range to further explore the total amounts of the underpayments; however, the second Affidavit from Accountant Rupert opines based on a limited sample that Range could have underpaid the Original Settlement by as much as $63 Million. Range's Motion to Strike. that will be further briefed in the coming weeks, only further supports that Class Members, including the Bigley Objectors, require immediate access to discovery conducted in this case and the ability to conduct corporate representative depositions regarding the discovery. Again, as pointed out in the Bigley Objectors' post-hearing brief, and not disputed by the other respondents — neither Class

Counsel, the Bigley Objectors, nor the Court knows for certain how much Range underpaid the Class in violation of the Original Settlement. Despite the opportunity at the Fairness Hearing and in the subsequent briefs and filings, neither Class Counsel (whom likely does not know) nor Range (whom undeniably knows or has the data to know) have informed this Court the amount of underpayments for the MCF v. MMBTU issue as well as the failure to apply the cap for a 13 month period and the deductions of costs related to NGLs in clear violation of the parties' agreement. Thus, there is no way to make an informed conclusion that the present Supplemental Settlement is fair, reasonable, and in any way adequate. For each of the reasons above, and in the prior briefing, the Supplemental Settlement should be rejected.

## II.   <u>Legal Standard</u>

If a class action settlement "would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Before giving final approval to a proposed class action settlement, the Court must determine that the settlement is 'fair, adequate, and reasonable.'" *Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581, 588 (3d Cir. 1999). In *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975), the Third Circuit identified nine so-called "Girsh factors," that a district court should consider when making this determination: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. "These factors are a guide and the absence of one or more does

not automatically render the settlement unfair." *In re American Family Enterprises*, 256 B.R. 377, 41 8 (D.N.J. 2000).

When considering whether to approve a class action settlement, regardless of whether objections are present, the court "acts as a fiduciary who must serve as guardian of the rights of absent class members." *Romstadt v. Apple Computer*, 948 F.Supp. 701, 705 (N.D.Ohio 1997) (citations omitted). The burden is on the settling parties to show that the settlement is fair, adequate, and reasonable. *Id.*, citing *In re GM Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3rd Cir., 1995). The burden of proving settlement fairness rests with the moving party. *Id.; Baily v. AK Steel Corp.*, 2008 U.S. Dist. LEXIS 16704, at *3 (S.D.Ohio, Feb. 21, 2008).

As demonstrated in the briefing to date, the movants have not and cannot meet their burden to prove fairness of the Supplemental Settlement under the present circumstances. At best, Range and Class Counsel largely only offer self-serving conclusions that the Class could not do better than the Supplemental Settlement. This simply does not meet the standard to demonstrate the Supplemental Settlement is fair.

## III.   Law and Argument.

### A.   Responses to Class Arguments Against the Bigley Objectors

#### 1.   Class Counsel Incorrectly States All Objectors Challenge Jurisdiction.

Class counsel incorrectly suggests that "all Objectors other than Range... claim that the Court lacks jurisdiction." (Doc. 181, p. 1). This is not accurate. The Bigley Objectors have never suggested that the Court lacks jurisdiction. The Bigley Objectors have taken no position on the jurisdictional issues raised by the Aten, Seddon, Post, and Chow Objectors. Tr., 32:9-21. However, for the sake of their objections to the Supplemental Settlement, the Bigley Objectors have

presumed the Court has jurisdiction to determine whether the Supplemental Settlement is fair to the Class and that all Bigley Objectors are members of the Class.

      2.      **Class Counsel Incorrectly Argues that the Bigley Objectors are Not Members of the Class**.

The table included in the Bigley Objectors' Notice of Objection specifically shows that all of the Bigley Objectors are members of the Class. (Doc. 160, pp. 8-9). Shaw Family Limited Partnership ("**Shaw LP**") obtained its interest in the Class as a transferee of Mildred S. Shaw. Mildred S. Shaw is an original member of the Class. (Exhibit A to Doc. 75, Owner No. 103736). Linda Shaw, on behalf of Shaw LP, testified to this fact at the Hearing. Tr. 64:7-17. Mildred S. Shaw was unquestionably a Class Member and her interest is now owned by Shaw LP.

Class Counsel argues that Shaw LP is not a member of the Class because Shaw LP was not listed on the initial class roster, and that Shaw LP therefore does not have standing to object to the Supplemental Settlement. (Doc. 181, pp. 1-2). On the next page, however, Class Counsel concedes that transferees of class interests "indisputably ha[ve] an equitable right to object" in this case. (Doc. 181, p. 3). If a transferee has a right to object, he or she must be a member of the Class. Therefore, by Class Counsel's own admission, the Bigley Objectors, including Shaw LP, have standing to object in this matter as a Class Member who has succeeded to the interest of its predecessor, Mildred S. Shaw, in the Class.  Once again Class Counsel exhibits a complete lack of comprehension to basic tenants in this matter, further demonstrating the lack of fitness to adequately protect the Class against Range's transgressions.

      3.      **Class Counsel Lacks a Fundamental Understanding of the Underpayments.**

Class Counsel has demonstrated his lack of understanding of the Class's claims in this case, and the importance of those claims, at every stage of the litigation. When Class Counsel first discovered the fact that the Cap on Class Members' royalties were being applied on an MMBTU

6

basis rather than an MCF basis, in July of 2013, Class Counsel was "not inclined" to press the issue with Range. (Doc. 107, p. 9). Class Counsel demonstrated his disinclination to enforce the Class's interests in this matter by failing to move to enforce the Original Settlement until four-and-a-half years later in 2018. Class Counsel clearly did not understand nor care that continued application of the Cap on an MMBTU basis, rather than an MCF basis, would amount to a multi-million-dollar loss to the Class.

Class Counsel also demonstrated his fundamental unfamiliarity with the facts of this case during the Hearing. Class Counsel was apparently unaware that Range reports the prices and volumes of product sold on both an MMBTU and MCF basis on its royalty statements. Tr. at 121:17-25. Class Counsel demonstrated his unfamiliarity with this central fact when he asked Mr. Rupert: "What is this case about, if that's true [that prices and volumes are also reported on an MCF basis]?" *Id*. at 122:4. Mr. Rupert replied: "Well, it's about how the application of the cap is being applied, which is on a BTU basis here." *Id*. at 122:5-6. Class Counsel should certainly have known "what this case is about" since he filed the Motion to Enforce Settlement (Doc. 93) and Rule 60(a) Motion for Correction of Order (Doc. 106) based, in part, on Range's failure to apply the Cap on an MCF basis, as they agreed to do in the Original Settlement. Class Counsel's lack of understanding of Range's royalty statements raises serious doubts regarding whether Class Counsel understood the facts of this case well enough to negotiate a fair settlement of the Class Members' claims against Range. Much like Class Counsel's incredible statement that he was "inclined not to press the issue" on the MCF vs. MMBTU mistake in the Order Amending Leases. (Doc. 107 at p. 9).

As a further example of his failure to grasp the facts of this case, when Class Counsel was attempting to determine Range's underpayment to the Class, Class Counsel initially analyzed the

misapplication of the cap using a Cap of $0.72 only (for dry gas Cap calculations), yet failed to realize the wet gas is subject to a higher $0.80 Cap. (Doc. 181-5). Such a simple mistake to correctly apply the correct Cap in his analysis of Range's underpayments again demonstrates his woeful failure to understand the facts of this matter and competently represent the Class regarding the Supplemental Settlement.

In addition to the above, Class Counsel was informed by Mr. Rupert on August 30, 2017 that Range was not applying the Cap at all. (Doc. 171-6, p. 329). Despite this, it appears Class Counsel neglected to include any inquiry on the non-application of the Cap in his discovery requests to Range. As Class Counsel never pursued this issue, the Supplemental Settlement does not include any payment to the Class for Range's decision to stop applying the Cap for thirteen months. Again, the Supplement Settlement would waive all the Class Members' claims on this issue. The evidence on the record clearly shows that Class Counsel has failed to adequately represent the Class in this matter due to his lack of understanding of the underpayments and the facts of this case. Therefore, the Court must reject the Supplemental Settlement.

4. **Class Counsel's Explanations Regarding his Fraudulent Time Entries Border on Incomprehensible and Fail to Rebut the Credible Testimony of Accountant Rupert from the Hearing**. **This Fraud Alone Requires the Settlement be Rejected.**

In this case, overwhelming evidence proves that Class Counsel misrepresented time entries of Accountant Rupert as being Class Counsel's own time in the "Client Statement" document (Doc. 143-2) filed in support of Class Counsel's fee Application (Doc. 143). In doing so, Class Counsel committed a fraud on this Court, and has lost all credibility as a result. In fact, undisputed testimony at the Hearing establishes that Class Counsel submitted hundreds of hours' worth of fraudulent time entries to this Court representing that he had performed legal work that he had in fact never performed.

8

Class Counsel argues that the "confusion" over his fraudulent billing statements came about due to his mistaken exclusion of the "Attention To" line, which he claims was excluded to merely "to accommodate the portrait width" in printing. (Doc. 181, pp. 8-9). A review of the testimony in this case demonstrates this claim is wholly without merit.

Accountant Rupert's testimony at the Hearing established that he first spoke to Class Counsel in April of 2014, despite Class Counsel submitting countless hours of time beginning in 2012 for consultations with Mr. Rupert that never occurred. Tr., 105:11-13. Mr. Rupert testified that he had no contact with Mr. Altomare in 2012, 2013, or during January through March of 2014. Tr., 105:14-22. Accountant Rupert's testimony is further bolstered by Mr. Rupert's introductory email to Mr. Altomare, dated April 28, 2014, attached as Exhibit 6 to Class Counsel's Response to Objections to Supplemental Attorney Fees. (Doc. 171-6, p. 2).

Next, Mr. Rupert went on to describe even further fraud contained in Class Counsel's time detail submitted to the Court in support of his Application:

> Of the 38, 39 clients that were here, that were referenced by Attorney Altomare in his submission to the Court for fees, how many did you actually consult with him on?
>
> A. Seven.
>
> Q. Okay. And you're familiar, again, with the revised statements that indicated that there was an additional code that was missing the first time that said "consult with". And so if we looked at Jeffrey and Vicky Breese, for example, it says, consult with Ryan Rupert on those -- that particular client. Did that ever occur?
>
> A. No.
>
> Q. And, in fact, that didn't occur on 32 of the 39 clients of yours that were referenced on Attorney Altomare's invoice.
>
> A. Correct.

Tr. 106-107:20-11. During cross-examination in direct dialogue with Mr. Rupert, Class Counsel acknowledged this as true with respect to the example of Dryer Farms: "[Rupert] A. But I never talked to you about Dryer Farms, LP. [Altomare] Q. No, I -- I understand that." Tr. 114, 1-2.

Mr. Rupert testified that Class Counsel asked him to submit to him a time detail for <u>all</u> the work that he had performed for his clients relating to the calculation of the Frederick Cap. (First Rupert Aff., Doc. 160-1, ¶ 11). This time was not limited to work related to this matter, but rather for all work he had ever performed for his clients related to the calculation of the Cap. Tr., 101:8-15. Astonishingly, Class Counsel admits that he used Mr. Rupert's time, that he himself expressly requested, to create his invoice in this matter:

> Upon initially printing a draft of the hourly records stored in his billing system, class counsel realized that **he had not recorded the time during which he was engaged in consultation with Mr. Rupert**. This error arose from the fact that each consultation with Mr. Rupert immediately triggered work devoted to an analysis of the information provided in that consultation. **Counsel simply did not have the presence of mind to separately record the date and time of the consults which triggered that work**. As a result, he found himself confronted with having to estimate the dates and time devoted to those consults. Having no present recollection of every of the many such consultations, he relied on the content of Mr. Rupert's initial invoice.

(Doc. 181, pp. 9-10, Emphasis added). Class Counsel has certified that the above statement is "true and correct." (Doc. 181-7). Therefore, Class Counsel **admits** that he took Mr. Rupert's work and represented it to the Court as his own.

Unrebutted evidence conclusively establishes that Class Counsel submitted time entries for work that he did not perform. Class Counsel's widespread false statements to the Court irredeemably tarnish his credibility and judgment, creating a counter-presumption that the Supplemental Settlement is not reasonable for lack of adequate counsel. There is no excuse for what Class Counsel has done in this matter. Furthermore, as set forth above, Class Counsel's continued failure to correct his misstatements and feeble explanations serve as a continuous

violation of his ethical and professional duties. For this reason alone, the Court must disapprove the Supplemental Settlement and at minimum, greatly reduce or completely eliminate any additional fees being awarded to Class Counsel.

**B.      Responses to Arguments Raised by both Class Counsel and Range Against the Bigley Objectors**

**1.      The Supplemental Settlement Cannot Receive the Presumption of Fairness Treatment Due to The Complete Misfeasance and Malfeasance of Class Counsel.**

As set forth in the Bigley Objector's Brief in Support, a Four-Factor test must be met in order for the parties to a Class Action Settlement to receive the presumption of fairness sought repeatedly by Range and Class Counsel. The parties must engage in arm's length negotiations to meet the first of the four factors. *In re NFL Concussion Litig*., 821 F.3d at 436.  Range entirely fails to grapple with the record evidence that class counsel was actionably negligent in his service to the Class, including evidence that:

a.      Class counsel blatantly ignored the error in the order, which did not accurately reflect the Parties' original settlement;

b.      Class counsel entirely failed to understand the significant impact of this error; for a period of years, class counsel willfully ignored the error and failed to take action, although he had a duty to serve the Class regarding administration of the original settlement. The same omission is reflected in Range's opposition to the Bigley Objectors' motion to remove class counsel, to which Bigley Objectors will file a reply brief following any other opposition filed in accordance with the Court's September 27, 2019 scheduling order, allowing responses to the Motion until October 18, 2019.

Class members may object to a proposed settlement agreement due to inadequate representation of class interests. As recognized under Rule 23, class counsel and the representative parties must "fairly and adequately protect the interests of the class." Fed. R. Civ. Pro. § 23(a)(4). Some courts have mandated a duty on trial courts to "undertake a stringent examination of the adequacy of representation by… counsel at all stages of the litigation." *In Re General Motors*

*Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1124 (7th Cir. 1979) (citing *McDonald v. Chicago Milwaukee Corp.*, 565 F.2d. 416, 419 (7th Cir. 1977). "Because class actions are rife with potential conflicts of interest between class counsel and class members . . . district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlement in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *In re Baby Products Antitrust Litigation*, 708 F.3d 163, 175 (3d Cir.2013), *quoting Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 785 (7th Cir.2004).

Range believes, the fact that Class Counsel ignored Range's failure to live up to it promises in the Settlement Agreement for seven years "is not informative... because these facts cannot be changed."  While the Class cannot change the fact that Class Counsel failed them, the Court can change the consequences of those "facts" by not applying a presumption of fairness, disapproving the settlement based upon these "facts" and removing Class Counsel.

Class Counsel inadequately represented the Class leading up to, and in negotiating, the Supplemental Settlement, which supports the Objecting Class Members' position. Class Counsel inadequately represented the class in the original Settlement Agreement. Specifically, the Motion for Enforcement of Class Settlement Agreement and for Sanctions (Doc. 93) (the "**Motion to Enforce**") was primarily required because of Class Counsel's errors in the Original Settlement— which Class Counsel apparently learned of on **July 8, 2013**, but failed to address for over four-and-a-half years. Yet, Class Counsel again failed to assert the doctrine of mutual mistake regarding the cap on expenses when bringing the Motion to Enforce the Original Settlement Agreement. Further, Class Counsel expressly stated in the Motion to Enforce that the Class Members can demonstrate that Range has not complied with the Settlement resulting in millions in unpaid royalties to the Class. (Doc. 93).

12

Class Counsel made a fundamental error by allowing the Order Amending Leases to cap the Post-Production Costs in MMBTU rather than MCF as agreed to in the original Settlement Agreement. Later, once this issue was brought to Class Counsel's attention by a Class Member on July 8, 2013, **Class Counsel failed to take any action to remedy the issue until four-and-a-half years later**. Neither Range nor Class Counsel even attempt to explain how the same lawyer who knowingly failed to correct, at minimum a $12-14 million error, can be a prudent choice to represent the Class in the negotiations to correct the mistake.  Without the presumption of fairness neither Class Counsel nor Range can carry their burden to convince the Court that the Class must give up significant rights to in order to receive at best 40 cents of the dollar but more likely mere pennies.

2. **Discovery on the Motion to Enforce was not Sufficient and Negates a Presumption of Fairness.**

As set forth in the Bigley Objectors' Notice of Objection (Doc. 160) and in their Post-Hearing Brief (Doc. 180), one of the several reasons that a presumption of fairness does not apply to the Supplemental Settlement is that Class Counsel failed to adequately conduct discovery regarding the total amount of Range's underpayment to the Class in violation of the Original Settlement. In response to this point, Class Counsel and Range both offer mere conclusions to suggest the sufficiency of discovery on the Motion to Enforce.

In an attempt to put forth support for his argument that discovery was sufficient, Class Counsel submitted copies of the discovery requests that he served on Range to pursue the Motion to Enforce, attaching those requests as Exhibit 2 to his Post-Hearing Brief. (Doc. 181-2). Remarkably, however, Exhibit 2 to Class Counsel's Post-Hearing Brief furthers the Bigley Objector's position that discovery conducted on the Motion to Enforce was woefully insufficient. Class Counsel's first set of requests for production of documents only included **one document**

**request**. Exhibit 2 shows at some later but unknown date, Class Counsel issued a second set of requests for production that included three document requests. Finally, Class Counsel issued a third set of requests that included nine requests for production and interrogatories, also on an unknown date. Since Class Counsel's Exhibit 2 failed to include dated certificates of service, no determination can be made with respect to the timeline between the initial woefully inadequate first document request and the few subsequent requests. Incredibly, Class Counsel did not include Range's responses to the discovery requests. Range did not even bother to mention the lack of discovery and at no time in any of its filings - disclose the information it disclosed to the Class and Class Counsel.  The Objectors and more importantly this Court remain in the dark regarding Range's responses to discovery and the total underpayments to the Class.

Class Counsel's comments on the issue of discovery only further support the Bigley Objectors' arguments that the discovery conducted was not sufficient to allow for a complete evaluation of the fairness of the settlement:

> While Range in each case objected to every request, it nevertheless produced subject to those objections, on a rolling basis, but in drips and drabs, portions of the data requested. But because, even taken together, those drips and drabs were still short of providing class counsel with a data set from which he could confidently compute damages, he continued to press Range for all the data he required.

(Doc. 181, p. 5). Despite admitting the ongoing struggles that Class Counsel faced in attempting to obtain discovery from Range, Class Counsel did not conduct a single deposition regarding the content of the discovery that was produced.

Further, once Class Counsel realized his own analysis of Range's data was apparently "flawed," he made no attempt to obtain an expert to review the data or to obtain an audit of Range's data. He decided instead to rely on Range's analyses of its own underpayment to the Class. The Bigley Objectors struggle to think of a single example in a case where a party would rely on an

opposing party's analysis of a central issue to the case, without obtaining their own expert. This admission further demonstrates that Class Counsel did not negotiate "at arms' length" with Range, but rather, hand in hand with Range, without regard for the interest of the Class.

C.    **Responses to Range Resource's Arguments against the Bigley Objectors**

**Range Falsely Suggests that the Bigley Objectors Offer "No Solution"—Yet, All the Objectors have Clearly Argued that Granting the 60(A) Motion is the Practical and Correct Solution.**

The Bigley Objectors, when pressed by the Court for a practical solution to solve the problem of Range's failure to adhere to the Original Settlement Agreement, outlined that the Class can resubmit its Rule 60(A) Motion, correct the scrivener's error and order Range to pay what it promised to pay in the Settlement Agreement. Tr. 30, 2-4; 21-25. Then the Class can move forward with the other aspects of Range's failure to adhere to both the Settlement Agreement and the Order Amending Leases, involving Range's unilateral decision to stop applying the cap (Tr. 82, 1-4) and its treatment of post-production costs on NGLs, specifically deducting transportation cost in a clear breach of the Order Amending Leases and the Settlement Agreement.  Tr. Pg. 98-99, 23-15.  This solution, with unbiased and competent counsel replacing current Class Counsel represents the only solution to Range's violations of the Settlement Agreement that adequately addresses the Court's fiduciary duty to Class Members that have been robbed of their rightful royalties and left completely unprotected by its pitiful representation.

IV.    **Conclusion**.

For the reasons set forth above, and in the prior briefing, the Bigley Objectors request that the Court reject the Supplement Settlement and the Application for Supplemental Attorney Fees. Additionally, based on the above, the Bigley Objectors: (a) move for an Order requiring Range and Class Counsel to provide the Bigley Objectors immediate access to all discovery produced

regarding the Motion to Enforce; and (b) move for an Order removing and disqualifying Class Counsel from further participation in this matter.

Respectfully submitted,

/s/ Timothy B. Pettorini

Timothy B. Pettorini (PA ID #308615)
ROETZEL & ANDRESS, LPA
222 South Main Street
Akron, OH 44308
Telephone:  330.376.2700
tpettorini@ralaw.com

Christopher W. Tackett
ROETZEL & ANDRESS, LPA
(pro hac vice anticipated) (Ohio Bar. No. 0087776)
41 South High Street
Huntington Center, 21st Floor
Columbus, Ohio 43215
Telephone:  614.463.9770
ctackett@ralaw.com

William Knestrick (PA ID #203806)
NEIGHBORHOOD ATTORNEYS, LLC
8 East Pine Avenue
Washington, PA 15301
Telephone: 724.705.7082
William@NeighborhoodAttys.com

Attorneys for Objecting Class Members

14281637 _1  141454.0001

## CERTIFICATE OF SERVICE

The undersigned hereby certifies on behalf of the Objecting Class Members that a true and accurate copy of the foregoing has been served upon the following parties via the Court's electronic filing system today, October 4, 2019:

Joseph E. Altomare
The Law Office of Joseph Altomare
228 East Central Avenue, PO Box 373
Titusville, PA 16354
*Class Counsel*

Robert J. Burnett
Brendan A. O'Donnell,
Erik M. Bergenthal
Houston Harbaugh, PC
Three Gateway Center
401 Liberty Avenue, 22nd Floor
Pittsburg, PA 15222
*Counsel for Objecting Class Members George M. Aten, Raymond W. Seddon, Jr., Leon C. Chow, and James H. Post*

Kevin C. Abbott
Justin H. Werner
Reed Smith LLP
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222

Anne E. Ralph
David W. Hardymon
Vorys, Sater, Seymour & Pease LLP
52 East Gay Street
Columbus, OH 43216

Daniel J. Sponseller
Law Office of Daniel J. Sponseller
409 Broad Street, Suite 200
Sewickley, PA 15143

*Counsel for Defendant*
*Range Resources – Appalachia, LLC*

*/s/ Timothy B. Pettorini*
Timothy B. Pettorini (PA ID #308615)

14281637 _1 141454.0001