IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD C. FREDERICK and | : | Docket No. 1:08-cv-00288-SJM |
| LOUISE M. FREDERICK, h/w, | : | |
| MICHAEL A. MAHLE and | : | |
| PAULA M. MAHLE, h/w, DONALD | : | Electronically Filed Document |
| PORTA, and all other persons | : | |
| similarly situated, | : | |
| | : | CLASS ACTION |
| Plaintiffs, | : | |
| | : | |
| vs. | : | |
| | : | |
| RANGE RESOURCES – | : | |
| APPALACHIA, LLC | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT RANGE RESOURCES-APPALACHIA, LLC'S BRIEF ADDRESSING
FOUR QUESTIONS RAISED IN THE COURT'S MAY 31, 2020 ORDER [DOC. 197]**

**INTRODUCTION**

The Court's May 31, 2020 Order directs Range to address four questions posed by the

Court relating to the Supplemental Settlement [Doc. 135], which, as Range has put forth, fully and

fairly resolved disputed issues raised in a motion to enforce the original class settlement.  [Doc.

93-94].  Ultimately, the only issue that remains before the Court is the fairness of the Supplemental

Settlement, which has now been fully addressed through briefing, a hearing, and post-hearing

briefing.  To the extent that the questions raised by the Court and Range's response bear on that

issue, they only serve to support the fairness of the Supplemental Settlement.

As described in more detail below, Range responds that:

1.     The opt-out procedure of Fed. R. Civ. P 23(e)(4) does not apply to a motion to
       enforce the terms of a settlement whose terms were known to class members at
       the time an opt out right was previously provided.

2.     Class members who receive royalties from conventional oil and gas
       development are bound by and benefit from the Supplemental Settlement.

3.     Class members who receive royalties from conventional oil and gas development should not be placed in a subclass and excluded.

4.     While Range disputes that future "correction" of the issues set forth in Doc. 181, p. 6 is required, Range prospectively agreed to calculate post-production caps on an MCF basis and covenanted to continue to deduct only actual, incurred costs, which addressed the other issues identified by class counsel.

The Supplemental Settlement was a fair, arms-length settlement that resolved highly-disputed allegations of uncertain merit and provided substantial retroactive and prospective relief to the class.  Range incorporates its prior briefing, its argument and presentation at the fairness hearing, and urges the Court to approve the terms of the Supplemental Settlement.

## BACKGROUND

In order to fully address portions of the Court's issues raised in the May 31, 2020 Order, the background and framework of the original class settlement warrants discussion.

In 2011, Range agreed to settle class action claims by amending thousands of oil and gas leases in Pennsylvania to include caps on deductions of certain post-production costs.  [Doc. 73-1].  The original class settlement provided for two different limitations on post-production costs that depended on the type of production that would occur on a class member's lease.  *Id.*  As to shale gas, Range agreed to maximum caps on the amount of certain "Post-Production Costs" as defined by the original class settlement, the amount of which depended on whether the production was classified "Dry Shale Gas" or "Wet Shale Gas" as those terms were defined in the original class settlement.  *Id.*  As to all other types of production (which would encompass conventional oil and gas production), Range agreed to reduce the amount of post-production costs deducted from royalty owners by $0.03 per MCF.  *Id.*  The terms of that settlement were provided to all class members in the class notice.  [Doc. 51].  By December 10, 2010, this Court found that notice had been mailed to over 25,000 known class members.  [Doc. 83].  The class was then certified, the original class settlement was approved, and the matter was dismissed on March 17, 2011.  *Id.*

In order to effectuate the settlement, this Court entered an Order Amending Leases, which applied the limitations on post-production costs to each class member's lease.  [Doc. 84].  The Order Amending Leases was recorded in every county where a class member's lease was located, and was indexed against each class member's lease, to make the terms publicly known to any successor or assign of any class member's interest in a class lease.  *Id.*

Each class member's lease, regardless of the type of development on the lease at the time the original class settlement was entered, was subject to the entirety of the Order Amending Leases. [Doc. 84].  This is because oil and gas development is not static.  Over the course of the term of class members' leases, there may be different types of development on the class leases, including shale gas development on class leases that currently only have production from conventional oil and gas development.  Accordingly, every class lease in 2011 was amended to include all of the terms set forth in the Order Amending Leases, and every class lease remains subject to the terms of the Order Amending Leases as that order is currently written and publicly recorded.  [Doc. 84].

After almost seven years of the parties operating under the terms of the Order Amending Leases, class counsel filed a motion to enforce the original class settlement.  [Doc. 93-94].  The motion to enforce raised several issues associated with the terms of the original settlement agreement and the Order Amending Leases, primarily as it related to shale gas production.  *Id.* Range moved to dismiss portions of the motion to enforce as beyond the Court's limited ancillary jurisdiction to enforce settlements.  [Doc. No. 100-101].  This Court granted the motion to dismiss in part, finding that some of the issues raised were beyond the Court's ancillary jurisdiction.  [Doc. 105].  With respect to the claim that Range had excluded certain transportation costs from the post-production cost caps, Range resolved this issue by amending its practice.  As to the remaining claims, the Court directed the parties to engage in fact discovery.  [Doc. 105].

After a lengthy period of extensive fact discovery, class counsel concluded that the only remaining viable claim was whether the caps on certain post-production costs associated with shale gas development should be measured in MCF as provided in the original class settlement or MMBTU as provided in the Order Amending Leases.  The parties proceeded to attend a court-ordered mediation with the Honorable Thomas Frampton, which resolved all disputed issues raised in the motion to enforce and resulted in an agreement to the terms set forth in the Supplemental Settlement.  [Doc. 135].  The Supplemental Settlement provides for a cash payment to class members who previously received royalties associated with shale gas production; revision of the Order Amending Leases relating to shale gas post-production cost caps that will be applicable to all class members on prospective basis; and an express covenant by Range that it will continue to only deduct costs that are actually incurred by Range.  [Doc. 135].

After notice of the Supplemental Settlement was provided to the class, [Doc. 141; Doc. 167 at Ex. A], less than 1% of the class objected.  The Supplemental Settlement was the subject of a fairness hearing held before the Court on August 14, 2019, to address the objections and class counsel's disputed request for certain fees.  This response is submitted in accordance with this Court's Order of May 31, 2020, requesting supplemental post-hearing briefing.  [Doc. No. 197].

### RANGE'S RESPONSE TO THE COURT'S SUPPLEMENTAL QUESTIONS

1.   **What is the extent of the Court's authority under Federal Rule of Civil Procedure 23(e)(4) as it relates to opt-out procedures in this case?**

Fed. R. Civ. P. 23(e)(4) does not apply.[1]  The motion for approval of the Supplemental Settlement arises out of a motion to enforce the terms of the original class settlement that was

---

[1]   Rule 23(e)(4) states as follows:

   (4) *New Opportunity to Be Excluded*.  If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

entered into in 2010.  [Doc. 73-1].  The terms of that settlement were provided to all class members in the class notice.  [Doc. 51].  The class was certified, the original class settlement was approved, and the matter was dismissed.  [Doc. 83].  Because the terms of the original class settlement were known to the class at the time an opt-out right was provided, and the Supplemental Settlement only relates to enforcement of the terms of the original class settlement, Fed. R. Civ. P. 23(e)(4) is inapplicable.  Rule 23(e)(4) applies only where a class was certified during the litigation, prior to a settlement, and the opt-out opportunity associated with that certification expired before members received notice of the terms of the proposed settlement.  *See, e.g., In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1062 (S.D. Tex. 2012).

As explained in the *Newberg* treatise, the legislative history of Rule 23 informs the limited purpose of Rule 23(e)(4), which was added as part of the 2003 amendments.  "Rule 23's history and structure imagined [the class certification] process unfolding prior to the adjudication of the class members' rights. The 1966 version of Rule 23 directed courts to certify a class 'as soon as practicable' after its filing.  This direction envisioned that the nature of the lawsuit—whether it would be a class action or not—would be determined quickly."  *See* 3 Newberg on Class Actions § 9:43 (5th ed.).  Under the procedure originally envisioned by the drafters of Rule 23, class members would receive notice prior to the adjudication of the case and would have to exercise their opt-out rights without knowing whether the class action would succeed.   "This process seemed fair because it avoided the problem of 'one-way intervention'—that is, the problem posed by enabling class members to stay in if the case proceeded well but opt out if the case proceeded poorly while requiring the defendant to be bound in either circumstance."  *See id.*

However, as the treatise notes, "it is a rare class action that actually unfolds this way." *Id.* Courts today commonly delay class certification for case management reasons and "the so-called 'settlement class action' became common … a mechanism by which the parties litigate and settle

- 5 -

the case assuming it is a class action but do not actually have the class certification motion decided until they present the settlement to the court." *Id.*  In a settlement class action, the opt-out process coincides with the settlement approval process, and class members can exercise their opt-out rights with full knowledge of the case's proposed outcome." *Id.*  Rule 23(e)(4) was part of the amendments "to reflect the realities of today's class action practices.  A court is no longer directed to consider certification 'as soon as practicable' but rather 'at an early practicable time' and Rule 23[(e)(4)] enables courts to give absent class members a second opportunity to opt out at settlement." *Id.*

With this background in mind, Rule 23(e)(4) "would apply conceptually only in class actions that are not settlement class actions but rather actions that had been certified for trial, had sent notice to the class, and had set an earlier exclusion opportunity whose deadline has passed." 3 Newberg on Class Actions § 9:52 (5th ed).  "Such class suits are rare in today's practice, so the Rule will rarely come into play. … Enabling this second opportunity in a previously certified case therefore is less the exception it once might have been, and instead, the Rule brings previously certified cases more in line with the common settlement class actions that typify today's landscape." *Id.*  The treatise's analysis of the limited application of Rule 23(e)(4) is supported by the Committee Notes explaining this change to Rule 23:

> Rule 23(e) (3) [now (e)(4)] authorizes the court to refuse to approve a settlement unless the settlement affords a new opportunity to elect exclusion in a case that settles after a certification decision if the earlier opportunity to elect exclusion provided with the certification notice has expired by the time of the settlement notice. A decision to remain in the class is likely to be more carefully considered and is better informed when settlement terms are known.

Fed. R. Civ. P. 23(e)(4) Committee Notes (2003); *see also Slipchenko v. Burnel Energy, Inc.*, No.H-11-1465, 2015 WL 338358 (S.D. Tex. 2015) (quoting Committee Notes).  Consistent with this legislative history, appellate courts have upheld district courts decisions that do not apply Rule 23(e)(4) in situations that do not fall within this narrow circumstance.  *See, e.g.*, *In re HealthSouth*

*Corp. Securities Litig.*, 334 Fed. Appx. 248, 255 (11th Cir. 2009); *Low v. Trump Univ., LLC*, 881 F.3d 1111 (9th Cir. 2018).

For these reasons, Rule 23(e)(4) does not apply here.  This was a settlement class action. [Doc. 58].  The original class settlement occurred in 2010, and the class members were provided with notice of the terms of the settlement prior to its approval, and the opportunity to opt out with full information and knowledge of the terms of the original class settlement.  [Doc. 51].  The class was certified, the settlement was approved, and the action was dismissed in 2011.  [Doc. 83].  The Supplemental Settlement only resolves a motion to enforce the terms of *the original class action settlement*, which was known to the class members at the time they made the decision to not opt out over a decade ago.  Accordingly, Rule 23(e)(4) does not provide authority to the Court to grant another opt-out to the class in the context of a motion to enforce the terms of a settlement known to the class when the first opt-out right was provided.[2]

**2.     To what extent are class members who hold only royalty interests in leases with conventional oil and gas wells benefitted, bound or otherwise affected by the Supplemental Settlement?**

Class members who currently only receive royalties for production from conventional oil and gas wells are bound by and prospectively benefit from the Supplemental Settlement because the revisions to the shale gas post-production caps in the Order Amending Leases apply to all class leases, and will benefit these class members in the event of future shale gas development.[3]

---

[2]     Granting an opt-out right at this stage of the proceeding would conflict with a material term of the Supplemental Settlement, which expressly specified no opt-out rights.  [Doc. 135].  The Court's authority is limited to either approving or disapproving the terms of the Supplemental Settlement.  *See Evans v. Jeff D.*, 475 U.S. 717, 726 (1986); *see also Ehrheart v. Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010).  Further, and consistent with the terms of the Supplemental Settlement, the class notice as previously approved by the Court and distributed by Range to the almost 12,000 class members did not provide opt-out rights.  [Doc. 141]; [Doc. 167 at Ex. A].

[3]     Given this prospective effect, class members who only received oil and gas royalties from conventional development were provided notice of the Supplemental Settlement.  [Doc. 167 at Ex. A].

The original class settlement and Order Amending Leases applied to all class members regardless of the current type of development on a class member's lease.   [Doc. 73-1; Doc. 84]. This was because a class lease that only had conventional oil and gas development at the time of the original class settlement could have future shale gas development.  The original settlement contemplated that if any class lease would be subject to future shale gas development, it would benefit from the caps on certain post-production costs set forth in the original class settlement. The Supplemental Settlement follows this same framework.  [Doc. 135].  Part of the consideration in the Supplemental Settlement involves amending the Order Amending Leases so that the caps on certain post-production costs as defined by the Order Amending Leases are measured on an MCF basis instead of an MMBTU basis.  *Id.*   That amendment benefits all class members regardless of the state or type of current development under any specific class lease, because of the possibility of future shale development on any class lease.   Applying the amended Order Amending Leases to all class member leases keeps the interests of all members aligned: class members with shale gas development now or in the future would be subject to the same caps on certain post-production costs as set forth in the proposed amended Order Amending Leases.[4]

Accordingly, class members who only currently receive royalties associated with conventional oil and gas production are bound and affected by the Supplemental Settlement.  The proposed amended Order Amending Leases applies to all class member leases without regard to the type of current production on the class leases.  [Doc. 135].  These class members are benefited by the Supplemental Settlement in the event of future shale gas development.  This is consistent with the framework of the original settlement.  [Doc. 73-1].

---

[4] The remaining issues raised in the motion to enforce and all allegations and claims seeking monetary relief related solely to class members receiving royalties associated with shale gas development.  For that reason, the distribution of the cash payment is limited to class members who have received royalties associated with shale gas development.  [Doc. 135].

3.      **In light of Question No. 2, is it appropriate or necessary to certify a settlement sub-class that would exclude class members under leases associated with conventional oil and gas wells?**

It is not appropriate or necessary to certify a subclass of class members who currently receive royalties associated with conventional oil and gas wells for the purposes of excluding such class members.  As stated above, like the original class action settlement, the Supplemental Settlement is binding on all class members regardless of the status of current production.  [Doc. 135].  The amendments to the Order Amending Leases apply to all class members.  *Id.*  Under the terms of the amended Order Amending Leases, royalty owners with conventional oil and gas development will continue to receive the benefit set forth in the original class settlement: the reduction of post-production costs by $0.03 per MCF.  [Doc. 73-1]; [Doc. 135].  In addition, these class members will receive the prospective benefit of the changes in the amended Order Amending Leases in the event of future shale gas development on these leases.  [Doc. 135].

Excluding any class member is not appropriate because it would deprive this group of class members the prospective benefit of the amended Order Amending Leases with respect to any future shale gas production.  This procedure is also not appropriate because it would misalign the class.  Members of the class with current shale gas production would be governed by the terms of the amended Order Amending Leases while members of the class with prospective shale gas development would be subject to the prior Order Amending Leases, which contains a different calculation of the caps on certain post-production costs associated with shale gas development.  Given the structure of the original class settlement and the fact that class members receiving oil and gas royalties from conventional development are part of the original class, creating a subclass now that would exclude some class members from the settlement of the motion to enforce would exceed the court's limited ancillary jurisdiction of enforcing the terms of the original class settlement.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994).

It is not necessary to exclude class members who only receive royalties from conventional oil and gas development, because their interests are aligned with the class members receiving shale gas royalties for the purposes of the motion to enforce.  These class members will continue receiving their bargained-for benefit in the original class action under the amended Order Amending Leases, but will potentially benefit from the amended Order Amending Leases if there is future shale gas development.  Further, under the Supplemental Settlement, these class members do not bear any portion of class counsel's fee for this prospective benefit.[5]

**4.** **Does Range concur with Class Counsels' assertions that Range covenants in the proposed Supplemental Settlement Agreement subsume a promise to correct, in the future, the issues identified in Class Counsel's Post Hearing Fairness Brief, ECF No. 181, p. 6?**

Range has reached a complete settlement of highly disputed issues, which includes prospective changes to how Range will calculate the post-production caps.  As part of the settlement, Range also covenanted to continue to deduct only costs it actually incurred.  That covenant reaffirmed that Range will not engage in the conduct underlying the disputed issues raised in the motion to enforce and addressed in class counsel's brief at Doc. 181, p. 6, and explained in more detail in other briefs filed by class counsel.  [Doc. 171]; [Doc. 190].

To put class counsel's comments in the proper context, Range notes that class counsel's representations were made in response to an objection that the proposed settlement should be rejected because it only addressed the discrepancy between the caps being measured on an MCF or MMBTU basis, but provided a full release of all claims.  Class counsel's brief at Doc. 181, p. 6 asserted two responses to that argument.

First, that the premise of the argument was wrong because the payment of $12 million was not designated for any single issue but rather was the negotiated lump sum to resolve all issues

---

[5]     The Supplemental Settlement provides that class counsel's fee derives from the payment Range will make to class members who have already received shale gas royalties.  [Doc. 135].

that were or could have been asserted.  [Doc. 181].  Range is in complete agreement with this assertion by class counsel.

Second, class counsel argued that the settlement resolved into the future all of the issues that were "arguably viable."  *Id.*   Although Range does not agree that it had any obligation to "correct" any of the disputed issues raised in the motion to enforce, Range agrees with class counsel that the settlement resolves all of the issues raised in the motion to enforce.[6]  As to the MCF v. MMBTU issue, all class leases will be amended to change the calculation of the caps from the way specified in the Order Amending Leases to the way specified in the original settlement. [Doc. 135].[7]  As to the remaining issues, as explained below, they were either resolved before the settlement or found not to be viable by class counsel after discovery.  As additional assurance, Range also covenanted and reaffirmed to continue its past and current practice of only deducting actual costs that it actually incurred.  [Doc. 135].

As class counsel argued, Range's reaffirmation was in response to the allegations asserted in the motion to enforce that Range was improperly deducting certain costs twice or otherwise deducting costs that was not actually incurring for the gas produced under the class member leases. Range disputed those allegations, and following fact discovery, class counsel conceded that some of the allegations were mistaken, refuted by documentary evidence provided by Range, or already

---

[6]      The only issue that was the subject of class counsel's motion to correct was the MCF/MMBTU issue and the uncertainty as to the outcome of that motion, especially as to any grant of retroactive relief in the face of Range's undisputed compliance with this Court's Order Amending Leases as to how the caps should be calculated and the class's acquiescence for seven years, was a major factor in class counsel's agreement to a settlement that provided substantial retroactive and prospective relief.  There has never been any judgment that Range had to "correct" any of its practices and the settlement expressly disclaims any admission of liability.

[7]      As to successors and assigns of class members, these class members have an even less viable claim for a prospective change, as they took their interest with either actual or constructive knowledge of the MMBTU cap as expressed in the Order Amending leases that was indexed against all class member leases in 2011.  [Doc. 84].

had been resolved by Range.  [Doc. 171]; [Doc. 190].  More specifically, each of the issues identified in Doc. 181, p. 6 were addressed by the parties as follows:

**(1) Improper deduction of transportation costs ("TAI -Transport") from NGLs (Natural Gas Liquids).**  As class counsel acknowledged in other post-hearing briefing, these allegations were disproven by the information provided by Range as part of the fact-discovery process on the motion to enforce.  [Doc. 171 at p. 8].  Range had previously moved to dismiss these allegations as mistaken.  [Doc. 101].

**(2) Charging "double" for Purchased Fuel.**  As class counsel acknowledged in other post-hearing briefing, Range had already identified and corrected this one-time error, and fully refunded all class members for any overages.  [Doc. 171 at p. 8].  This error was acknowledged and had already been corrected at the time the motion to enforce was filed.  [Doc. 101 at p. 14-15]; [Doc. 190 at p. 12-13].

**(3) Double-charging processing fees ("PHI-Proc Fee") associated with natural gas liquids (NGLs).**  As class counsel acknowledged in other post-hearing briefing, Range disputed that it was double-charging processing fees, and class counsel concurred in Range's position after reviewing documents produced as part of the fact discovery process on the motion to enforce. [Doc. 171 at p. 8]; [Doc. 190 at p. 12] *see also* [Doc. 101 at p. 13-14].

**(4) Failing to apply the "cap" in calculating royalty due to certain Class members.**  As class counsel acknowledged in other post-hearing briefing, class counsel determined that this claim, which was unique to certain class members, could not be pursued on a class-wide basis and therefore was improvidently asserted.  [Doc. 171 at p. 8].  Range had moved to dismiss this claim. [Doc. 101 at 11-12].

**(5) Failure to include the "FCI-Firm Capacity" as a pro-rated cost subject to the cap.**
As class counsel observed, Range had already ceased the challenged conduct after the filing of the motion to enforce.  [Doc. 171 at p. 8]; [Doc 190 at p. 13-14].

The underlying premise of the allegations at Doc. 181, p. 6, was that Range was either not properly applying the caps set forth in the original class settlement, or was making improper deductions of costs it was not actually incurring (or improperly double-deducting costs).  Range disputed these allegations as to some of the costs, and class counsel agreed with Range's position after further discovery.  [Doc. 171]; [Doc. 190].  As to other costs, Range had either already resolved the issue identified by class counsel, or ceased the conduct challenged by class counsel in the motion to enforce.  [Doc. 171]; [Doc. 190].  Accordingly, as of the time of the Supplemental Settlement, there was no further conduct for Range to "correct" with respect to the items identified in Doc. 181, p. 6.  Nevertheless, as part of overall consideration provided by Range in the Supplemental Settlement and in exchange for the release provided, Range agreed to expressly reaffirm that it would only deduct and subject to the applicable caps the costs that it actually incurred.  [Doc. 135].

Accordingly, Range agrees with class counsel's representation that the Supplemental Settlement subsumed a future promise to not engage in the conduct challenged by class counsel, but disputes that that any "correction" by Range was required.  Class counsel either had agreed his allegations were not borne out by fact discovery, or had acknowledged that Range had already addressed the issues identified by class counsel in Doc. 181, p. 6.  [Doc. 171]; [Doc. 190].

## **CONCLUSION**

The Supplemental Settlement provides substantial retroactive and prospective benefits to the class in a good-faith compromise of difficult issues with uncertain outcomes. The objectors, representing less than 1% of the class, would deprive the class of these benefits but do not propose any solution other than replacing class counsel and litigating on for years. The 99% of the class that had no objection should not be deprived of the settlement's benefits on the hope that new counsel will do better after the issues are fully litigated.  The settlement should be approved.


REED SMITH LLP

June 22, 2020                               /s/ Justin H. Werner
                                           Justin H. Werner
                                           PA ID No. 203111
                                           225 Fifth Avenue
                                           Pittsburgh, PA  15222
                                           (412) 288-3838
                                           jwerner@reedsmith.com

                                           Kevin C. Abbott
                                           812 Crossbow Court
                                           McMurray, PA 15317
                                           (724) 941-2160
                                           kevin@kabbottlaw.com

                                           *Counsel for Defendant*
                                           *Range Resources-Appalachia, LLC*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing has been served by ECF on all counsel of record.


Dated:  June 22, 2020                                                    _/s/_ Justin H. Werner____