IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONALD C. FREDERICK and LOUISE M. FREDERICK, h/w, MICHAEL A. MAHLE and PAULA M. MAHLE, h/w, DONALD PORTA, and all other persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>RANGE RESOURCES – APPALACHIA, LLC,<br><br>Defendant. | CASE NO: 1:08-cv-00288E |

**SUPPLEMENTAL BRIEFING PURSUANT TO MAY 31, 2020 ORDER**

George M. Aten, Raymond W. Seddon, James H. Post[1] and Leon Chow, by and through counsel, Houston Harbaugh, P.C., Robert J. Burnett, Esquire, Brendan A. O'Donnell, Esquire and Erik M. Bergenthal, Esquire, hereby file the within Supplemental Briefing pursuant to this Honorable Court's May 31, 2020 Order requesting the same.

1. **What is the extent of the Court's authority under Federal Rule of Civil Procedure 23(e)(4) as it relates to opt-out procedures in the context of this case.**

The within Objectors do not believe that the proposed Supplemental Settlement can – or should - be forcibly imposed upon the "Class". While a potential for an opt-out under Rule 23(e)(4) may appear promising to simultaneously allow the proposed Supplemental Settlement to proceed while allowing members of the Class the ability to exclude themselves, the instant Objectors have been unable to locate authority where Rule 23(e)(4) has been used to avoid

---

[1] James H. Post, individually and as Trustee for the Seirsdale Family Trust.

addressing substantive and jurisdictional defects, after an exhaustive search for such guidance. A Rule 23(e)(4) opt-out does not seem appropriate here because of the posture of this case. Retroactive amendment of the Order Amending Leases to the date of original settlement would give effect to the parties' bargain and avoid the issues presented through this settlement.

Rule 23(e)(4) is used in situations where a settlement occurs after a class has already been certified for purposes of litigating the case. For example, in In re Processed Egg Prod. Antitrust Litig., the United States District Court for the Eastern District of Pennsylvania initially certified a class as part of an active litigation that included fact discovery of over one million documents. In re Processed Egg Prod. Antitrust Litig., No. 08-MD-2002, 2017 WL 5585717, at *1 (E.D. Pa. Nov. 20, 2017). The court then relied on Rule 23(e)(4) to allow a separate opt-out period after a settlement was negotiated. Id. at *3. This comports with the general purpose of Rule 23 notice, which is to ensure fairness by informing the members of the class of the terms and options open to them under the proposed settlement. *See*, Miller v. Republic Nat'l Life Ins. Co., 559 F.2d 426, 429 (5th Cir. 1977); *see also*, Act Heating & Plumbing Co. v. Crane Co., 453 F.2d 30 (3d Cir. 1971).

Here, by contrast, we have a case that was certified for settlement nearly a decade ago based on a "cap" of post-production costs using MCF as the unit of measure. [ECF Docs. 51-2; 59; 51-2; 62, 63; 73-1; 83]. *That* was the settlement that members of the Class had the opportunity to opt-out from. [ECF Docs. 51, 58, 62]. While the proposed Supplemental Settlement attractively presents itself to correct the errant inclusion of the MMBTU post-production "cap" in the Order Amending Leases, it fails to address the intervening changes in this case that create the substantive and jurisdictional issues here that a Rule 23(e)(4) opt-out cannot and does not resolve.

The first reason that Rule 23(e)(4) appears inapplicable is the statutory text which contemplates a potential opt-out for class members "who had an earlier opportunity to request exclusion but did not do so":

> **New Opportunity to be Excluded.** If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

Fed.R.Civ.P. 23(e)(4). From the plain language of the statute, for a Rule 23(e)(4) opt-out situation to be implicated, the class members must have had an earlier opportunity to request exclusion, but did not do so. Id. So, for Rule 23(e)(4) to operate here, the members of the Class must have had an opportunity to request exclusion before and chosen not to exercise that right. There is no showing that this prerequisite to the application of the Rule is present.

It has been suggested elsewhere that individuals and entities who acquire interests in leases modified by the "Order Amending Leases" are now part of the "Class" and succeed to their predecessors' rights, privileges or obligations as part of this litigation. [ECF Doc. 198 at Fn.7 "As to successors and assigns of class members, these class members have an even less viable claim . . ."]. Under this theory, the opt-out decision by an original Class member binds all those who succeed to the interest under the lease that the original Class member had. Putting aside the fact that the Class was presented the opportunity to opt-out from post-production costs "capped" in MCF – versus post-production costs being "capped" in MMBTU which was what ultimately occurred – these Objectors respectfully submit that this successorship theory is misplaced.

The Order Amending Leases defines "Class Membership" as:

> a) Class Membership. The membership of the Class shall consist of Persons who held a Royalty Interest in any Pennsylvania

> and/or Ohio oil and/or gas estate at any time after September 15, 2004 that was, is or became Owned by Range, its predecessors or affiliates at any time prior to October 13, 2010.

[ECF Doc. 84]. There is no reference in this "Class Membership" to heirs, successors or assigns. Instead, the focal point of "Class Membership" that Judge McLaughlin approved is the word "Persons" which is a capitalized term. [ECF Doc. 84]. On its second page, at subsection (c) the Order Amending Leases states:

> c) Defined terms: "Owned by Range" means oil and gas interests owned, leased or operated by Range, excluding those wells of which Range is a non-operator and/or is not vested with the right or obligation to calculate and pay the royalty. All other undefined capitalized terms used in the foregoing shall have the special meaning ascribed to them in the Agreement and Stipulation of Settlement.

[ECF Doc. 84 at p. 2]. The Order Amending Leases goes on to identify the pertinent settlement as being the document at ECF Doc. 73-1. [ECF Doc. 84 at p. 2]. This settlement agreement states that the term "Person" "shall mean and include any natural person, firm, partnership, corporation, association or other entity." [ECF Doc. 73-1 at § 1-20]. This definition does not contain the words or concepts related to successors or assigns. It therefore denotes the "Person" who held the royalty interest *at the time* of the settlement.

It is important to contrast the "Class Membership" definition in the Order Amending Lease with the original settlement agreement. In the original settlement agreement, the term "Class Member" was defined to ". . . mean a member of the Class, and such members successors and assigns." [ECF Doc. 73-1 at § 1-6]. The idea of succession was eliminated in the actual class certification. There is no reference to "successors and assigns" in the definition of "Class Membership" that this Honorable Court placed in the Order Amending Leases. The Order clearly defines "Class Membership" and it does not include the "successors and assigns" concept. This

unmistakably proves that membership in this "Class" is *personal* to those who satisfied the definition of "Class Membership" at the time the settlement was approved.

But, here, Mr. Altomare and Range appear to treat the Class as all those who hold a royalty interest in a lease amended by the Order Amending Leases, regardless of when the interest was acquired. Neither Range nor Mr. Altomare have represented that the "Class" that would be subject to the proposed Supplemental Settlement (and, a hypothetical opt-out) is comprised of the exact same individuals and entities that were the "Persons" that made up the Class when it was certified. Range's supplemental briefing implicitly concedes that the make-up of the Class is different now than it was at the time of certification. [ECF Doc. 198 at p. 11]. This is problematic in the application of Rule 23(e)(4), which requires a previous opt-out opportunity for the individual class members.

On one hand, if this Honorable Court were to permit a Rule 23(e)(4) opt-out to everyone that Range and Mr. Altomare propose to be subject to the proposed Supplemental Settlement, then that can include individuals and entities who were not part of the original Class and never had the ability to opt-out before. This runs counter to the statutory text of Rule 23(e)(4). On the other hand, if this Honorable Court were to limit a Rule 23(e)(4) opt-out to the actual individuals or entities who were actually part of the Class when it was certified, then that would not only create a sub-class where some "Persons" could opt-out and others could not but, more broadly, it would be contrary to the definition of "Class Membership" that Judge McLaughlin expressed because it would implicitly insert the concept of successors and assigns into the definition of "Person". The mere fact that there is no definitive understanding of exactly "who" is in the Class counsels that a Rule 23(e)(4) exclusion does not address the fundamental problems in this case.

More broadly, a Rule 23(e)(4) opt-out seems to presuppose approval of the proposed Supplemental Settlement itself: ". . . the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so." Fed.R.Civ.P. 23(e)(4). Two interconnected issues arise here. First, the proposed Supplemental Settlement does not provide for an opt-out and "[a] district court is not a party to the settlement, nor may it modify the terms of a voluntary settlement agreement between parties." Ehrheart v. Verizon Wireless, 609 F.3d 590, 593(3d. Cir. 2010). Second, the instant Objectors respectfully submit that a Rule 23(e)(4) opt-out does not relieve this Honorable Court of its obligation to ensure that the entirety of the proposed Supplemental Settlement is fair, reasonable and adequate to the Class. *See,* In re Gen. Motors Corp. Pick-Up Truck Fuel Tanks Prods. Liab. Litig., 55 F.3d 768, 785 (3d. Cir. 1995).

While the myriad issues with this Supplemental Settlement have been extensively briefed, a substantial reason why this matter is presently before this Honorable Court at all is a lack of clarity. This is exemplified in Range's Response to this Honorable Court's May 31, 2020 Order and highlights an issue that impacts a Rule 23(e)(4) opt-out. In its Response to Question No. 4, Range promotes that "[a]s to the MCF v. MMBTU issue, all class leases will be amended to change the calculation of the caps from the way specified in the Order Amending Leases to the way specified in the original settlement." [ECF Doc. 198 at p. 11]. This assertion seems inconsistent with the proposed Supplemental Settlement.

Section 2(b) of the proposed Supplemental Settlement provides for prospective application of the "cap" that the parties agreed-to in the original settlement, i.e. using "MCF" as the unit of measure. [ECF Doc. 135-1 at § 2(b)]. But, the language of this subsection is introduced by the phrase "Range will, as of the Final Disposition Date, prospectively adopt and

continuously use. . ." [ECF Doc. 135-1 at § 2(b)]. Similarly, in Section 2(c) of the proposed Supplemental Settlement, Range agrees to record the Amended Order Amending Lease ". . . in the office of to the Recorder of Deeds of each county in which there is situated a Class Lease in which Range, as of January 30, 2019, had a current interest covered by the Second Amended Agreement and Stipulation of Settlement." [ECF Doc. 135-1 at § 2(c)]. Both of these statements appear to exclude leases modified by the original Order Amending Leases that Range did not have any interest in as of January 30, 2019.

So, if Range assigned its interest in a "Class Lease" to another operator, the proposed Supplemental Settlement does not appear to change the post-production cost "cap" from MMBTU to MCF. Those members of the Class would not receive that alleged benefit of the settlement. That situation seems to contradict Range's statement in its current briefing that "all class leases will be amended". [ECF Doc. 198]. If a Class Member has a lease where Range had an interest as of January 30, 2019, such a Class member may consider opting-out to avoid releasing a variety of potential claims that Mr. Altomare never appears to have fully explored. But, if a Class member has a lease where Range no longer had an interest as of January 30, 2019, that is a completely different opt-out decision. For those Class members, they will receive *no future benefit* because their leases will not be modified to an MCF post-production "cap" under the proposed Supplemental Settlement. But, nonetheless, such "Persons" – even if original members of the Class – would still be subject to the broad "release" in the Supplemental Settlement. [ECF Doc. 135-1]. The decision for these "Persons" about whether to opt-out would involve a different set of considerations than other Class members.

Neither Mr. Altomare nor Range have explained how this situation is fair and reasonable and why different Class members are being treated differently with respect to the major

component of the proposed Supplemental Settlement. In fact, in its supplemental briefing, Range argues against an action that would "misalign the class." [ECF Doc. 198 at p. 9]. But, that is exactly what the proposed Supplemental Settlement will do. *Some* leases will remain "capped" in MMBTU and some will be changed to MCF. [ECF Doc. 135-1].

This is all to say that a potential Rule 23(e)(4) opt-out is insufficient, standing alone, to serve as a mechanism for those who oppose the settlement to exercise their own rights. Such an opt-out presupposes approval of the settlement and must be based on a new opt-out for those who already had the opportunity. Here, no one ever had the opportunity to opt-out of the deal imposed through the Order Amending Leases in the first place. Not only does the muddled record here suggest that a Rule 23(e)(4) opt-out would be granted to those who never had the opportunity to opt out from *anything* before – and are not even members of this Class, - it still requires this Honorable Court to undertake the jurisdictional analysis and ensure that the *entire settlement* is fair and adequate and to approve that deal, which does not include an opt-out right. The existence of an opt-out does change the context for reviewing and approving a settlement.

Again, instead of a Rule 23(e)(4) opt-out, this Honorable Court should simply amend the Order Amending leases *retroactively* to align with the parties' actual settlement [ECF Doc. 73-1] and impose the MCF post-production cap which is what the Class bargained for, thought that it was obtaining and had the ability to opt-out from in the first place. That way, all Class Leases would be amended additional royalties owed to all Class members based on that calculation. No release is necessary nor is treating Class members differently.

2. **To what extent are class members who hold only royalty interests in leases associated with conventional oil and gas wells benefitted, bound, or otherwise affected by the proposed Supplemental Settlement?**

The original Order Amending Leases stipulates that "[i]n calculating the royalty attributable to all other natural gas production, existing Post Production Costs shall be reduced by $.03 per MCF." [ECF Doc. 84 at § (b)(2)]. The proposed Supplemental Settlement states that "[i]n calculating the royalty attributable to all other natural gas production, existing Post Production Costs shall be reduced by $.03 per MCF." [ECF Doc. 135-1 at § 1(B)(2)]. The "conventional" wells this Honorable Court references in its inquiry likely fall within this categorization. The fact that the treatment of post-production costs associated with these wells was expressed in MCF in the original Order Amending Leases confirms what the docket shows in multiple locations – that all units of measure related to post-production cost "caps" and reductions were intended in MCF.

3. **In light of Question No. 2, is it appropriate or necessary to certify a settlement sub-class that would exclude class members holding royalty interests under leases associated with conventional oil and gas wells?**

It appears that the original settlement and the proposed Supplemental Settlement address this point, so it is not believed that certification of a settlement sub-class is necessary.

4. **Does Range Resources concur with Class Counsel's assertion that Range's covenants in the proposed Supplemental Settlement Agreement subsume a promise to correct, into the future, the issues identified in Class Counsel's Post Fairness Hearing Brief, ECF No. 181 at p. 6?**

This inquiry was directed to Range and the instant Objectors will therefore not discuss it in detail beyond the reference in response to Question 1.

                                      Respectfully Submitted,

                                      Houston Harbaugh, P.C.

Dated: June 22, 2020         By: /s/ *Robert J. Burnett*
                                      Robert J. Burnett, Esquire
                                      Pa. I.D. No. 76734
                                      Brendan A. O'Donnell, Esquire
                                      Pa. I.D. No. 309007
                                      Erik M. Bergenthal, Esquire
                                      Pa. I.D. No. 317978
                                      Three Gateway Center
                                      401 Liberty Avenue, 22nd Floor
                                      Pittsburgh, PA 15222
                                      (412) 281-5060
                                      E-mail: *rburnett@hh-law.com*
                                                        *odonnellba@hh-law.com*
                                                        *bergenthalem@hh-law.com*
                                      (*Counsel for Objectors George M. Aten, Raymond W. Seddon, James H. Post and Leon Chow*)

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing **Supplemental Briefing** was served upon counsel of record through the Court's CM/ECF system this 22nd day of June, 2020.

                                                        */s/ Robert J. Burnett*
                                                        Robert J. Burnett
                                                        *Counsel for George M. Aten, Raymond W.*
                                                        *Seddon, James H. Post and Leon Chow*