IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONALD C. FREDERICK and <br> LOUISE M. FREDERICK, h/w, <br> MICHAEL A. MAHLE and <br> PAULA M. MAHLE, h/w, DONALD <br> PORTA, and all other persons similarly <br> situated, <br> <br> Plaintiffs, <br> <br> v. <br> <br> RANGE RESOURCES - <br> APPALACHIA, LLC, <br> <br> Defendant. | ) <br> ) <br> ) <br> ) Civil Action No. 1:08-cv-288-SPB <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM OPINION

**Susan Paradise Baxter, United States District Judge**

Pending before the Court in the above-captioned case is a motion for attorney fees filed by certain objectors to the recent class settlement, whom this Court has collectively referred to as the "Bigley Objectors." See ECF No. 223. For the reasons that follow, the Bigley Objectors' fee application will be denied.

I.     INTRODUCTION

This civil action originated from a payment dispute between Range Resources Appalachia, LLC ("Range") and a group of plaintiffs who held royalty interests relative to gas and oil that Range produced and sold. The Court has previously discussed the procedural history of this case at length, *see* ECF No. [213] (Mem. Op. dated March 31, 2022), and only a brief recap for purposes of context is necessary here.

1

At all times throughout this litigation, Plaintiffs have been represented by Joseph E. Altomare, Esq., who initiated this lawsuit with the filing of a class action complaint in the Warren County Court of Common Pleas. At bottom, the complaint alleged that Range had unlawfully reduced the Plaintiffs' royalty payments by deducting certain post-production costs ("PPC") that Range had incurred in the process of bringing gas and oil products to market. Although the case originated in state court, it was removed to this Court in October of 2008. ECF No. 1. Eventually, the parties entered into a settlement agreement (the "Original Settlement") which was approved on March 17, 2011, by then-presiding United States District Judge Sean J. McLaughlin. ECF No. 83.

As part of the Original Settlement, Range agreed to cap the amount of PPC that would be deducted from its future royalty payments over the remaining life of the class members' leases. To that end, the parties prepared a proposed order for the Court to sign ("Order Amending Leases"), which would incorporate into the class leases an agreed-upon formula for computing the future caps on PPC. The Court approved and entered the Order Amending Leases on March 17, 2011, contemporaneous with its order approving the Original Settlement. *See* ECF No. 84. Unfortunately, the Court's Order Amending Leases contained a discrepancy that did not conform to the terms of the Original Settlement agreement. Whereas the Original Settlement agreement had established a formula for calculating the shale gas PPC cap utilizing MCFs (i.e., a measurement signifying one thousand cubic feet of volume), the Order Amending Leases established a formula that, in the case of "Wet Shale Gas production" and "Dry Shale Gas production," utilized MMBTUs (a measurement signifying one million British Thermal Units). *See* ECF No. 84, ¶1 at 3-4; ECF No. 94 at 5.

After the Order Amending Leases was entered, Range adjusted its royalty payments to conform with the terms of that order. In doing so, however, Range issued payments that were contrary to the terms of the Original Settlement agreement, since Range calculated the shale gas PPC caps using MMBTUs, rather than MCFs. Range continued to pay royalties in this manner for a number of years.

Mr. Altomare became aware of the discrepancy in or around July of 2013 and had some communications about it with Range's attorney, but no formal action was undertaken to correct the problem until January 2018, when Mr. Altomare filed a motion on behalf of the class to enforce the Original Settlement agreement ("Motion to Enforce"). ECF No. 93. In this motion, Mr. Altomare alleged that Range had intentionally underpaid royalties, and had thus violated the terms of the Original Settlement, through various "artifices." These "artifices" consisted of eight different forms of alleged malfeasance on the part of Range, including Range's continued use of MMBTUs rather than MCFs when calculating the shale gas PPC caps. In September 2018, Mr. Altomare filed a second motion in which he sought to correct the MMBTU/MCF discrepancy by obtaining relief under Federal Rule of Civil Procedure 60(a) (the "Rule 60(a) Motion"). ECF No. 106.

Ultimately, Mr. Altomare negotiated a resolution of the Motion to Enforce and the Rule 60(a) Motion through a second, class-wide settlement with Range (the "Supplemental Settlement"). ECF No. 135-1. Under the terms of this agreement, Range agreed to pay the class a one-time lump sum of $12 million, less any costs and fees awarded to Mr. Altomare, as compensation for past shortfalls in royalty payments. Prospectively, Range would adhere to the formula for calculating shale gas PPC caps as set forth in the Original Settlement agreement, using MCFs as the relevant volumetric measurement rather than MMBTUs. To effectuate this

change in the subject oil and gas leases, Range would file with the relevant recorders of deeds a new order amending the leases (the "Amended Order Amending Leases"), which would incorporate into each lease the agreed-upon formula for calculating future PPC caps. In exchange, the class would grant Range a broad release of all putative claims, including all claims set forth in the Motion to Enforce.

The Supplemental Settlement, like the Original Settlement, required court approval, and the principal parties filed the requisite motion for court approval in April of 2019. ECF No. 135. Extensive briefing and motions practice then ensued. On July 16, 2019, Mr. Altomare filed an application for supplemental attorney's fees in which he sought an award of $2.4 million, plus twenty percent (20%) of the future benefits to the class over a ten-year period. ECF No. 143. The prospective element of Mr. Altomare's fee application carried an estimated value of $2.6 million, bringing Mr. Altomare's total fee request to approximately $5 million.

Objections were soon raised by a number of dissatisfied class members who believed that the Supplemental Settlement was unfair and that Mr. Altomare's request for additional fees was unjustified. Generally, the objectors fell into two groups, which the Court collectively identified as the "Aten Objectors" and the "Bigley Objectors." In addition to opposing the Supplemental Settlement and Mr. Altomare's request for supplemental fees, the Bigley Objectors filed a motion asking the Court to remove Mr. Altomare as class counsel. ECF No. 179.

After conducting a fairness hearing and reviewing additional post-hearing submissions, the Court issued a Memorandum Opinion and Order on March 31, 2022 in which it approved the Supplemental Settlement, denied the Bigley Objectors' motion to remove Mr. Altomare as class counsel, and granted Mr. Altomare's fee application in part. ECF Nos. 213, 214. The Court's ruling was appealed by certain objectors and, on January 26, 2023, the U.S. Court of Appeals for

4

the Third Circuit issued an order of affirmance. ECF No. 248. In the interim, the Bigley Objectors filed the pending motion for an award of counsel fees, ECF No. 223, which the undersigned will now address.

## II.  STANDARD OF REVIEW

Under the law of this judicial circuit, "objectors to settlements of class-action and derivative lawsuits may be entitled to attorneys' fees and expenses when they improve the settlement." *In re S.S. Body Armor I Inc.*, 961 F.3d 216, 225 (3d Cir. 2020) (citing authority); *see In re Nat'l Football League Players' Concussion Inj. Litig. ("NFL Concussion Litig."),* 814 F. App'x 678, 685 (3d Cir. 2020) ("In class action settlements, a court may award attorneys' fees to prevailing parties, including objectors.") (citations omitted). Indeed, "[d]istrict courts have broad discretion in deciding whether, and in what amount, attorneys fees should be awarded [to objectors] since [they are] in the best position to determine whether the participation of objectors assisted the court and enhanced the recovery." *NFL Concussion Litig.*, 814 F. App'x at 685 (citation and internal quotation marks omitted) (second and third alterations in the original).

In determining whether to award a fee, courts consider several factors, including the benefits attorneys have given to the class. *NFL Concussion Litig.*, 814 F. App'x at 685. As the U.S. Court of Appeals for the Third Circuit has explained:

> [A] court can usually determine whether an objector has improved the class's recovery, and can often measure the amount of that improvement. If the objection is meritorious, it will usually lead to an increase in the settlement, a reallocation of the award among different plaintiffs, or a decrease in the fees paid to lead counsel. The court will thus be able to measure the dollar value of the objector's contribution to the class's net recovery.

*In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 201 n.17 (3d Cir. 2005). The Court of Appeals has also clarified that "trial courts may, in their discretion, consider non-monetary factors in determining whether an objector's participation improved a settlement." *In re S.S. Body Armor I*

5

*Inc.*, 961 F.3d at 227. "The value an objector provides is assisting the court in determining whether to approve the settlement, and, therefore, the court can easily assess whether the objector improved the settlement or otherwise enhanced its review." *In re S.S. Body Armor I Inc.*, 961 F.3d at 227; *see also Dewey v. Volkswagen of Am.*, 909 F. Supp. 2d 373, 395 (D.N.J. 2012) ("[O]bjectors must have economically benefitted the class or, at the very least, shown that a court adopted their objection.").

### III.  DISCUSSION

In this case, the undersigned presided over both the Supplemental Settlement and Mr. Altomare's application for a supplemental fee award, from inception to final approval. Accordingly, the undersigned is ideally positioned to assess the extent to which the Bigley Objectors improved -- or did not improve -- the class's recovery. *See In re S.S. Body Armor I Inc.*, 961 F.3d at 228 ("We typically accord significant deference to the trial court's determination because it is usually in the best position to determine whether the settlement was improved as a result of the objector's efforts.").

Having carefully considered the Bigley Objectors' petition, the Court concludes that it must be denied. As previously discussed by this Court, the Bigley Objectors raised four main arguments. First, they asserted that the Supplemental Settlement should be rejected on the grounds that Class Counsel inadequately represented the class and has a demonstrable conflict of interest with class members. Second, they suggested that Mr. Altomare may have submitted fraudulent time entries in connection with his fee application. Separate from this, the Bigley Objectors argued that the fee request is excessive under the circumstances of the case and in light of the results achieved by Mr. Altomare. Finally, the Bigley Objectors asserted that, if the Court did not reject the Supplemental Settlement, then they should at least be permitted to opt out of it.

In advancing these arguments, the Bigley Objectors relied heavily on Ryan J. Rupert, a certified public accountant, minerals manager and evaluation analyst who had assisted many class members and who had also consulted with Mr. Altomare about issues bearing on the Motion to Enforce, among other things. Through affidavits and testimony, Mr. Rupert asserted that Range had systematically underpaid class members in a number of ways, including the methods that were outlined in the Motion to Enforce. Mr. Rupert also attested that he had reviewed Class Counsel's Application for Supplemental Attorney Fees and had come to the conclusion that many of the time entries Mr. Altomare had submitted in support of his attorney fees application had been taken from Mr. Rupert's personal billing statements. Mr. Rupert further maintained that some of Mr. Altomare's time entries reflected meetings with individuals that had never actually taken place.

Mr. Altomare, for his part, adamantly denied having committed any type of fraud with respect to his billing submissions. While acknowledging that his fee petition was not predicated on contemporaneously maintained time records, he insisted that he had attempted, in good faith, to reconstruct his time records so that they would accurately reflect time he had spent investigating, litigating, negotiating, and settling the class's claims. Mr. Altomare explained that, in some respects, Mr. Rupert had misinterpreted the information contained in the attorney fee billing records. Mr. Altomare further insisted that his time records considerably underrepresented the time he had spent working on the case.

In the end, this Court approved the Supplemental Settlement with the caveat that Mr. Altomare would be awarded only $360,000, rather than the approximately $5 million he was seeking. *See* ECF Nos. 213, 214. Significantly, the Court overruled the objections of the Bigley and Aten Objectors relative to the Supplemental Settlement and the Court's partial award of

7

attorney's fees. The Court also rejected the objectors' request for leave to opt out of the Supplemental Settlement. Finally, the Court denied the Bigley Objectors' motion to remove Mr. Altomare as class counsel. Those rulings were upheld by U.S. Court of Appeals for the Third Circuit on January 26, 2023. ECF No. 248.

Under these circumstances, the Bigley Objectors cannot be considered prevailing parties. Nor, in this Court's view, did their efforts substantially improve the settlement for other class members or enhance the Court's review. From a monetary standpoint, the Bigly Objectors were not personally responsible for increasing the amount of settlement funds that will ultimately be distributed to the class. To be sure, the Court's decision to award Mr. Altomare only $360,000 in fees (rather than the $2.4 million he sought from the common settlement fund) ensures that an additional $2 million would be available for distribution to class members. Similarly, the Court's refusal to award Mr. Altomare a percentage of Range's prospective settlement payments leaves more funds to the class. But having presided over the settlement proceedings, and having now once again reviewed the Supplemental Settlement record, the Court cannot say that these gains were fundamentally attributable to the Bigley Objectors, their expert, or their counsel.

On the contrary, several unique factors underlay the Court's decision to substantially reduce the retroactive component of Mr. Altomare's fee award. First and foremost was the fact that the most recent phase of this litigation (commencing in January 2018) was essentially an effort by Mr. Altomare to return the class to the position it should have been in as of March 2011, when the Original Settlement was approved. There being no net "win" for the class (so to speak), it seemed inappropriate to award Mr. Altomare a large fee, notwithstanding his considerable efforts on behalf of the class. This was especially true in view of the fact that Mr. Altomare's own failure to diligently resolve the MCF/MMBTU issue at an earlier point in time

8

had greatly complicated the class's ability to secure the benefits of the Original Settlement.[1] Moreover, Mr. Altomare had already been handsomely compensated in connection with the Original Settlement. As the Court previously noted, his original fee award had an estimated value of $4.6 million and was predicated partly on the expectation that he would need to perform a certain amount of post-settlement work on behalf of the class. Under these circumstances -- all of which were self-evident or otherwise independently known to the Court -- an additional award of $2.4 million seemed redundant and not commensurate with the results that Mr. Altomare was able to obtain through the Supplemental Settlement.

In rejecting Mr. Altomare's request for a prospective fee award, the Court relied on these same considerations. The Court also credited Range's objections that the requested prospective fee award was inconsistent with the terms of the Supplemental Settlement and would place an undue administrative burden on Range. Finally, the Court expressed concerns that the class notice regarding the proposed Supplemental Settlement had not sufficiently apprised class members of Mr. Altomare's request for prospective fees. None of these considerations were uniquely attributable to the Bigley Objectors.

The claim that Mr. Altomare had submitted fraudulent billing statements in connection with his Supplemental Fee Application was an issue vociferously argued by the Bigley Objectors. Though the Court did not infer intentional fraud on Mr. Altomare's part, it remarked

---

[1] In its Memorandum Opinion, the Court noted its "agree[ment] with the Bigley Objectors" that Mr. Altomare's lack of diligence "initially placed the class at a disadvantage" because it "not only extended the duration of Range's alleged underpayments but also gave rise to Range's colorable defense that the class's MCF/MMBTU claim was time-barred." ECF No. 213 at 41. The Court further noted that "this consideration strongly inform[ed] [its] determination of a proper fee award and [was] a major factor justifying the Court's refusal to grant Class counsel his requested fee." *Id.* at 41 n.10. But this critical information had already been developed in connection with Plaintiffs' Motion to Enforce and Rule 60(a) Motion and was a central point of contention between the parties long before the Bigley Objectors filed their appearance in this case. Thus, the Court's reliance on this issue as a justification for reducing class counsel's fees had little to do with the Bigley Objectors' arguments, even if the Court agreed with the Bigley Objectors' position on the matter.

that Mr. Altomare's undisclosed failure to maintain contemporaneous billing records, and his ill-advised methodology for reconstructing his timesheets, were factors that "significantly inform[ed] the Court's analysis of Class Counsel's fee application." In analyzing the appropriateness of a supplemental fee, the Court did indeed take these factors into account. But to the extent Mr. Altomare's inaccurate billing records figured into the Court's fee analysis, it was only in a collateral fashion, leading the undersigned to conclude that "a meaningful lodestar cross-check [was] all but impossible" in this case. ECF No. 213 at 76. That statement was arguably dicta because, in the end, the Court *did* perform a lodestar analysis of sorts, multiplying the number of hours that Mr. Altomare reportedly spent working on this phase of this litigation (i.e., 1133.75 hours) by Mr. Altomare's hourly rate ($475). Critically, however, the Court determined that a reduced, fractional multiplier of .7 was appropriate under the unique facts of this case, resulting in a reduced lodestar figure of $376,971, which the Court found to be generally in line with its award of $360,000. *Id.* at 77. In sum, although the Court considered the Bigley Objectors' evidence and arguments pertaining to alleged fraud in class counsel's billing statements, their offering did not materially affect the Court's analysis. Accordingly, the Court cannot say that the Bigley Objectors added value or otherwise enhanced the class's recovery.

Under the law of this Circuit, the Court can also consider the extent to which the Bigley Objectors provided a non-monetary benefit to the class, e.g., by enhancing the Court's review of the Supplemental Settlement. *In re S.S. Body Armor I Inc.*, 961 F.3d at 227. But under this metric, the Bigley Objectors fare no better. Here, many of the central points raised by the Bigley objectors were also raised by the Aten Objectors. For example, both sets of objectors challenged Mr. Altomare's fee request as excessive and questioned the adequacy of his representation and

10

the existence of a potential conflict of interest. Both sets of objectors asserted the need for more discovery and/or compensation relative to the non-MCF/MMBTU claims. And both sets of objectors argued that class members should be able to opt out of the Supplemental Settlement if it was not rejected. To the extent these arguments aided the Court's review, the benefit is no more attributable to the Bigley Objectors than to the Aten Objectors who, notably, have not requested an award of counsel fees.

Nor can the Court attribute its level of review to the Bigley Objectors' involvment. In its Memorandum Opinion, the Court remarked that "[b]oth the proposed settlement and the supplemental fee petition have been subjected to heightened scrutiny in light of the objectors' allegations." ECF No. 213 at 79. But the Court would have applied heightened scrutiny in any case because Mr. Altomare's delay in addressing the MCF/MMBTU issue created obvious concerns about a potential conflict of interest. Prior to any objector's appearance in this case, the Court was aware of the fact that Mr. Altomare had known of the MCF/MMBTU issue as early as 2013 but did not formally prosecute that issue on behalf of the class until 2018. That Mr. Altomare might have been motivated to subject the class to an unreasonable settlement in an effort to minimize his own personal liability was an obvious concern. This self-evident potential for a conflict of interest mandated a higher level of scrutiny on the part of this Court, regardless of whether it was raised by any objectors. *See In re Google Inc. cookie Placement Consumer Privacy Litig.*, 934 F.3d at 331 ("Where a court fears counsel is conflicted, it should subject the settlement to increased scrutiny.").

To the extent that the Bigley Objectors provided new factual information in this case, it was chiefly through the declarations and testimony of Ryan Rupert. However, Mr. Rupert's testimony did not enhance the class's recovery. Insofar as Mr. Rupert attested to the

11

insufficiency of the Supplemental Settlement, his conclusions were rejected by the Court. In particular, the undersigned completely discounted Mr. Rupert's purported estimate of class damages, finding them too speculative to be given any weight. And insofar as Mr. Rupert attempted to demonstrate that Mr. Altomare had perpetrated a fraud on the Court through his submission of bogus billing records, the argument was unsuccessful in that the undersigned declined to infer intentionally fraudulent motives. Although Mr. Rupert's testimony did help to establish that Mr. Altomare's billing records were hastily reconstructed and materially inaccurate, this did not affect the class's recovery because the Court ultimately diminished Mr. Altomare's fee award based on other, unrelated considerations.

In sum, when all the foregoing circumstances are taken into consideration, the undersigned cannot say that the Bigley Objectors appreciably assisted the Court in its determination whether to approve the Supplemental Settlement or its determination of an appropriate fee award to Mr. Altomare. Moreover, the Court did not adopt any objection lodged by the Bigley Objectors that was not independently derived from the Court's own observations, based on its familiarity with the extensive case record or applicable law. Thus, the Court cannot say that the Bigley Objectors' involvement in these proceedings "improved the settlement or otherwise enhanced its review." *In re S.S. Body Armor I Inc.*, 961 F.3d at 227.

IV.   **CONCLUSION**

Based upon the foregoing reasons, the motion for attorney's fees filed by the Bigley Objectors will be denied. An appropriate order follows.

*/s/ Susan Paradise Baxter*

SUSAN PARADISE BAXTER
United States District Judge